IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

F I L E D

NOV - 4 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

COREY THOMAS JONES, )
       Petitioner, )
)
)   CR# 1:11 CR 530
v. )
)   THE HONORABLE JUDGE:
)   CLAUDE M. HILTON
)
UNITED STATES OF AMERICA, )
       Respondent. )

---

**MEMORANDUM OF LAW IN SUPPORT OF INEFFECTIVE
ASSISTANCE OF COUNSEL AND ACTUAL INNOCENCE OF
SENTENCE CLAIM IN THE NATURE OF THIS HABEAS CORPUS
APPLICATION PURSUANT TO TITLE 28 U.S.C. SECTION
2255 PETITION**

---

## I.

### INTRODUCTION

**COMES NOW,** Corey Thomas Jones(hereinafter "the Petitioner)

appearing pro se hereby respectfully moves this Honorable United

States District Court, for the Eastern District of Virginia with this

Memorandum of Law in support of motion to Vacate sentence under

Title 28 U.S.C. §2255.

a)   <u>Brief History Of Case:</u>

    On February 9, 2012 a superseding indictment was filed with

this U.S.District Court in Alexandria, Virginia. The Petitioner was

charged with conspiracy to rob the BBT Bank located at 8416

Arlington Boulevard, Fairfax, Virginia. The Petitioner's case pro-

ceeded to trial on April 23, 2012. On April 25, 2012 the jury returned

its verdict of guilty of conspiracy and robbery charges, 18 U.S.C.

§371, and 18 U.S.C.§2 and 2113(A) and (D) respectively. The petitioner

was acquitted of the firearm charge, 924(c)(1)(A).

    On July 18, 2012 the Petitioner's conviction became final, and

he was sentenced to Two-Hundred(200) months of imprisonment by the

Honorable Judge Claude M. Hilton. On July 18,2013 the U.S. Court of Appeals for the Fourth Circuit affirmed the Petitioner's conviction. On August 14, 2013 the United States Court of Appeals for the Fourth Circuit denied the Petitioner Rehearing En Banc.

b)    Jurisdiction Of The Court For First Section 2255 Petition:

This Court has subject-matter jurisdiction to entertain the 28 U.S.C.§2255 petition filed within the one-year statutory limitation period from the date the United States Supreme Court denied Writ of Certiorari. See **Kapral v. United States**,166 F.3d 565(3d Cir.1998); **Sanchez-Castellano v. United States**,258 F.3d 424(6th Cir.2003)(holding that a one-year filing date begins from date Supreme Court denies **Writ of Certiorari**.) Thus, this 2255 petition is timely because the Supreme Court denied the Petitioner's Writ of Certiorari on **November 4, 2013**. Id.

C)    **STANDARD OF REVIEW:**

a.    Ineffective Assistance of Counsel;

A petitioner must show (1)that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness, and (2)that such failure resulted in prejudice so as to render the results of the trial unreliable. **Strickland v. Washington,** 466 U.S.668,688(1984).

b)    Actual Innocence of Sentence;

In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, The Petitioner must show cause and prejudice resulting from errors of which he complains and the Petitioner must demonstrate that a miscarriage of justice would result from the refusal of the Court to entertain the collateral attack. **Sawyer v. Whitley,**505 U.S. 333-339(1992).

# TABLE OF AUTHORITIES

Cases Cited                                          Page:

Anderson v. Johnson,338 F.3d 382(5th Cir.2003). . .9,15,21,57

Becton v. Barnett,920 F.2d 1190(4th Cir.1990). . . . . . . 11

Berger v. United States,295 U.S.78(1935). . . . . . .51,53,64,37

Blackburn v. Foltz,828 F.2d 1177(6th Cir.1987). . . . . 18,22

Bryant v. Scott,28 F.3d 1411(5th Cir.). . . . . . . . . . .16

Chambers v. Armontrout,907 F.2d 825(8th Cir.1990). . . . . 20

Coe v. Beli,161 F.3d 320(1998). . . . . . . . . . . . . . 4,89

Coleman v. United States,501 U.S. at 750. . . . . . . . .78

Davis v. Alabama,596 F.2d 1214(5th Cir.1979). . . . . . . .14

Evans-Smith v. Taylor,19 F.3d 899(4th Cir.) cert.denied,
513 U.S.919,130 L.Ed 2d 211,115 S.Ct.298(1994). . . . . . .62

Ford Motor Co. v. McDavid,259 F.2d 261(4th Cir.1958). . 62,73

Gray v. Branker,529 F.3d 220(4th Cir.2007). . . . .8,22,28,38

Griffen v. Warden,970 F.2d 1355(6th Cir.). . . . . . . . 15

Grooms v. Solem,923 F.2d 88(8th Cir.1991). . . . . . . . . 20

Harris v. Reed,894 F.2d 871(7th Cir.1990). . . . . . . . . 22

Henderson v. Sargent,926 F.2d 706(8th Cir.). . . . . . . . 16

Herrera v. Collins,506 U.S.390(1993). . . . . . . . . . . .77

Hoots v. Allsbrook,785 F.2d 1214(4th Cir.). . . . . . . . .45

Houck v. Stickman,625 F.3d 88(3d Cir.2010). . . . . . . . .77

House v. Bell,547 U.S.518(2006). . . . . . . . . . . . . . 80

Horton v. Zant,941 F.2d 1449(11th Cir.). . . . . . . . . . 16

Kimmelman v. Morrison,477 U.S.365(1986). . . . .3,13,25,35,55,89

Kuhlman v. Wilson,477 U.S.436(    ). . . . . . . . . . . . 84

Lawrence v. Armontrout,900 F.2d 127(8th Cir.1990). . . . . 18

Johnson v. United States, 520 U.S. 461, 466-467 (1997). . . . . . . . .68

Sawyer v. Whitley, 505 U.S. 333, 339. . . . . . . . . . . . . .71,81,89

Cases Cited                                            Page:

Lockhart v. Fretwell,506 U.S.364(1993). . . . . . . . . . .13

Marzullo v. Maryland,561 F.2d 540(4th Cir.1977). . . . . . 14

Matthews v. United States,485 U.S.58(1988). . . . . . . . .65

Matire v. Wainwright,811 F.2d 1430(11th Cir.1987). . . . . 82

McMann v. Richardson,397 U.S.759(1970). . . . . . . . . . .26

Montgomery v. Peterson,846 F.2d 407(7th Cir.1988). . . .26,42

Morrow v. Parratt,574 F.2d 411(8th Cir.1978). . . . . . . .14

Murray v. Carrier,477 U.S.478(1986). . . . . . . . . . . 81,89

Nealy v. Cabana,764 F.2d 1173(5th Cir.). . . . . . . . .22,45

Peavy v. United States,31 F.3d 1341(6th Cir.1994). . . . . 23

Roe v. Flores-Ortega,528 U.S.470(2000). . . . . . . . . . .16

Sanders v. Ratelle,21 F.3d 1446(9th Cir.1994). . . . . .22,57

Schlup v. Delo,513 U.S.298(1995). . . . . . . . . . .77,79,80

Sneed v. Smith,670 F.2d 1348(4th Cir.1981). . . . . . . . .15

Strickland v. Washington,466 U.S.668(1984). . . . . . . . .
. . . . . . . . 3,8,13,16,18,22,24,25,30,41,42,44,47,55,63,81,86,89

Teleguz v. Pearson,689 F.3d 322(4th Cir.2012). . . . . . . 84

Thomas v. Lockhart,738 F.2d 304(8th Cir.1994). . . . . . 9,22

Towns v. Smith,395 F.3d 251(6th Cir.). . . . . . . . . .15,21

United States v. Barraso,267 F.2d 908(3d Cir.1959). . . . .69

United States v. Blondea,480 Fed.Appx.241(4th Cir.2012). . 28

United States v. Bonner,648 F.3d 209(4th Cir.2011). . . 35,63

United States v. Booze,451 F.2d 723(3d Cir.1993). . . . . .69

United States v. Bryser,954 F.2d 79(2d Cir.1992),
cert.denied,112 S.Ct.2939(1992). . . . . . . . . . . . . . 70

United States v. Burse,531 F.2d 1151(2d Cir.). . . . . . . 67

Cases Cited                                         Page:

United States v. Clinkscale,375 F.3d 443. . . . . . .16,18,22

United States v. Combs,205 F.3d 288. . . . . . . . . . . 16

United States v. Cook,45 F.3d 388(10th Cir.1995). . . . . .82

United States v. Crawford,1998 U.S.App.Lexis 21629
(4th Cir.1998). . . . . . . . . . . . . . . . . . . . . .28

United States v. Debango,780 F.2d 81(D.C.Cir.1986). .15,25,57

United States v. DeCoster,159 U.S.App.D.C.326
(D.C.Cir.1973). . . . . . . . . . . . . . . . . . . 14,26

United States v. Ex.Rel Cosey v. Wolff,526 F.Supp.140
(7th Cir.1984). . . . . . . . . . . . . . . . . . . . . .14

United States v. Hamilton,684 F.2d 385

United States v. Harris,U.S.App.LEXIS 36449(4th Cir.1997)..23

United States v. Hairston,64 F.3d 491(1995)

United States v. Hicks,748 F.2d 854(4th Cir.1984). . . .65,69

United States v. Kyles,115 U.S. at 1566. . . . . . . . . . .38

United States v. Lindeli,881 F.2d 1313(5th Cir). . . . . . 11

United States v. Magini,973 F.2d 261(4th Cir.1992). . . . .39

United States v. Marcus,166 F.2d 497(3d Cir.1948). . . . . 70

United States v. Mason,902 F.2d 1434(9th Cir.1990). . . . .70

United States v. Mastrangelo,172 F.3d 288(3d Cir.1999). . .52

United States v. Megna,450 F.2d 511(5th Cir.1971). . . . . 70

United States v. Mikalajunas,186 F.3d 494. . . . . . 71,77,81,93

United States v. Olano,507 U.S.725(1993). . . . . . .49,61,68,85

United States v. Powell,680 F.3d 356. . . . . . . . . . . 65

United States v. Ragghianti,560 F.2d 1379(9th Cir.). . . . 70

United States v. Rich,326 F.Supp.2d 670(E.D.PA). . . . . . 52

United States v. Roane,378 F.3d 382(4th Cir.2004). . . . . .9

**TABLE OF AUTHORITIES(Cont'd)**

Cases Cited                                                    Page:

United States v. Rompilla,545 U.S. at 393. . . . .11, 28,38,45

United States v. Russell,221 F.3d 615(4th Cir.2000). . . . 45

United States v. Simon,995 F.2d 1236(3d Cir.1993). . . . . 69

United States v. Stoddard,1997 U.S.App.LEXIS 2880
(4th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Stout,169 Fed.Appx.803(4th Cir.2006). . . .3

United States v. Strauss,376 F.2d 416(5th Cir.1967) . . . .69

United States v. Tucker,716 F.2d 576(9th Cir.1983). . . . .14

United States v. Washington,996 F.2d 1450. . . . . . . . 81,37

United States v. White,366 F.3d 291(4th Cir.2003). . . . . 53

United States v. Wilson,135 F.3d 291(4th Cir.1998). .51,60,64

United States v. Witherspoon,281 F.3d 923. . . . . . . . .3

United States v. Zuniga,6 F.3d 569(9th Cir.1993). . . . . .70

United States v. Lewis,53 F.3d 29(4th Cir.1995). . . . . . 65

Washington v. Murray,952 F.2d 1472(4th Cir.1990). . . 6,26,57

Wiggins v. Corcoran,288 F.3d 629. . . . . . . . . . . . . 45

Wiggins v. Smith,539 U.S. at 524-25. . . . . . . . . 7,38,42

Williams v. Taylor,529 U.S. at 395-96 . . . . . . . . 11,28,45

Wolfe v. Clark,565 F.3d 140(4th Cir.2009). . . . . . . . 79

Wood v. Zahradnick,578 F.2d 980(4th Cir.1977). . . . . . 14

United States Constitutional Amendment Sixth. . . . . . 41,83

United States Constitutional Amendment Fourteenth. . . . 83

Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982). . . . . . 86

United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992) . . . . . 85,91

United States v. Dunn, 564 F.2d 348, 357 (9th Cir. 1977). . . . . 91

Bousley v. United States, U.S., 623-24. . . . . . . . . . . 87

United States v. Gandolfo, 577 F.2d 955. . . . . . . . . . . 91

United States v. Guinta, 925 F.2d 758, 764 (4th Cir. 1991). . . . . 85

II.

## ARGUMENT

**A) COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO PROPERLY INVESTIGATE THE TRAVEL TIME BETWEEN THE BBT BANK, FORT STANTON APARTMENTS AND CAR SOURCE WHEN THE HISTORICAL CELL SIGHTS SHOW THE PETITIONER WAS NOT WITH WILLIAM COLE OR IN HIS VEHICLE(BMW) THE MORNING OF JUNE 27,2011...**

The circumstances of the distance, time and the place of the crime were not consistent with guilt in view of the great variations. There are in it enough possibilities for fair and rational doubt that directly exonerate the Petitioner. And it is of high probative force that probably would have generated enough doubt to prevent a finding of guilt had it been uncovered or investigated by petitioner's attorney Jerome Aquino("attorney"). The evidence against petitioner was extremely scant.

The evidence relating to the travel time is subject to at least that degree of potential doubt. It is this Honorable Court that provides the legal yard stick to determine if the petitioner's claims are colorable and explored. **United States v. Witherspoon,** 281 F.3d 923-925,927(4th Cir.2000); **United States v. Stout,** 169 Fed Appx. 803(4th Cir.2006)(The court found appellant's assertions if believed stated a colorable claim that he was denied effective assistance of counsel.)

To show constitutionally ineffective assistance of counsel the petitioner must show 1)that defense counsel's representation fell below "an objective standard of reasonableness" and 2)that he was prejudiced as a result of this failure. **Strickland v. Washington,** 466 U.S.668,688-92(1984). The Petitioner must also show that the challenged action was not sound trial strategy. **Kimmelman v. Morrison,** 477 U.S. 365,381(1986).

In the case at hand "the complete failure to investigate these

facts involving the travel time" can hardly be considered a tactical decision or sound trial strategy. As the Sixth Circuit explained in **Coe v. Beli,** 161 F.3d 320 (1998), what the lawyer did not miss..."is just as...(or more) important as what the lawyer missed." Id. at 342.

The government U.S. Attorney Patricia Giles ("government") entire theory was that William Cole picked up Petitioner in Maryland at his residence the morning of June 27, 2011, based upon text messages. See (Transcript 321). The government stated that both of their cellphones utilized towers in Washington D.C. in N.W. where the getaway car was stolen and that Cole dropped the Petitioner off on First and N Street N.W. at 10:30 am (Transcript 16,240,322) She then contends that Petitioner and Cole were soon driving in separate vehicles, **the Petitioner the Plymouth Voyager Van and Cole is driving his BMW.** (Tr. 240) There was no other suspects or vehicles alleged to be involved in this Bank robbery.

Agent Jennifer Banks testified that cell phones receives its signal from the cell tower with the highest strength for the initiation or beginning of a call. (Tr.220-224) Agent Banks cell sight analysis revealed Cole never drove to the Petitioner's residence in Maryland on the morning of June 27, 2011. (Tr.207-213) In fact Banks analysis showed the Petitioner never used the same cell towers in Maryland or S.E. D.C. as Cole.(See BAWA - 2 GPS Tower latitude and longitude Maps attached) There was activity on both cell phones. (Tr.207,211,224, 350) Cole called the Petitioner's cell phone at exactly 10:26 am on June 27, 2011. (See June 27, 2011 call records for 202-528-5140) And then Cole called the Petitioner at 10:31 am.. And the Petitioner returned Coles call at 10:33 am. Then at approximately 10:36 am Cole made an out bound call to cell  number 202-345-2416. Cole ended this call at 10:44 am. (8 seconds) Moreover, the Petitioner received an

inbound call from cell number 240-605-1599 at exactly 10:37 am.
(See call detail records for the Petitioner 202-528-5140 and Cole
202-200-2869 and BAWA - 2 GPS Tower Maps) The Petitioner was
traveling on a different street in the opposite direction of Cole.
(Tr.207-213) also (BAWA - 2 GPS Tower Maps)

This call detail information, which is generated only when a cell
phone is used provides the date and time of a call, the number with
whom the call occurred, the duration of the call, the direction of the
call (whether the call was incoming or outgoing), and the codes for the
cell sights and sectors involved in these calls.

These facts prove the Petitioner was driving the Lexus (a different
vehicle) before and after the Van was stolen in N.W. D.C.,But
importantly, the Petitioner's GPS tower latitude and longitude
coordinates were completely different than Coles the entire morning.
Banks analysis determined that a cell phone normally connects to the
tower in its network with the strongest signal.(TR.220-223) This is
usually the tower closest to the cell phone. Banks assessment further
confirms the government's case is faulty and misleading, because if
the cell phone is not connecting to the closest tower at that time,
then there is no useful correlation between the location of the tower
at the time the call is placed and the location of the Petitioner.

Banks testified at 10:31 am the Petitioner was on 295 (Anacostia
Freeway) in S.E. D.C on June 27, 2011. (Tr.207-208) also (GPS tower
BAWA - 2 maps attached) She then testified, Cole was on South Capital
and N Street, S.E. at 10:31 am and 10:32 am.(Tr.212) also (GPS tower
BAWA - 2 Maps) The Petitioner was never in the cell tower projection
coverage of Cole that morning in Maryland or S.E. D.C. so it was
literally impossible that the Petitioner was in Coles BMW one hour

before the bank robbery that evening especially when Cole was calling the Petitioner's cell phone that morning. (See June 27, 2011 call records and call detail records for 202-528-5140) and also(Tr.90-103).

The government cannot refute the evidence in the record. Given this testimony from the government's expert in historical cell sight analysis, false on one thing, false on everything. It is clear from these solid material facts that Petitioner was not in Coles BMW the morning of the crime. The government evidence consist of vague and conclusory allegations which are palpably incredible based on Agent Banks cell sight analysis. (Tr.205-225).

Moreover, the government's inference that Cole dropped Petitioner off on First and N Street, N.W., Washington, D.C. to steal the Plymouth Voyager Van was improper and false. And this fabricated theory infected the jury and swayed them to convict Petitioner. This expert testimony offered by Banks completely exonerates Petitioner and contradicts the government's case.

There is admittedly a shallow logic here, the government's entire case was based upon very weak circumstantial evidence that is unsupported by the material facts in the record. And this evidence alone shows Petitioner's attorney never investigated Banks cell tower analysis because if he had he would've raised this issue at trial or in the Petitioner's appeal. He did not. **Washington v. Murray,** 952 F.2d 1472 (4th cir.1990)(counsel's failure to investigate and present allegedly exculpatory evidence required an evidentiary hearing).

## A) Deficient Performance

Before Petitioner's trial began he requested to his attorney to investigate and calculate the distance, time and place of the crime where Petitioner was alleged to have been before and after the robbery based upon the government's historical cell sights. The attorney

refused to investigate the travel time distance and facts which would have proved it was "wholly incredible" for petitioner to have been with Cole before or after the robbery.

Three days before trial began petitioner's attorney eventually complied under pressure. But instead of taking the trip according to the government's cellphone sights, the trip was taken in a complete opposite direction which was not part of the evidence or investigation. Petitioner's investigator John McAvoy was advised by attorney to leave the bank and take the Woodrow Wilson Bridge to Car Source on Central Avenue in Capital Heights, Maryland even though there was absolutely no evidence that the robbers entered or departed from Virginia from this location. The government's evidence was that petitioner entered Arlington, Virginia through Route 1 just south of 395.(Tr. 209).

William Cole sent out an outgoing text at 2:27p.m. on 395(14 street Bridge)(Tr. 216) Petitioner's attorney had a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. 466 U.S. at 690-91; also see **Wiggins v. Smith,** 534 U.S. at 524-25. Petitioner asserts that his attorney's performance was deficient because he failed to bring out factual inconsistencies and impeachment evidence with exploratory facts concerning the historical cell sights. (Tr. 207-213)

The question of competency is interrelated with this ineffective assistance of counsel claim. The failure to investigate or pursue any exploratory or impeachment evidence in regard to the travel distance and arrival time is at the heart of this claim. The contention is that these failures were so egregious as to have made the trial a fundamentally unfair one.

Even after indulging the required assumptions of possible tact-
ical explanations it is still inexplicable that he failed to invest-
igate this claim. Petitioner's attorney failed to pursue an adequate
investigation of the evidence. **Strickland v. Washington,**466 U.S. at
691-696; **United States v. Stoddard,**1997 U.S.App.Lexis 2880(4th Cir)
(Failure to investigate facts); **Gray v. Branker,**529 F.3d 220(4th Cir.
2007)(Failure to investigate)

The government called in Twenty-six(26) witnesses and not one of
them identified petitioner as the robber of the BBT bank. There was
no identification evidence nor forensic evidence.(Tr.167-170). In
sum, petitioner's attorney's failure to investigate the time in which
it would take to travel from the BBT bank after the robbery to Fort
Stanton Apartments in S.E.,D.C. and then to Car Source in Capital
Heights, Maryland based upon the government evidence was extremely
prejudicial.

It was vital and critical because Agent Banks' analysis and
investigation proved petitioner was not the individual seen in Coles
BMW one(1) hour before the robbery.(Tr.207-212,90-103) Thus, this
evidence clearly showed the petitioner was not with Cole on June 27,
2011.

Furthermore, petitioner's attorney ultimately was deficient and
negligent for sending P.I. McAvoy on the wrong route. This mistake
grossly affected the petitioner's defense because it was impossible
for petitioner to show this trip could not be done in forty-seven(47)
minutes.

There was absolutely no historical cell sights of either Cole
or petitioner entering Virginia or departing from the Woodrow Wilson
Bridge.(Tr.209) These errors were so serious that petitioner's attorney

was not functioning as the attorney guaranteed by the Sixth Amendment for failing to investigate these exploratory facts. See **Thomas v. Lockhart,** 738 F.2d 304,308(8th Cir.1984), also **Anderson v. Johnson,** 338 F.3d 382(5th Cir.2003).

B)     **Prejudice:**

In order to properly analyze the prejudice prong of ineffective assistance of counsel. This Honorable Court must simply determine the petitioner's attorney assumed deficiency had the potential of influencing the outcome of the proceedings. And that, his attorney's deficiency involved a failure to introduce a critical piece of evidence or a failure to adduce critical testimony.

In these circumstances, the prejudice analysis necessitates an assessment of the effect the unintroduced evidence might have had on the verdict in light of the evidence actually presented. See **United States v. Roane,** 378 F.3d 382,409((4th Cir.2004)(Examining credibility and weight of evidence affected outcome of trial.) Petitioner in addition requested of his attorney to go on MapQuest to see what the anticipated travel time would be according to U.S.attorney Giles ("Giles") theory and cell sights evidence.

Petitioner's attorney refused and failed to investigate or check MapQuest for the anticipated arrival time. And according to MapQuest this trip would take approximately **1 hour and 30 minutes** to complete traveling the exact route according to the historical cell sight evidence.(see MapQuest attachments). Petitioner recently hired Private Investigator Rosslyn McMillan("P.I. McMillan") who was familiar with the metropolitan area and she agreed to take the trip according to the historical cell sights.(See attached notarized report documentation)

The results concluded by P.I.McMillan is that the trip took her

1 hour and 9 minutes to complete traveling the route the Petitioner is
alleged to have entered Virginia with Cole.(Tr.209) This trip is
impossible to complete in forty-seven(47) minutes according to the
evidence. And even if the government attempts to challenge their own
evidence, Mr. Cole was sighted at 2:37pm at Fort Stanton apartments
in S.E. in Washington, D.C. (Tr.244,350) And the Petitioner was sighted
at Car Source in Capital Heights, Maryland at 2:47pm. (Tr.226,227,350).

This trip alone cannot be done in ten(10) minutes according to
Map Quest. The Petitioner also hired Detective Kevin Tucker to
complete this trip. (See Detective Tucker's Noterized report).

According to Map Quest the anticipated arrival time is 22 minutes
from Fort Stanton Apartments to Car Source. And Detective Tucker's
investigation determined this trip took him 26 minutes to complete
which is consistent. Giles contends that after Cole robbed the bank he
rushed straight to his alibi at Ft. Stanton Apartments.(Tr.244,349)
Giles implicitly states "they are right there in the corner at Ft.
Stanton Apartments." (Tr.350).

There were only two(2) vehicles involved in this crime, Coles'
BMW and the stolen Plymouth Voyager Van.(Tr.240) And the Plymouth
Voyager Van was abandoned and confiscated by law enforcement in Fairfax,
Virginia.(Tr.74-75) The government's theory is that the Petitioner
rode with Cole in his BMW after the robbery and that Petitioner was
dropped off at Car Source in Capital Heights, Maryland by Cole.

The government cannot have it both ways. They cannot say on one
hand that Cole picked Petitioner up that morning in his BMW and stole
the Voyager Van and committed the bank robbery.(Tr.16,240,322) And
then the very next moment say its a mystery how the robbers left the

scene of the crime. There was activity on Petitioner's cell phone. (Tr.207-211-224) The government assertions were false and thus cannot form the basis for a conviction.

In other words no reasonable jury can accept such an unsupported explanation. And it is so unbelievable on its face that it defies physical laws. **United States v. Lindeli,** 881 F.2d 1313,1322 (5th cir.) The government experts Banks testimony and cell sight analysis evidence is a "slam dunk" that Petitioner was never in Coles BMW and not with him on June 27, 2011. (Tr.207-212).

Petitioner's attorney stated, the government's evidence is that Petitioner rode with Cole in the BMW after the robbery. (Tr.343) Petitioner's attorney overlooked and contradicted his own defense. Petitioner's attorney's actions were deficient and prejudiced Petitioner. **Becton v. Barnett,** 920 F.2d 1190(4th Cir.1990); **William v. Taylor,** 529 U.S. at 395-96, also see **Rompilla v. Beard,** 545 U.S. at 383.

In short, it defies belief that Petitioner's attorney failed to fully investigate the travel time from these vital locations. Had he done so it would have strengthened Petitioner's defense and it would have exonerated him because the trip takes 1 hour and 9 minutes to complete traveling the exact route Banks testified to that Petitioner entered Virginia.(Tr.209) This means if the bank was robbed at 2:00 pm., he would have arrived at Car Source at 3:09pm and not 2:47pm. (See Map Quest arrival time and P.I.'s Report; also Tr.42).

Petitioner put on a strong alibi defense that was not impeached, and several witnesses testified Petitioner was driving a black Lexus vehicle on June 27, 2011(Tr.256,259,263,264,272,273,275,277 & 283,284) Furthermore, according to these witnesses and a Car Source receipt Petitioner was not in Virginia during the hours of the bank robbery.

Petitioner was in Virginia the morning of June 27,2011 seeking employment with Fairfax Water Company.(Tr.266-267)

Given the totality of these extraordinary circumstances, petitioner's attorney should have investigated the travel time because it collaborated Banks historical cell sight analysis. This evidence was exculpatory that could have been used to impeach the government's entire case and show petitioner was innocent.

Inevitably, there are cases where our criminal justice system fails and utterly innocent persons are wrongly convicted. This is such a case. Petitioner's attorney's inadvertance and deficiencies was ineffective assistance of counsel. And but for these unprofessional errors the results of the proceedings would have been different. Both prongs of **Strickland's** two-part test have been satisfied. Petitioner seeks dismissal of the charges or in the alternative an evidentiary hearing is warranted.

**B)  FAILURE TO LOCATE, INTERVIEW AND INVESTIGATE ALL
    EMPLOYEES WHO WERE MECHANICS WHO WORKED AT CARSOURCE
    ON JUNE 27, 2011 PREFERABLY BRANDON SELMAN...**

The owner of CarSource Lynwood Makins testified that the black Lexus petitioner was driving was worked on at his business. During petitioner's trial Makins authenticated a receipt showing petitioner's name on it.(Tr. 282-283) He further testified that the work done or performed on this vehicle was a 2 to 3 hour job. Makins stated this business opens at 10:30 a.m. and it closes at 6:00 p.m.. Makins further testified that the vehicle would have to be there by 3:00 p.m. in order for the work to be complete before closing.(Tr.282-284).

According to the receipt a car alarm was installed on the lexus and window tint was put on the windows.(See attached CarSource receipt). Makins stated to petitioner's attorney, he does not remember seeing

petitioner because he encounters so many customers daily. Makins also stated to petitioner's attorney, he did not know which mechanic worked on this vehicle.

Petitioner's contends to succeed on a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively unreasonable and that it prejudiced him. **Lockhart v. Fretwell,** 506 U.S. 364, 369-70, 122 L.Ed 2d 180, 113 S.Ct. 838 (1993).

The norms of practice as set forth in the American Bar Association ("ABA") standards may serve as a guide to determine what is reasonable professional assistance. **Strickland v. Washington,** 466 U.S. 668, 688 (1984). To establish deficient performance petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. A petitioner may rebut that presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. **Kimmelman v. Morrison,** 477 U.S. 365, 368.

Petitioner requested to his attorney to have P.I. McAvoy take the petitioner's photograph to CarSource and show it to all of the employees/mechanics who worked at this business on June 27, 2011. The purpose was to see if any of these employees or mechanics recognized or remember petitioner. This was highly significant because petitioner arrived at this business between the hours of 1:30 p.m. and 2:00 p.m.

## A) Deficient Performance:

Petitioner's attorney stated "he did not want to send his P.I. on any wild goose chases" and that his funds were limited. Attorney refused to have P.I. McAvoy question any of the CarSource employees or show them petitioner's photograph. Attorney stated to petitioner that the owner of CarSource would suffice even though Makins could

only testify and vouch for the receipt and the vehicle.(Tr.282-284) Thus none of the employees or mechanics were questioned. Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when an attorney fails to conduct a reasonable investigation into one or more aspects of the case, especially when that failure prejudices his or her client. **United States v. DeCoster,** 159 U.S.App. D.C.326,487 F.2d 1197,1204(D.C.Cir.1973); **Marzullo v. Maryland,** 561 F.2d 540(4th Cir.1977); **Wood v. Zahradnick,** 578 F.2d 980(4th Cir.1977).

Though there may be unusual cases when an attorney can make a rational decision that a complete investigation is unnecessary, as a general rule an attorney must investigate a case in order to provide minimally competent professional representation. **Morrow v. Parratt,** 574 F.2d 411,413(8th Cir.1978); **Davis v. Alabama,** 596 F.2d 1214,1217 (5th Cir.1979); **United States v. Tucker,** 716 F.2d 576,58-83 & nn.16&18 (9th Cir.1983); **United States v. Ex rel. Cosey v. Wolff,** 562 F.Supp.140, 144(N.D.Ill.1983), aff'd,727 F.2d 656,658(7th Cir.1984).

Mr.Branden Selman("Selman") an employee of CarSource was located five(5) months after petitioner's trial. Selman called and spoke to petitioner's P.I. McAvoy. P.I. McAvoy gave Selman petitioner's attorney's phone number. Selman called petitioner's attorney's office but was unable to reach him, Selman left a message to please return his call but his call was never returned.(September 2012).

Shortly thereafter, Selman signed a notarized affidavit stating, "he was the mechanic who put the window tint on the black lexus vehicle petitioner was driving the morning of the robbery on June 27, 2011. This potential witness stated in his Affidavit that he saw the petitioner at exactly 2:00 p.m.(Please see Attached Affidavit) The BBT bank in Fairfax,Virginia was robbed at 2:00 p.m.(Tr.42)

Selman states, he remembers this day and time because this was his last vehicle he worked on that day. Selman further stated he had an altercation with petitioner over the quality of work he had done on the vehicle. More importantly, Selman stated this was his first and last time ever seeing petitioner.(See Attached Affidavit)

As stated, petitioner's attorney refused and failed to question any of the CarSource employees who worked on June 27,2011. According to this evidence Selman could have been located had a full and complete investigation been done because he was an employee of CarSource and was the person who saw petitioner at this vital time. Petitioner contends his attorney's representation fell below an objective standard of reasonableness measured by the "prevailing professional norms". Id. at 688, **Strickland; Coles v. Peyton,**389 F.2d 224,226(4th Cir.) also see **Sneed v. Smith,**670 F.2d 1348(4th Cir.1981)

## B)   Prejudice:

Petitioner's attorney refused to have P.I. McAvoy take petitioner's photograph to CarSource and show the employees to see if any of them recognized the petitioner. Petitioner's attorney's failure to fully investigate and question any of these employees prejudiced petitioner's defense especially since petitioner presented a receipt from this business.(See Attached Receipt) also see **Griffen v. Warden,**970 F.2d 1355,1358(4th Cir.1992)(Alibi witness); **Towns v. Smith,**395 F.3d 251 (6th Cir); **Anderson v. Johnson,**338 F.3d 382(5th Cir.2003) The complete failure to locate and investigate a potentially corroborating witness can hardly be considered a tactical decision. **United States v. Debango,**780 F.2d 81,85,250 U.S.App.D.C.414(D.C.Cir.1986).

A particular decision not to investigate must be directly assessed for reasonableness in all circumstances applying a heavy measure of

deference to the petitioner's attorney's judgment. **Strickland,**466 U.S. at 691. The duty of all attorney's include the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. **Bryant v. Scott,**28 F.3d 1411,1419(5th Cir) citing **Henderson v, Sargent,**926 F.2d 706-711(8th Cir)

The relevant question is not whether the petitioner's attorney's choice was strategic but whether it was reasonable. **Roe v. Flores-Ortega,**528 U.S.470,481,145 L.Ed 2d 985,120 S.Ct.1029(2000); **Clinkscale,** 375 F.3d at 443. A strategic or tactical decision is not objectively reasonable, "when the attorney has failed to investigate his options and make a reasonable choice between them." **Horton v. Zant,**941 F.2d 1449,1462(11th Cir.) cited in **Combs,** 205 F.3d at 288.

In this case, the apprehension of this employee, Selman, who put the tint on the vehicle was relative and critical to petitioner's cause because he places petitioner at CarSource at **exactly 2:00p.m..** The importance of this witness is an actual sighting of petitioner at CarSource. It was impossible for petitioner to locate this witnes because he did not know him. Selman is the actual mechanic who worked on petitioner's black lexus vehicle the afternoon of June 27, 2011. So the apprehension of this employee and his testimony could have been used to exonerate the petitioner had he been located especially since petitioner was sighted at CarSource at 2:47p.m.(Tr.226-227, 350)

Furthermore, the government expert Banks testified that according to her cell sight analysis of petitioner's cell phone, at 10:31a.m. petitioner was using cell towers off of 295 in S.E.,D.C. south of Anacostia Park.(Tr.207-208) And at 10:30 a.m. Cole was northeast of Suitland Parkway.(Tr.211-212)

Agent Banks testified a minute later Cole's cell phone uses a tower off of South Capital and N street, S.E. between 10:31 a.m. and 10:32 a.m.(Tr.211-212). At exactly 10:37 a.m. the Petitioner's was on New York Ave., N.W.(Tr.209). And Cole's cell phone uses a tower off of South Capital and M Street, S.E. at 10:36 a.m.(Tr.211-212) and the Petitioner's GPS Tower latitude and longitude coordinates were completely different than Coles which proves the Petitioner was not in Coles BMW the morning of June 27,2011. (See BAWA - 2 GPS Tower Maps) Moreover, Cole called the Petitioner at 10:26 a.m. and then again at 10:31 a.m.(See June 27, 2011 call records and call detail records for 202-528-5140). And according to the call detail records the Petitioner returned Coles call at 10:33 a.m. These facts prove the Petitioner was driving in a different vehicle (Lexus) that morning before and after the Van was stolen and was not with Cole in his BMW. (See call detail records for the Petitioner and Cole).

In addition to Makins testifying to the work done on the Lexus vehicle which was a 2 to 3 hour job.(Tr.283) Makins testified this business closes at 6:00 p.m. Petitioner's girlfriend testified that Petitioner took her to work between 8:00 a.m. and 9:00 a.m. and Ms. Cristi Purnell testified Petitioner picked her up at her job between 5:00 p.m. and 6:00 p.m.(Tr.261) Neither Makins or Ms. Purnell's testimony was impeached. Petitioner contends their testimony is critical because he arrived at Carsource at 2:00 p.m. and he was sighted at this business at 2:47 p.m.(Tr.211) Petitioner was at Car Source when the bank was robbed otherwise the Lexus would not have been accepted. Furthermore, Petitioner could not have picked up Ms. Purnell at 5:30 p.m. In sum, the record contains ample evidence indicating that but for Petitioner's attorney's ineffectiveness there is a reasonable probability that Petitioner would have been aquitted

had Mr. Selman been located. There was no eyewitness identification nor forensic evidence.(Tr.166-170) Petitioner's claims of prejudice is further supported by the notable weakness in the government's case.

The outcome is very much undermined. The Supreme Court has explained that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. **Strickland v. Washington,** 466 U.S. at 696, **Clinkscale,** 375 F.3d at 455. Given this Petitioner's attorney abandoned his investigation at Car Source by not locating Mr. Selman a potential alibi witness who actually saw Petitioner at the exact time of the BBT bank robbery. The failure to locate this employee concerning the Petitioner's presence at Car Source was ineffective assistance of counsel. **Blackburn v. Foltz,** 828 F.2d 1177,1182-83 (6th cir.1987)(Alibi witness); **Lawrence v. Armontrout,** 900 F.2d 127,129-30 (8th cir.1990) (Alibi witness); **Weidner v. Wainwright,** 708 F.2d 614,616 (11th cir. 1983).

It is evidence from the government expert Agent Banks investigation that Cole never drove to the Petitioner's residence in Maryland on June 27, 2011 to pick him up. Agent Banks analysis clearly proved Petitioner was never in Coles BMW that morning. The cell tower evidence places Petitioner in a completely different location than Cole.(Tr.207 -213) This evidence should not be minimized. Moreover, it is virtually impossible for Petitioner to drive two (2) vehicles, the stolen Plymouth Van and the black Lexus.

In sum, this unbiased alibi witness (Selman) testimony would have greatly enhanced Petitioner's case. It also lends even greater support to Petitioner's alibi witness's testimony because it corroborates the otherwise unimpeachable testimony of these witnesses. It is unrealistic to look at this testimony as simply cumulative. This is strong

evidence that the outcome and results would have been different had this witness been located.

Hence, petitioner's attorney's failure to fully investigate the employees at CarSource and locate this mechanic(Selman) prejudiced petitioner. These errors undermined confidence in the outcome of the proceedings and deprived petitioner of his fundamental right to a fair trial in violation of the Sixth Amendment. Petitioner has met his burden and seeks a dismissal of the charges or a new trial. Or in the alternative an evidentiary hearing is warranted as to the outcome of the case had petitioner's attorney interviewed Selman who clearly put petitioner at a different location.

### C)  FAILURE TO INVESTIGATE AND LOCATE MICHAEL BROWN BEFORE THE PETITIONER'S TRIAL WHO WAS A POTENTIAL ALIBI WITNESS

The BBT bank in Fairfax, Virginia was robbed at exactly 2:00p.m. on June 27,2011.(Tr. 42) Petitioner was arrested for this crime eight(8) months later. Petitioner had memory lapse as to 8 months prior.

Shortly, before trial, petitioner received a visit from his attorney and P.I.McAvoy. Petitioner was given a copy of his cellphone records and located a sales receipt from CarSource which was dated June 27, 2011.

Petitioner noticed for the first time Mr.Michael Brown's("Brown") cell phone number listed in these records. Petitioner found it clear of what actually transpired on the morning of June 27,2011 and of his actual whereabouts. Again, petitioner informed his attorney of the possibility of locating another potential alibi witness(Brown). Petitioner's attorney informed him that all evidence was final and he had twenty(20) days before trial to obtain any witnesses he wanted to use. Petitioner's attorney stated that his resources concerning

his investigator were limited and it was to late and that he did not want to send his investigator on any wild goose chases. Petitioner's attorney stated that he felt confident with the witnesses he already had. Petitioner asked his attorney to request a continuance in light of these vital alibi witnesses. Attorney refused and stated that all evidence was final.

**A)** **Deficient Performance:**

Accordingly, Petitioner's attorney chose to abandon his investigation at an unreasonable juncture. Attorney made a fully informed decision with respect to petitioner's trial strategy impossible. **Strickland v. Washington,** 466 U.S. at 691. **Grooms v. Solem,** 923 F.2d 88, 90(8th Cir.1991)(Alibi Witness); **Chambers v. Armontrout,** 907 F.2d 825-32(8th Cir.90).

Petitioner contends that Brown was a vital potential alibi witness and friend of petitioner who could have been easily located. Brown was located after petitioner's trial. And three(3) months after the petitioner was found guilty Brown signed a sworn affidavit that petitioner's attorney sent to him. Brown stated that he did not know the petitioner was in jail and he tried to contact him but was unable to reach him. Brown had a new telephone number. He also stated in the affidavit that he met petitioner at 1:30 p.m. at CarSource in Capital Heights, Maryland.

Brown stated further to petitioner's attorney that he met the petitioner at CarSource to return his drivers license that petitioner had left at his apartment early that morning on June 27, 2011. Brown stated that he spent more than one(1) hour talking with petitioner until the work was completed on the black lexus vehicle petitioner was driving. Brown further stated he saw petitioner leave CarSource driving

the vehicle.(See June 5, 2012, attached Affidavit of Mr.Michael Brown)

In sum, the petitioner's attorney was constitutionally ineffective for failing to conduct an investigation into locating this potential alibi witness that would have clearly undermined the government's case and proved petitioner to be innocent. See **Anderson v. Johnson,** 338 F.3d 382(5th Cir.2003)(Counsel's failure to interview or call an exculpatory witness to testify for his client provided deficient performance); also see **Towns v. Smith,**395 F.3d 251(6th Cir.)

The significance of this witness provides an actual sighting of the petitioner at CarSource at exactly 2:00p.m. which was absent from the trial testimony. Furthermore, the petitioner presented a receipt from CarSource.(See Attached receipt) also (Tr.282-283) Brown's testimony collaborates these facts and proves it was impossible for petitioner to be in Virginia at 2:00 p.m.

**B) Prejudice:**

The BBT bank was robbed at 2:00 p.m.(Tr.42) Not one witness identified petitioner as one of the robbers and there was not any physical evidence placing petitioner at the scene and time of robbery. No DNA, fingerprints or forensic evidence in which this day and age is incredible.(Tr.166-167) Several witnesses testified that they seen petitioner driving a black lexus that morning and evening which proved petitioner was not in Virginia when the bank robbery occurred. (Tr.256-257,263-264,268-273,275-277,282-284).

More, importantly the government expert in historical cell sight analysis Banks testimony illustrated that petitioner was in a totally different location than Cole and that they never used the same cell towers that morning of the robbery. This evidence clearly proves the petitioner was never in Coles BMW and that Cole never picked petitioner

up that morning according to their theory.(Tr.207-208,209-210,211-213)

Thus, with so many contingencies there is a "reasonable probability" but for attorney's unprofessional errors in failing to investigate and locate Brown the outcome of the proceedings would have been different and petitioner would have been acquitted. **Strickland v. Washington,** 466 U.S.668, 80 L.Ed 2d at 698-99, and **Gray v. Branker,**529 F.3d 220(4th Cir.2007). Petitioner's attorney's failure to investigate a known potential alibi witness was ineffective assistance.

Petitioner's attorney did not make any attempt to investigate this known lead, nor did he make a reasonable professional judgment that for some reason investigation was not necessary. **Blackburn v. Fultz,**828 F.2d 1177,1183(6th Cir.) also **Sanders v. Ratelle,**21 F.3d 1446, 1456-58(9th Cir.1994)(exculpatory witness) and **Clinkscale,** 375 F.3d at 443. Attorney's failure to conduct a reasonable investigation into locating this important alibi witness prejudiced petitioner and violated petitioner's sixth amendment right to effective assistance of counsel. **Strickland,** 466 U.S. at 690-91 and 698-99; see also **Thomas v. Lockhart,**738 F.2d 304,308(8th Cir.1984) and **Nealy v. Cabana,**764 F.2d 1173(5th Cir.)(Alibi Witness), **Harris v. Reed,**894 F.2d 871(7th Cir. 1990).

The decision made by attorney was objectively unreasonable because it was a decision made without undertaking a full investigation at an unreasonable juncture making a fully informed decision with respect to investigating impossible. Both prongs of **Strickland** have successfully been satisfied. Attorney made no attempt to investigate this potential witness until after the petitioner was found guilty.

Petitioner seeks dismissal of the charges, or a new trial...or

in the alternative an evidentiary hearing is warranted to assess
credibility. **Peavy v. United States,**31 F.3d 1341,1346(6th Cir.1994);
**United States v. Harris,** U.S.App.Lexis 36449(4th Cir.1997).

### D)   FAILURE TO INVESTIGATE, LOCATE AND QUESTION KIRK DEAN AND VICTOR TERRELL...

Petitioner's co-defendant Cole was arrested on June 27,2011
several hours after the BBT bank robbery.(Tr.108-111) A citizen who
worked next to the bank named Allan Luai("Luai") testified about seeing
a blue BMW parked in his building parking lot facing the bank shortly
before the robbery. Luai testified the BMW was facing the sun. He
stated it was eighty(80) degrees and hot and the windows were shut.
(Tr.90-103)

Luai further testified there were two(2) African-American men
sitting in the car staring at the bank. He further stated this was
around 1:00 p.m. and the passenger had cornrolls or braided hair. He
believed the activity of the two males was strange so he wrote the
tag number down of the BMW.(Tr.101-103).

Luai stated around fifteen(15) minutes later he heard the bank
was robbed and he gave the police Coles tag number which eventually
led to Coles arrest.(Tr.90-103) Eight(8) months after Cole was arrested
a superseding indictment was filed in the U.S.District Court on
February 9,2012 in Alexandria, Virginia and petitioner was charged with
the BBT bank robbery in Fairfax. Virginia.

Before petitioner's trial and afterwards Cole stated to petitioner
on several occasions that he was with Kirk Dean and Victor Terrell
the morning of June 27,2011 and not with petitioner. Petitioner imme-
diately shared this information with his attorney.

Petitioner's attorney told him in his opinion it would be a waste of time, and Cole is not reliable and he probably would not cooperate with him concerning the bank robbery. More importantly, Cole was charged with three(3) armed check cashing robberies in Maryland. The first one was in December 2010 and the others were in June just days before the June 27,2011 BBT bank robbery. In all of these check cashing robberies Cole was allege to have been with an unknown accomplice.

Petitioner requested of his attorney to investigate and interview Sargeant Blazer("Blazer") who was investigating Cole in these check cashing robberies in Maryland. Thus, the significance was to see what similarities the June 27,2011 BBT bank robbery had with the December 2010 and June 2011 check cashing robberies.

Coles BMW was captured on video surveillance at the scene in the December 2010 check cashing robbery similar to the BBT robbery. Moreover, Cole stated to petitioner before trial that he was with Dean and Terrell the morning of the bank robbery. Both of these individuals were friends of Cole who could have been located. With new information comes new duties to investigate. The issue is not whether petitioner's attorney conducted an appropriate initial investigation. Rather it is whether once this investigation uncovered some exculpatory evidence attorney would pursue this lead as would a reasonable competent and diligent attorney would. He of course failed to do so.

To establish ineffectiveness petitioner must show that 1)his attorney's performance was deficient and 2)the deficient performance was prejudicial. **Strickland v. Washington,**466 U.S.668,694(1984).

**A)** **Deficient Performance:**

Petitioner's attorney never attempted to ask for permission before petitioner's trial to speak with Cole concerning his statements to petitioner. Attorney never investigated or tried to locate Dean and Terrell to see if they fit the description of the perpetrators that had braids or dreadlocks.

Attorney refused to question or interview Blazer concerning these check cashing robberies because he stated he did not want to sabotage Coles defense. He told the petitioner he just did not see how these "check cashing robberies had anything to do with the BBT bank robberies", even though two(2) of them were committed days before the June 27, 2011 robbery.

Attorney's function is to make the adversarial testing process work in petitioner's case. **Kimmelman v. Morrison,** 477 U.S. 365, 384 (1987) (citations omitted) To fulfill this constitutional mandate, "Attorney must conduct some investigation into the case and into the various defense strategies." Id. at 384-385. **Strickland,** 466 U.S. at 691. **United States v. Debango,** 780 F.2d 81, 85, 250 App.D.C. 419 (D.C.Cir.1986). The duty to investigate is not necessarily fulfilled simply by interviewing those persons who a petitioner names as defense witnesses but it demands that attorney, "make an independent examination of the facts, circumstances, pleadings and law involved"...Minimally, this requires Attorney(or the petitioner's investigator) to contact persons whom he has or should have reason to believe were witnesses to the events in question, and to see witnesses in places in which he has or should have reason to believe the events in question occurred, to conduct these interviews and investigations as promptly after his appointment is possible, before memories fade or witnesses disappear. **United States**

v. DeCoster,159 U.S.App.D.C.326,487 F.2d 1197; **Montgomery v. Peterson,**
846 F.2d 407,412(7th Cir.1988)(nonstrategic decision not to investigate
is inadequate performance) also **Washington v. Murray,**952 F.2d 1472
(4th Cir.1990)(Attorney's failure to present exculpatory evidence is
ordinarily deficient unless some cogent tactical or other consideration
justified it.)

**B)    Prejudice:**

Petitioner contends his attorney may make a decision or give
advice which in hindsight proves wrong. Such errors are not necessarily
grounds for relief. But Attorney' errors were so flagrant that this
Honorable Court can conclude that it resulted from neglect and
ignorance rather than from an informed professional deliberation. His
representation was not within the realm of competence demanded of
attorney's. **McMann v. Richardson,**397 U.S.759,771(1970)   Petitioner's
attorney was constitutionally ineffective for failing to investigate
this critical evidence that would have exonerated petitioner.

Not one of the bank employees ever identified the robbers of the
bank as being petitioner either before or during the trial despite
the government offering into evidence a video and still photos of the
robbery.(Tr.42,46-47,62) Jorge Camacho("Camacho") a bank employee
identified one of the robbers as a person having dreadlocks or corn-
rolls in his hair. Camacho testified the robber was black, six(6) foot
two(2) and possibly in his late twenties.(Tr.42)

Petitioner met with Cole in Washington,D.C. days before the bank
robbery to give him a cell phone for his friend Dean. Upon meeting
Cole to give him the cell phone the petitioner was accompanied by
Crystal Peterson("Ms.Peterson") and her brother so that petitioner
could take them home. Ms.Peterson told Attorney that she witnessed this

incident and that the individual Petitioner met with was driving a dark colored BMW. Ms. Peterson stated there were two(2) other people in the BMW with cornrolls or braids. Although Ms. Peterson could not see their faces that good, during Petitioner's trial she recognized Cole as the driver of the BMW whom Petitioner met to give the cell phone to. Attorney should have tried to locate and question Dean and Terrell.

Moreover, Special Agent Banks testified the records captured the cell tower that initiates the call and the tower on which the call ends. (Tr.227) Banks testified that if a phone uses towers in the middle the records aren't going to reflect.

In sum, Banks states a person could be on a ten-minute call when initiating the call but could've hit many towers in between. **"This is call cell hand off"**.(Tr.228) This assessment by Banks clearly proves the Petitioner was never in Coles BMW and that Cole never picked him up that morning because the Petitioner was never in the radius of the cell tower projection coverage of the Van theft on First and N. St., N.W. (Tr.209) The Petitioner's cellphone was bouncing off of cell towers during a 5 second phone call in the complete opposite direction of Cole and the stolen Van theft which proves the Petitioner was driving a different vehicle.(Tr.209-219)

Furthermore, Cole called the Petitioner's cell phone at exactly 10:26 a.m. on June 27, 2011.(See June 27, 2011 call records for 202-528-5140 and 202-200-2869 and BAWA - 2 GPS Tower coordinates Maps) This undoubtedly proves the Petitioner was not in Coles vehicle in Virginia one hour before the bank robbery. (Tr.90-103) Moreover, the Petitioner never wore dredlocks or braided hair. (Tr.251,256,259,263 264,272,273,275,277 and 283-284).

Both the Petitioner and Cole were utilizing their cell phones seconds after these previous calls. And they both were traveling in different directions. (See call detail records and BAWA - 2 GPS Maps) The Petitioner was on New York Avenue and H St., N.W. and Cole was on Rhode Island Avenue and 7th St., N.W. (Tr.209-213) This fact clearly proves the Petitioner was driving the Lexus before and after the Van was stolen. The Petitioner is actually innocent of this crime because the evidence in the trial record completely exonerates the Petitioner from being in Coles BMW on June 27, 2011. And the failure to investigate Dean and Terrell or others by the Petitioner's attorney, prejudiced the outcome of the proceedings. **Weidner v. Wainwright,** 708 F.2d 614,616 (11th cir.1983); **William v. Taylor,** 529 U.S. at 395-96; **Rompilla,** 545 U.S. at 393; also **Gray v. Branker,** 529 F.3d 220. Wherefore the Petitioner seeks a new trial or an evidentiary hearing is warranted. **Blondeau,** 480 Fed. Appx. 241 (4th cir.2012); **Crawford,** 1998 U.S. App. LEXIS 21629 (4th cir.1998).

**E)** **FAILURE TO OBJECT AND IMPEACH THE CHERRY PICKED
IMPROPERLY INTERPRETED TEXT MESSAGES WITH AGENT
JENNIFER BANKS HISTORICAL CELL SIGHT ANALYSIS,
THE UNKNOWN MALE MESSAGES, AND THE PETITIONER'S
REPLIES TO THEM...**

Petitioner contends the evidence here contains an important but fatal gap. There is several missing, flawed, misleading, contradictory facts surrounding this crime. U.S. Attorney Giles' entire theory was that Cole picked Petitioner up at his residence in Maryland that morning of June 27, 2011 based upon text messages. (Tr.321) She stated that both of their cell phones utilized towers in Washington, D.C. in N.W. at 10:30 a.m. where the getaway car was stolen on First and N Street, N.W. (Tr.16,240).

Giles then contends, the Petitioner was dropped off by Cole and

they were soon driving in separate vehicles, the Petitioner the Plymouth Voyager and Cole is driving his BMW.(Tr.240) These text messages that were extracted from Cole's cell phone were falsely interpreted in the most misleading way. Petitioner in addition contends that the tactics used to deceive this Honorable Court with these false interpretations was designed to get an indictment. This conduct by the government was treacherous and it will shock the conscience of this Honorable Court. These text messages were cherry picked and taken from different conversations.

To get an indictment and convict Petitioner the government would have to assert and fabricate falsely what the messages meant. They did exactly that. The government failed to offer any expert testimony on these text messages. A fair reading of all the text messages elicits Cole selling money orders for approximately one(1) month and trying to cash them, if read in sequence. Petitioner's attorney failed to impeach these text messages with **the unknown male messages, the Petitioner replies to them and he also failed to impeach them with the government expert in historical cell sight analysis Banks investigation and testimony.** (Tr.207-213)

Banks testified she did an analysis in respect to phone number 202 -528-5140 that was in the name of the Petitioner to determine his location at certain hours on June 27, 2011.(Tr.205) The government took the Petitioner's liberties with these false interpretations of these "cherry picked text messages." The trial Court record is deviod of any physical evidence that Petitioner participated in a bank robbery. Petitioner's attorney failed to properly challenge and impeach these text messages with exculpatory facts. Furthermore, the Car Source receipt shows Petitioner was utilizing **two(2) cell phones** on that date. (See

attached receipt).

The petitioner's secondary cell phone number was never investigated. So many inferences that are permissible could have been drawn from this fact to show Cole **never** picked petitioner up that morning. Petitioner's attorney's failure to bring out this impeachment evidence was deficient performance and it crippled the petitioner's ability to prove he was not with Cole according to Banks' cell sight analysis. To establish ineffective assistance of counsel petitioner must show both deficiency and prejudice at the hands of his attorney and in the case at bar was more than amply met. **Strickland v. Washington,** at 688-92.

## A)   Deficient Performance:

The following messages were extracted from Cole's cellular phone transcript:

> **Jones To Cole(5-28-11),Incoming), I'm
> at grandmas...No bars on my phone
> since earlier. U want to ride for a
> minute?** (Page 215, Text 3066)

> **Jones To Cole(5-31-11,Incoming), Man
> I'm just getting in the house...I was
> stuck over there with no charger or
> juice on my phone from saturday until
> this morning. Ima call u?**
> (Page 197, Text 2788)

> **Jones To Cole(6-3-11,Incoming), Look
> thundercat I no ur cussing me out. My
> phone been cut off since yesterday. I
> jus got it on a few hours ago.**
> (Page 181, Text 2555)

> **Jones To Cole(6-3-11,Incoming), The
> chump can only put a nickle on a demo
> instead of a piano...** (Page 179)

> **Jones To Cole(6-3-11,Incoming), I'm in
> route to ritchie road. R u out Md? If
> so I want to get those frm u.** (Page 175)

> **Jones To Cole(6-9-11, Incoming) If I
> dn't see him tonight I will meet up with
> u for sure before u take that big butt
> girl out later. He's at his daughter
> graduation. Trust me its worth another**

day or two...(Page 141)

Jones To Cole(6-9-11, Incoming) I
gotta show u sumthing before I see
him. So later we got a date. Just
dn't be acting crazy and impatient
before I hav to put u on ur back.
Cool? I'll hit u about 6-7(Page 141)

Cole To Jones(6-10-11,Outgoing)
What's the word slim? They can buy
the 20 for 2 stacks or either just give
them back so I can move on real talk
cuz I'm not open no more to being spent
over and over.(Page 131,Text 1851)

Jones To Cole(6-14-11,Incoming) We got
lift off babyboy...cuzz jus gave me a
shout out. Ima go pick that up at the
day party by 1p.m. I gotta go get the
rest of those demos. Dig?(Page 115)

Cole To Unknown Male(6-14-11,Outgoing)
I'm at my mom's waiting on a dude that
be selling official M.O. $1,000 for ¢600.
(Page 112, Text 1584)

Jones To Cole,(6-15-11,Incoming) Giv
me one minute letting phone charge up.
Ima call u!(Page 109)

Cole To Jones,(6-16-11,Outgoing) Ask
the dude can we get them with the joints
still on the end?(Page 105,Text 1480)

Jones To Cole,(6-16-11, Incoming) I'm
mushing out...I'm going over to the
iron workers  union not to far from
grandma to fill out an application. Is
that cool?(Page 103)

Cole To Jones(6-16-11,Outgoing)
Nigga I'm campaigning with folks right
now for half. I'm taking a nickle if a
nigga trying to go jack.(Page 100, Text 1405)

Cole To Unknown Male(6-16-11,Outgoing)
U hear anything from the dude with the
cards AHK! I know a dude that got $1000
money orders for half. I had got 2 frm
him and they were proper so I'm putting
u on to it. he said he can get them whenever
but u know how that game go(Page 100,Text 1410)

Cole To Unknown(6-16-11,Outgoing) Ur Welcome.
I'm about to meet the dude again with the M.O.'s
again cuz he said he is shutting it down after
this ride. I guess I can let u ride this final
time if u want to bust a move.(Page 100,Text 1409)

Cole To Unknown(6-16-11, Outgoing) I'm
fucked up its ending cuz I been working
him for a couple of months.(Page 100, Text 1408)

Jones To Cole(6-17-11,Outgoing) I'm up and
adam...I no wats up wit u? Please dnt go
off yet? We might get everything today. I
jus hit the dude. Call u in two minutes.
(Page 97)

Cole To Unknown Male(6-18-11,Outgoing) This
is a serious move AHK? I need you to be a
man of your word and get in the girl ear
ASAP. Let her know its about $2500 in it
for her. If u can't do it plz let me know
now so we don't lose no time. I'm a man and
I understand no.(Page 89, Text 1251)

Petitioner contends all of these text messages led up to the

June 27,2011 bank robbery. But to get a clear assessment of these

messages, "they must be read in sequence". And this Honorable Court

must also read those sent by Cole to the Petitioner and to the unknown

male to get a complete understanding of the topic of conversation. Not

one single text message sent by Cole to the petitioner infers, invites

or discusses a plan to rob the BBT bank in Fairfax, Virginia "if read

in sequence." These text messages are all related. The evidence is

not balanced and the government foundation is analytically flimsy.

Example:   Cole To Jones(6-23-11,Outgoing) I ain't
got no enemies. I was just letting you
be who u r. I got a lil situation for
about 5 stacks in about an hour if u want
in on it. It's real light work with no
uniforms involved.(Page 43, Text 568)

Jones To Cole(6-23-11,Incoming) Sweet.
Anyway, your music or your ole music.
Don't cuss me out.(Page 43,Text 569) also
(Transcript 319)

The government claimed this is when Cole first tells the petitioner

about this bank.(Tr.239) Yet the petitioner put job applications in

Fairfax Water which is next to the bank.(Tr.266-267,286)

This was all based off of a hunch and a suspicion. "How could

this message have anything to do with a bank robbery when Cole clearly
says he has a lil situation in an hour"? The BBT bank was robbed
four(4) days later on June 27,2011 at 2:00p.m.(Tr.42) Furthermore,
these text messages correlate with Cole and the unknown male the next
day.

Jones To Cole(6-24-11,Incoming) Let
me no wats up? (Page 38, Text 502)

Unknown Male To Cole(6-24-11,Incoming)
Stay put homes the sucka said he will hit
me when he ready hold fast puff.(Page 38,
Text 498)

Cole To Unknown Male(6-24-11,Outgoing)
So u don't want me to be there at 11?
(Page 37, Text 497)

Unkown Male To Cole(6-24-11,Incoming)
No hold fast let you know when I promise
he sound like he still sleep.(Page 37,
Text 496)

Unknown Male To Cole(6-24-11, Incoming)
Don't come yet puff hit u back.(Page 38,
Text 495)

Cole To Unknown Male(6-24-11,Outgoing)
Cool! what time u think we might get
together cuz I missed a whole day yesterday
waiting around.(Relating to June 23rd message)
(Page 38, Text 494)

Unknown Male To Cole(6-24-11,Incoming) Good
question I dunno foreal its on his bitch
ass let u know homes I feel just like you
trust me patience.(Page 38,Text 493)

Cole To Unknown Male(6-24-11,Outgoing)
Man Imma go ahead and make other plans.
if u hit me and I'm available then cool
but if not. u can go ahead and let somebody
else dance.(Page 38, Text 492)

Unknown Male To Cole(6-24-11, Incoming) I
will but I'm only dancing with u homes
peace.(Page 38, Text 491)

Cole To Jones(6-24-11,Outgoing)
Been texting the dude back and forth
all morning and his partner is still sleep
so Imma hit u in a few cuz Im not in the
house.(Page 38, Text 490)

Jones To Cole(6-24-11,Incoming)
I'm still in the post office.(Page 37,
Text 489)

Cole To Jones(6-24-11,Outgoing) What
its looking like? We can work it in a
few if u want. No bullshit? I need
some practice cuz I'm mildew. U make
the call.(Page 37,Text 488)

Jones To Cole(6-24-11,Incoming) Save
ur energy for the big demo...I'm
telling u this ain't nothing...òne
emplo. dig? Longline...probably a stack.
Man u official? Like u told me.(Page 37,
(Text 486)

Jones To Cole(6-24-11,Incoming) aint
gotta do nothing but hold me dwn and
push? (Page 37,Text 485)

Jones To Cole(6-24-11,Incoming) I'm
waiting on u by the car.(Page 37,
Text 483)

Cole To Unknown Male(6-24-11,Outgoing)
Man men don't conduct business like this.
(Page 37, Text 479)

Jones To Cole(6-24-11,Incoming)
Slim ain't hit u? (Page 36, Text 462)

Cole To JOnes(6-24-11,Outgoing)
Nah, he ain't hit me. I'm not tripping
(Page 30, Text 461)

Cole To Jones(6-25-11,Outgoing)
Nah, he ain't hit me. I'm not tripping
I jus hold ppl accountable for what they
say.(Page 31, Text 390)

Jones To Cole(6-25-11,Incoming)
Ima get u a prescription so you can
ŝtop having these sucka attacks.(Page 31)

Cole To Unknown Male(6-25-11,Outgoing)
Slim we grew up together and I'm always
gonna respect u regardless but u aint gotta
be nobody but yourself with me. if u no me
like u say u do then u should know that I
don't play when it come time to boogie.
Men nor muslims conduct business like that.
I'm fucked up with u and I no better the
next time if u bring a proposition to me.
I would never play games with u like that.
(Page 25, Text 319)

It's obvious and quite apparent that the June 23,2011 text message had absolutely nothing to do with the BBT Bank **"if read in sequence"**. It's clear from these messages Cole was selling and trying to cash money orders. Petitioner's superseding indictment arose from these cherry picked fabricated text messaqes that were taken from different conversations and falsely interpreted.

The Petitioner stated...**"I'm still in the post office"**.(Text 489) Then Petitioner says **"I'm waiting on you by the car."**(Text 483) The petitioner was not in Virginia and there were no still photos of the petitioner in the bank on June 27,2011. Petitioner's attorney refused to impeach these text messages with the Unknown Male's messages. These text messages and agent Banks cell sight analysis shows they had nothing to do with a bank robbery and that it was impossible for petitioner to have been with Cole on June 27,2011 based upon his location on the morning in question.(Tr.207-213)

By petitioner's attorney not impeaching these text messages the government in turn made them into what ever they wanted. This evidence was **false and fabricated**. It is impossible for attorney to make a strategic decision about evidence when he did not investiqate or gather evidence that could have clearly exonerated the petitioner.

Attorney's investigation and performance was deficient and this error was not harmless and could not have been considered sound trial strategy. **Kimmelman v. Morrison**,477 U.S.365,385(1986).

**B)   Prejudice**:

The government seeks to stack inference upon inference in its effort to establish a conspiracy and identify petitioner as one of the robbers. But the evidence is simply not supported with material respects. **United States v. Bonner**,648 F.3d 209(4th Cir.2011). Agent

Banks testified at 10:31 a.m. on June 27.2011 that the petitioner was
using cell tower off of the 295 area in S.E., Washington, D.C., south
of Anacostia Park.(Tr.207-208)(Also see attached maps)

At exactly 10:30 a.m. Cole was northeast of Suitland Parkway near
Stanton Road.(Tr.211-212)(See attached maps) Banks testified a minute
later that Cole's cell phone uses a tower off of South Capital and N
street, S.E. between 10:31 a.m. and 10:32 a.m.(Tr.212) This evidence is
tantamount. Moreover, it should not be minimized because it impeaches
the government's entire case and clearly exonerates the Petitioner.
In addition, it also proves the petitioner was traveling in a different
vehicle and in a completely different direction then Cole the morning
of the bank robbery.

These facts also proves it was impossible based upon the govern-
ment's own analyst(Banks), that Cole drove to petitioner's residence
that morning. Giles implicitly contends Cole dropped petitioner off
in Coles BMW to a stolen getaway van in the area of First and N street
N.W. at 10:30 a.m.(Tr.16,240,321) She then states "they are soon driving
in separate vehicles, Cole his BMW and petitioner in stolen Plymouth
Voyager van." (Tr.240)

Petitioner did not use one cell tower as Cole did in S.E.,D.C.
according to the evidence in the record.(Tr.207-212) Furthermore. at
10:37 a.m. the petitioner was on New York avenue, N.W..(Tr.209) Banks
testified at 10:36 a.m. that Cole was on South Capital and M street,
S.E., D.C. (Tr.212)(See attached maps) Both Cole and petitioner were
never together the morning of the robbery according to these facts,
and it is impossible for the government to offer any reasonable expla-
nation for this irrefutable contradiction of the evidence.

In sum, there is a decent chance had the Petitioner's attorney contested and impeached these text messages with the petitioner's replies and the unknown male messages the Petitioner would have been clearly acquitted. **These messages were self explanatory and would have clarified what these messages meant.** This analysis is not complicated because the Petitioner's attorney left this very critical important matter unresolved.

These messages were all related and should've been read or been presented to the jury in sequence as brought forth in this petition. Petitioner's attorney's representation fell below an objective standard of reasonableness. Id. at 688, **Strickland.** "Prejudice" occurs when the likelihood of a different result would have been achieved had the missing evidence had gone in or been presented. **Gray v. Branker,** 529 F.3d 220 (4th cir.2007); **Rompilla,** 545 U.S. at 393; **Wiggins,** 539 U.S. at 534.

Its obvious the text messages didn't mean what the government said they meant based upon Banks cell sight analysis. (Tr.207-228). The government duped this Honorable Court and misled the jury with the improper inferences and false interpretations of these text messages to get a conviction. (Tr.16,240,321-322).

These "extraordinary circumstances" could have been favorably used to put the whole case in such a different light as to undermine confidence in the verdict. **Kyles,** 115 S.Ct. 1566. Wherefore the

The Petitioner's GPS tower latitude and longitude coordinates were completely different than Coles. And Cole called the Petitioner's cell phone at 10:26 a.m. Then Cole called the Petitioner again at 10:31 a.m. on June 27, 2011. And the Petitioner returned Coles call at 10:33 a.m. which shows the Petitioner was driving a different vehicle before and after the Van was stolen. (See June 27, 2011 call records and call detail records for 202-528-5140 and BAWA - 2 GPS Tower Maps).

And this evidence shows the Petitioner was not the individual with dredlocks or cornrolls seen in Cole's BMW one(1) hour before the robbery. (Tr.90-103) And none of the bank employees ever identified the Petitioner as one of the robbers. (Tr.42,46-47,62).

The Petitioner's attorney should have objected to these cherry picked text messages because the inference to be drawn from them prejudiced the Petitioner from receiving a fair trial. **Berger v. U.S.,** 295 U.S. 78,79 (1935). The Petitioner was "actually innocent" based upon Banks cell sight analysis. Banks investigation revealed it was impossible for Petitioner to rob a bank with Cole that evening when the Petitioner was not with Cole or in his BMW that morning.(Tr.207-213) The miscarriage of justice exception applies. See **Washington,** 996 F.2d at 1450.

This failure to object was plain error. **U.S. V. Olano,** 507 U.S. 725,732 (1993) Moreover, the Petitioner was seeking empoyment with Fairfax Water. (Tr.266-267) But most importantly the Petitioner was not in Virginia when the bank was robbed and the Petitioner's alibi testimony and Car Source receipt were not impeached. (Tr.256,259,263, 264,268,273,275,277 and 282-284). Also P.I. McMillan recently spoke to the Petitioner's Probation Officer Carrie Lacey who confirmed through her files, that Petitioner went to Fairfax Water on June 27, 2011. (Exhibit F)

petitioner humbly seeks dismissal of the charges...or in the alternative
an evidentiary hearing is warranted to assess credibility. **United
States v. Magini**,973 F.2d 261,264(4thCir.1992)(A "federal court must
hold an evidentiary hearing when the petitioner alleges facts which
if true would entitle him to relief.")

## F) FAILURE TO INVESTIGATE AND SUBPOENA ALL VIDEO SURVEILLANCE FROM TRAFFIC LIGHTS ON FIRST AND N STREET N.W. AND ARLINGTON BLVD ON JUNE 27,2011...

The government witness Joseph Kennedy("Kennedy") testified that
he noticed his van was stolen at 1p.m. on June 27,2011.(Tr.81-84) And
the petitioner's girlfriend Ms. Purnell testified that petitioner took
her to work that morning and that he had picked her up that evening.
(Tr.256-257) She also testified that work was done on the vehicle
between the time she was dropped off and picked up.(Tr.256-257) Her
testimony was not impeached and a receipt from CarSource was consistent
with her testimony that the petitioner was in possession of this
vehicle.(Tr.282-283) She also testified she worked in N.W. Washington,
D.C.(Tr.255)

The government for their own selfish reasons insist Cole and the
petitioner were together in the same vehicle in close proximity to
First and N street. N.W. where the van was stolen.(Tr.240) The govern-
ment begins the petitioner's morning out at 10:30a.m. with Cole in
N.W.Washington, D.C.(Tr.240) also see(FBI Incident Report)

The evidence in the trial court record reflects the petitioner
was not with Cole the morning of June 27,2011. Agent Banks historical
cell sight analysis is a unique signature of individual existence
which can be used to pinpoint a cell phone location.(Tr.207-212) The
record supports the petitioner's position. At exactly 10:31a.m. the
petitioner was using cell towers off of 295 in S.E.D.C. south of

Anacostia Park. (Tr.207-208)(See attached Map).

Cole was Northeast of Suitland Parkway at 10:30 a.m. near Stanton Road. Banks testified a minute later that Cole's cell phone uses a tower off of South Capital and N Street, S.E. between 10:31 a.m. and 10:32 a.m.(Tr.211-212) And at 10:37 a.m., the Petitioner was on New York Avenue, N.W.(Tr.209)At the same hour Cole's cell phone uses a tower off of South Capital and M Street, S.E. at 10:36 a.m. (Tr.211-212) (See attached Maps of Street locations).

From these facts alone, it can be determined that the Petitioner was not in Cole's BMW the morning of June 27, 2011 because they were in completely different locations the entire morning and evening of the bank robbery. Furthermore, Cole called the Petitioner's cellphone at 10:26 a.m. on June 27, 2011. (See June 27, 2011 call records for 202 -528-5140) And then Cole called the Petitioner's cell phone again at 10:31 a.m. And the Petitioner returned Coles call at 10:33 a.m. which proves the Petitioner was not in Coles BMW and he was driving the black Lexus that morning. (See Car receipt and call detail records for 202-528-5140 and 202-200-2869) Banks also testified the Petitioner's cell phone was not turned off. (Tr.224).

According to Banks historical cell sight analysis, the Petitioner's cell phone was bouncing off of cell towers during a 5 second phone call in the opposite direction of Cole and the stolen Van theft on New York Ave. & H St.(Tr.209) This clearly proves the Petitioner was driving a different vehicle. (See call detail records for 202-528-5140. Corey Jones BAWA - Maps).

There were two(2) vehicles involved in this crime according to the government evidence in the record, Coles BMW and the stolen PLY-

mouth van.(Tr.240) There was no DNA, fingerprints, or any hair fibers found in either vehicle pertaining to petitioner.(Tr.166-167) And not one witness identified petitioner as being in these vehicles. (Tr.90-103)

Furthermore, not one witness identified the petitioner as the perpetrator of this bank robbery, this despite the government offering into evidence a video and still photos of the robbery.(Tr.42,46-47, 62,170)

## A) Deficient Performance:

Petitioner requested his attorney to investigate and subpoena all video surveillance from traffic lights on First and N Street, N.W. and on Arlington Blvd. where the petitioner was allege to have driven on June 27,2011 according to the government cell sights at certain hours of the morning. Petitioner's attorney informed petitioner that it would be a waste of time and funds.

Attorney refused to investigate and subpoena this video surveillance footage from these traffic lights. The Sixth Amendment requires that, in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. U.S. Const. amend. VI, and that such assistance be effective, **Strickland,**466 U.S. at 686.

Ineffective assistance of counsel is a mixed question of law. A petitioner must establish that his "counsel's representation fell below an objective standard of reasonableness" measured by the "prevailing professional norms."Id. at 688, and "that there is a reason-able probability that but for counsel's unprofessional errors the results of the proceedings would have been different." Id.at 694.

Petitioner contends that Strickland requires that the "particular decision not to investigate must be directly assessed for reasonableness

in all the circumstances." 466 U.S. at 690-91; also see **Wiggins,**539
U.S. at 524-25. This video surveillance footage if obtained would have
shown the exact vehicle type the petitioner was driving along with
showing the exact time and hour the petitioner entered into Virginia
and when he departed. These traffic lights have twenty-four(24) video
surveillance footage.

Petitioner's attorney was objectively unreasonable in failing
to investigate the video footage from these traffic lights. And his
representation fell below an objective standard of reasonableness as
is necessary to satisfy the performance prong of **Strickland's** two-
prong test. **Strickland,**466 U.S. at 687.

**B) Prejudice:**

The above mentioned evidence specifically the traffic lights on
First and N Street, N.W., and Arlington Blvd. could have been favorable
to the petitioner had his attorney apprehended the video surveillance
footage. This evidence would have colloberated the government's expert
witness Banks testimony because it would've showed the vehicle type
and the person driving said automobile. This evidence would have proved
the petitioner was not with Cole or in his BMW.

Petitioner's attorney disregarded this evidence and blatantly
failed to investigate it or subpoena it. **Montgomery v. Peterson,**846
F.2d 407,412(7th Cir.1988)(Non-strategic decision not to investigate
is inadequate performance.) This error by attorney was not harmless
or sound trial strategy but extremely prejudicial because several
witnesses testified the petitioner was driving a black Lexus the morning
of June 27,2011.

Petitioner contends none of their testimony was impeached.
(Tr.256-257,268-273,275-277,282-283) The petitioner concludes the

the video surveillance footage could have been used as impeachment evidence and the failure to investigate this evidence was ineffective assistance of counsel under the **Strickland** test. Petitioner further argues that the outcome of the proceedings would have been different.

Wherefore, Petitioner seeks a new trial or in the alternative an evidentiary hearing consistent with the well articulated facts of Petitioner's attorney's blatant ineffectiveness.

**G)    FAILURE TO INVESTIGATE AND SUBPOENA ALL VIDEO
SURVEILLANCE FROM FAIRFAX WATER COMPANY AND
GOLD'S GYM OFF OF ARLINGTON BLVD, IN FAIRFAX,
VIRGINIA ON JUNE 27,2011...**

Petitioner avers that he was seeking employment with Fairfax Water Company. And the petitioner specifically stated to his attorney that he arrived at this place of business between the hours of 11:00a.m. and 11:15a.m. to pick up a job application. Fairfax Water Company is located off of Arlington Boulevard and its approximately one tenth of a mile from BBT bank.(Tr.266-267,286)

The petitioner's cellular phone was sighted at 11:01a.m. on Arlington Blvd. in Fairfax, Virginia by himself.(Tr.209) Upon arrival at Fairfax Water Company a black middle aged woman with glasses gave the petitioner an application and they spoke briefly about the job description. After receiving this application, this employee went in front of the building to smoke a cigarette. As the petitioner was departing this business this employee told the petitioner "good luck". Petitioner again brought this information to the attention of his attorney but no attempt was made to find or locate this employee to see if she remembered the petitioner. Petitioner stated to his attorney that after leaving Fairfax Water Company he stopped by Gold's Gym located off of Arlington Blvd. in Fairfax, Virginia to inquire about a job because the petitioner was a licensed personal trainer.

There is video surveillance inside the gym and outside in the Gym's Parking lot. Although the petitioner's P.I. McAvoy went to this business to see if they had the petitioner's application or resume on file, no attempt was made to obtain the video footage for the morning of June 27,2011.

An Accused is entitled to be outfitted with an attorney..."who plays the role necessary to ensure that the trial is fair."Id.at 685 The test accordingly is whether the petitioner's attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id.at 686. The result of a proceeding can be unjust even if the errors of the petitioner's attorney cannot be shown by a preponderance of the evidence to have determined the outcome.Id. at 694. Attorney's abdication of responsibility undermined the judicial process. Petitioner contends by contrast this unexplored evidence is the type of evidence that could have changed the outcome of the proceedings. Strickland v. Washington, 466 U.S.668,80 L.Ed 2d at 698-99.

## A)   Deficient Performance:

Petitioner's attorney advised him that it would be a waste of time and funds to try and locate the woman who worked at Fairfax Water Company. This employee can attest to the whereabouts of petitioner. Petitioner requested his attorney to subpoena the security surveillance video in the lobby for the day of June 27,2011. Attorney refused to subpoena the surveillance video and he also refused to have P.I.McAvoy take petitioner's photograph to see if any of the employees remembered seeing the petitioner the morning of the robbery.

In a case where petitioner fails to properly investigate it can be deemed that the likelihood of the missing evidence could have

changed the outcome of the proceedings especially when the evidence is scant. **Hoots v. Allsbrook,** 785 F.2d 1214,1219-20(4th Cir.1986); **Nealy v. Cabana,** 764 F.2d 1173,1174(5th Cir.1985) and **United States v. Russell,** 221 F.3d 615,621(4th Cir.2000), **Rompilla,** 545 U.S. at 393.

**B)  Prejudice:**

The video surveillance footage in Fairfax Water Company and Gold's Gym should have been investigated and subpoenaed. This evidence if discovered and obtained would have showed the petitioner picking up an application at exactly 11:15a.m. and it also would have showed the exact dress attire of the petitioner which was contrary to that of the robber given by the employee of the bank.(Tr.42,46-47,62)

Furthermore, this evidence would have shown the petitioner getting into the black lexus and driving in the complete opposite direction of the bank. The petitioner's attorney instead called a random employee of Fairfax Water Company to authenticate the procedures of the application process.(Tr.266-267) The application was picked up on June 27, 2011 and returned a few weeks later.(Tr.266-267)

In sum, and as previously stated the petitioner's attorney refused and did not investigate or subpoena this video surveillance footage. This error was not harmless and it was extremely prejudicial. **Wiggins v. Corcoran,** 288 F.3d 629 and **Williams v. Taylor,** 529 U.S.362,146 L.Ed 2d 389,120 S.Ct.1495. Petitioner's attorney provided ineffective assistance to petitioner and these unprofessional errors in the forms of the video surveillance inside and outside the buildings could have been used to exonerate petitioner. The petitioner P.I. Rossyln Mcmillan recently spoke to the petitioner probation officer Carrie Lacey.  And Lacey confirmed through her files that the petitioner job search listings were accurate for June 27, 2011. (Exhibit F) (Fairfax Water) The petitioner seeks a new trial.

**H) FAILURE TO OBJECT TO PREJUDICIAL TESTIMONY AND FAILURE TO REQUEST A MISTRIAL OR CURATIVE INSTRUCTION...**

Petitioner's attorney was notified by the government that they plan to call petitioner's probation officer Carrie Lacy("Lacy") to testify. Attorney told petitioner that the government had a proposition for him. Attorney stated, "if the petitioner did not object to the government calling his probation officer", the government in turn would not bring out any testimony regarding a Black Dodge Truck the petitioner had been cited in for a speeding ticket several months prior.(See attached citation)

The petitioner vehemently rejected this proposition and vigorously requested his attorney to object to his probation officer testifying on the government's behalf. Petitioner never took the witness stand and the black dodge truck was not in his name and was not his vehicle. Furthermore, it was not affiliated with any crime and more importantly this vehicle was repossessed by a collection agency weeks before the bank robbery.

Petitioner's attorney ignored petitioner's request and his probation officer Lacy was permitted to testify on behalf of the government.

Lacy testified that part of her duties as a government employee was to supervise individuals in the community.(Tr.177) Lacy further testified part of her duties was to meet the petitioner at his home. (Tr.177) She testified, the petitioner completed a written report in which he would submit both his residence and any employment information once a month to her.(Tr.178)

Shortly thereafter Detective John D. Vickery("Vickery") testified in the government's behalf. Vickery testified that through a law enforcement database he was able to come up with an individual who matched the petitioner's description that lived in the Maryland

area.(Tr.233) This is how Vickery identified the petitioner.(Tr.234) The petitioner's attorney objected to this testimony and comment.(Tr. 233) And the petitioner immediately requested his attorney to ask for a mistrial or curative instruction because these comments were improper. The attorney refused Petitioner's request.

## A) Deficient Performance

The bellweather case in the analysis of this argument is **Strickland v. Washington**,466 U.S.668,104 S.Ct.2052,80 L.Ed2d 674(1984) The petitioner's attorney's performance was ineffective at this critical stage of the proceedings.

Once Again Strickland holds that the Sixth Amendment right to a fair trial entitles the petitioner to reasonably effective assistance of counsel. The Strickland Court stated, that only when the petitioner's attorney's performance falls below an objective standard of reasonableness will the performance be unconstitutionally ineffective. **Strickland,** 466 U.S. at 687-88. There is no acid test for determining what is and what is not reasonably effective assistance. Here, the inquiry is dependent on the totality of the circumstances.

However, the petitioner's attorney's role as a decision maker regarding case strategy and trial tactics was deficient and should be independently scrutinized for its reasonableness under the circumstances. The petitioner deals solely with his attorney's errors not to object to prejudicial testimony as evidence that should not be minimized.

Petitioner's probation officer Lacy should not have been allowed to testify on behalf of the government especially since the petitioner never took the witness stand and he never denied ownership of the cell phone. Ms. Lacy's testimony had little relevance or materiality at the

Petitioner's trial, and the use of her testimony unduly outweighed the danger of prejudice that the jury could invoke and assert she was a Probation Officer and the Petitioner was on Probation. (Tr.177-178) The sole purpose for her testimony was to prove the Petitioner had bad character. In contrast, the Petitioner's Probation Officer was called to testify allegedly to confirm Petitioner's cell phone number. Petitioner's number was in his name and the government witnesses confirmed this fact through their own independent investigation. (Tr. 68,205) So Lacey's testimony was irrelevant.

Attorney acted arbitrarily by not objecting to his Probation Officer's testimony and rejecting her to testify. Moreover, Petitioner informed his attorney that he told his Probation Officer that he went to Fairfax Water Company to inquire about employment on June 27, 2011. Petitioner told his attorney to interview and question Lacey because she keeps chronological records of the places the Petitioner goes and looks for employment. Attorney did not interview Lacey before the Petitioner's trial. Had he done so, **this material fact** would've supported and strengthened Petitioner's defense.

Lacey testified that she had present with her "all of the places Petitioner had informed her that he went to look for a job."(Tr.179) The attorney failed to question or confirm this fact for the day of June 27, 2011. Attorney stated he did not want to open pandora's box because he did not think Lacey would help even though he could have obtained this fact before Petitioner's trial. The Petitioner's Investigator Rossyln McMillan recently spoke to the Petitioner's Probation Officer Carrie Lacey. And (Lacey) confirmed through her files that the Petitioner's job search listings were accurate. And that the Petitioner informed her he went to Fairfax Water Company seeking

employment on June 27, 2011. (See Notorized Affidavit Exhibit F)

This was plain error, and under the plain error standard the petitioner must show 1)that an error occurred; 2)that the error was plain and; 3)that it affected the petitioner's substantial rights. **United States v. Olano**,507 U.S.725,732,123 L.Ed 2d 508,113 S.Ct.1770 (1993) The petitioner's attorney's failure to object or request a curative instruction regarding Lacy's improper testimony was "inadequate and unreasonable professional judgment." Petitioner's attorney's performance fell below the standard of reasonably effective assistance.

More importantly, petitioner contends that the comments made by Vickery were calculated, deliberate and prejudicially affected the petitioner's substantial rights so as to deprive him of a fair trial. The comments elicited character evidence and it greatly jeopardized the integrity of the trial. These improper comments could draw an impermissible inference that petitioner had a prior conviction.(Tr.233)

Petitioner's attorney acted irrationally for failing to accept this Honorable Court's offer of a curative instruction.(Tr.234) The Honorable Judge Hilton("Judge Hilton") agreed that the government's questions were improper.(Tr.233) Attorney refused the Court's offer of instructions and left the matter uncorrected. In what is indeed a rare occurrence a curative instruction could have prevented an otherwise improper comment made by these government witnesses from swaying or misleading the jury. Attorney's, actions were deficient and under the norms expected of effective assistance and is not harmless error.

**B) Prejudice**

Petitioner's attorney's actions lacked an objectively reasonable basis and actual prejudice resulted from attorney's inactions. Prejudice can be presumed when no curative instruction was given to the

jury. These errors went to critical issues at trial. And both errors were significant and wrongly admitted and were more than prejudicial. The evidence against Petitioner was shallow and very weak circumstantial evidence that is unsupported by the facts in this Honorable Court's record.

Consequently, there was no identification evidence or forensic evidence. Furthermore, the Petitioner presented a strong alibi defense that was not impeached. (Tr.256,257,268,273,282,283).

In addition, government expert Banks testimony clearly exonerated the Petitioner and proved the Petitioner was actually innocent of the crime. The government's entire case was that Cole picked Petitioner up at his residence in Maryland on June 27, 2011, and that they were together in the same vehicle at 10:30 a.m. on First and N Street, N.W. in Washington, D.C. (Tr.16,240,322).

The facts illustrates Cole called the Petitioner's cell phone at 10:26 a.m. And then Cole called again between 10:31 a.m. and 10:32 a.m. The Petitioner returned Coles call at 10:33 a.m. (See June 27, 2011 call records for 202-528-5140 and call detail records) also see (BAWA - 2 GPS Tower Maps).

**Therefore it is impossible for the Petitioner to have committed bank robbery with Cole when "the historical cell sight evidence" shows the Petitioner was not in Coles BMW and not with Cole.** The evidence presented showed the Petitioner was driving in a different vehicle in a different direction than Cole. (Tr.207-213) These facts prove the Petitioner was not the individual seen in Coles BMW with braids or dredlock hair.(Tr.90-103) Evidence was presented that the Petitioner

was in Virginia the morning of June 27,2011 seeking employment with
with Fairfax Water Company.(Tr.266-267) Banks analysis corroborates
the petitioner's alibi witnesses and CarSource receipt that he was not
in Virginia when the bank was robbed.(Tr.256,263-264,268-273,275-277
and 282-284) also (Tr.207-213) The government used several references
that the petitioner wore a wig during this bank robbery.(Tr. 11,317,
348-349) Not one witness testified that the robber's hair looked fake
or strange.(Tr.42,47,62,90-103) The still photograph shows the robber
wearing a hat.(Tr.317) also(See attached video surveillance still
photographs).

There was no wig found, and there was no evidence the petitioner
purchased a wig. These references was a foul way to taint the jury into
hypothesizing the petitioner as the robber. These acts committed by the
government were consistent and inevitable the entire trial. Lacy and
Vickery's testimony was fuel to a fire already ignited by the govern-
ment's fabricated references.(Tr.11,317,348-349) These comments by
these witnesses materially affected the verdict. **United States v.
Wilson,**135 F.3d 291,297-302(4th Cir.1998) And the natural inference by
the jury is that the petitioner had a criminal record. It was osten-
sibly admitted to show bias and to attack petitioner's character and
to paint the petitioner as a criminal.

Probation officer Lacy's testimony was improper and inflammatory
comments that implied she was a probation officer.(Tr.177-178) And
Vickery's statements constituted impermissible character evidence and
prejudice.(Tr.233) The Supreme Court has noted that the strength of
the government case and the persistence of the prosecution in using
objectionable material are factors the Court should examine in consi-
dering prejudice. **Berger v. United States,**295 U.S.78,89(1935)(See also

**United States v. Rich,**326 F.Supp.2d 670,681-682(E.D.PA.2004) citing
**United States v. Mastrangelo,**172 F.3d 288,297-298(3d Cir.1999)).

This Honorable Court cannot say with fair assurance, after ponder-
ing all that happened without stripping the prejudicial testimony and
improper references from the whole that the jury judgment was not sub-
stantially swayed by petitioner's attorney's ineffective assistance.
Petitioner contends that the individual or cumulative impact of the
above enumerated errors warrants a reversal.

Obviously, some of the errors complained of were more significant
than others committed by the petitioner's attorney. But the complete
failure to object to the petitioner's probation officer(Lacy) from
testifying denied petitioner of a fair trial. Lacy's testimony was
unfairly prejudicial as was Vickery's improper comments.(Tr.177-178,
233).

As petitioner's attorney and agent, his attorney was permitted to
make decisions that bind the petitioner as agents generally do with
regard to matters within the scope of its authority. That authority
is binding only unless and until revoked. Attorney at the very least
should have requested or accepted this Honorable Court's offer of a
curative instruction to correct the unresolved matter.(Tr.233-234)

Petitioner "specifically instructed his agent" to accept the
Court's offer of a curative instruction on his behalf, to that extent
the petitioner's request was reasonable. Petitioner's attorney as his
agent was obligated to do so and his agency to do otherwise was revoked
by his attorney's refusal. Petitioner's attorney's actions were def-
icient and they greatly prejudiced his defense. And but for these
errors, the outcome of the proceedings would have been different.

This failure to object constituted sufficient cause for an overall

reversal especially when no curative instruction was requested.
Whether the statements are intentional or not they take on a greater
importance when the evidence is not overwhelming and the case is
close. **Berger v. United States,** 295 U.S. 78,79, 88 L.Ed 1314, 55
S.Ct. 629 (1935). The jury could not make individual guilt deter-
minations because the Court's cautionary instructions were not given.

The trial record discloses that viewed in the context of the
entire trial a curative instruction could have dissipated the
prejudice created by these witnesses testimony and his attorney's
ineffectiveness. This cumulative evidence was persuasive to the jury.
And the jury was swayed by the bias testimony and comments of these
witnesses.

In that regard the Petitioner asked of this Honorable Court to
adopt his: **J) FAILURE TO OBJECT TO THE GOVERNMENT THEORY THAT THE
PETITIONER WAS A PRINCIPAL IN THE BANK ROBBERY** argument to justify
the conclusion that the government behavior substantially infected
the Petitioner's trial. This case was close as evidence by the mixed
jury verdict concerning the Petitioner. (tr.382)

Banks historical cell sight analysis bolsters this argument
that the Petitioner was not with Cole nor in his BMW (Tr.207-213).
And the failure to correct this error would be a miscarriage of
justice because the Petitioner is "actually innocent." Both prongs
of **Strickland's** two-part test has been satisfied. The Petitioner
seeks a new trial, or in the alternative an evidentiary hearing is
warranted. **United States v. White,** 366 F.3d 291 (4th cir.2003).

I)    **FAILURE TO CALL FRANK GRIMES AS AN EXCULPATORY WITNESS..**

A witness by the name of Frank Grimes("Grimes") stated to detective
Vickery and Investigator McAvoy   that he worked near the BBT bank at
Fairfax Water Company. This witness approached the police outside of
the bank with information he believed was related to the bank robbery.
While on his lunch break around 12:40 p.m. he stated he was returning
from Wendy's nearby when he noticed a dark blue SUV with Maryland
license plates sitting in the parking lot facing the bank. This
witness further stated, there were two black male subjects in the van
wearing dust masks around their necks. He stated he only saw the sub-
jects for a few moments before having to continue to drive his vehicle.
He also stated they had on dark clothing and he describes the vehicle
as a Dodge Durango with newer red, white and blue Maryland license
plates.(See attached Incident Reports)

Several days before petitioner's trial the petitioner's attorney
met with Giles. Petitioner's attorney told .him the government's theory
was that the petitioner drove a black Dodge Durango truck, and that
this truck was at the scene of the crime on June 27,2011.

Petitioner was cited on March 14,2011 while driving a black Dodge
Journey Jeep.(See attached citation) This truck was not petitioner's
nor in petitioner's name. Moreover, it was not affiliated with any
crime but importantly it was repossessed by Santander Consumer USA,
Inc. on June 20,2011 before the June 27,2011 bank robbery. So it was
impossible for this vehicle to have been involved in this crime.

This evidence contradicted the government's entire case. The
Petitioner immediately shared this information with his attorney three
(3) days before trial. And petitioner's attorney contacted the reposse-
ssion company and documents were faxed to his office confirming the

vehicle was picked up on June 20,2011. This evidence could have been used to impeach the government's case. The petitioner told his attorney **not** to share this information with the government.

**A)  Deficient Performance:**

The constitutional right to a fair trial is the underpinning of the right to effective assistance of counsel. **Strickland v. Washington,** 466 U.S.668,104 S.Ct.2052,80 L.Ed 2d 674(1984).

Contrary to petitioner's request the petitioner's attorney contacted the government and alerted them to the documents faxed from the repossession company. (Tr.298) Examined in this light, this act of betrayal was not **"reasonable professional judgment"** supported by a reasonable explanation. And it was not sound trial strategy under prevailing professional norms. **Kimmelman v. Morrison,**477 U.S.365,368 (1986). The petitioner's attorney had a duty and an obligation to protect the interest of the petitioner while also serving as an officer of the Court.

However, after freely sharing this information with the government Giles changed her theory of the facts regarding the petitioner. The government then contended Cole drove to the petitioner's residence the morning of June 27,2011 based upon text messages.(Tr.321)

Giles states after Cole picked the petitioner up in Maryland he drove the petitioner to First and N street,N.W., D.C. at 10:30 a.m. to steal a vehicle.(Tr.16,240) She further contends soon the petitioner and Cole were driving in separate vehicles, Cole in his BMW and petitioner in the stolen Plymouth Voyager.(Tr.16,240)

Petitioner's attorney's performance fell below an objective standard of reasonableness and his attorney was unconstitutionally ineff-ective. **Strickland,**466 U.S. at 687-88. These errors were so serious that

it deprived the petitioner from receiving a fair trial guaranteed by
the Sixth Amendment, and the error was so flagrant that this Honorable
Court can conclude that it resulted from ignorance rather than from
an informed professional deliberation.

In this case this error, can hardly be considered a tactical
decision especially when it propelled the government's case against the
petitioner. The government's star witness Laui testified that the
passenger in Coles BMW had cornrolls or braided hair. Mr. Luai stated,
at 1:15 p.m. he noticed two(2) black men in this vehicle talking facing
the bank. (Tr.90-103) The government contends petitioner was the indiv-
idual in this BMW. (Tr.11-12,352)

### B) **Prejudice:**

Petitioner's attorney's deficiency influenced the outcome of the
proceedings. On April 23,2012 the day of the petitioner's trial, attorney
agreed not to call this potential unbiased government witness Grimes.
As stated earlier this witness was questioned and interviewed by
Vickery and Investigator McAvoy. Attorney agreed with the government
to release this witness seconds before the petitioner's trial begun.
This witness never got a chance to testify. Grimes was an exculpatory
witness. Grimes told Vickery that at exactly 12:40 p.m. he noticed a
dark blue SUV with Maryland license plates sitting in the parking lot
facing the bank. He stated, there were two(2) black males in a van
wearing dust masks around their necks. But most importantly, he stated
they were in a Dodge Durango Truck.

**This exculpatory witness contradicts the government's star witness**
**Luai testimony. (Tr.90-103) And so may inferences alone could be drawn**
**from this witness's testimony if he was able to testify.** The fact re-
mains the government's case rests on unsupported conclusions. And the

petitioner's attorney failed to present or call Grimes as an exculpatory witness. **Washington v. Murray**, 952 F.2d 1472(4th Cir.1990) ; **Anderson v. Johnson**, 338 F.3d 382(5th Cir.2003); see also **Sanders v. Ratelle**, 21 F.3d 1446,1456-58(9th Cir.1994); **United States v. Debango**, 780 F.2d 81,85(D.C. Cir.1986).

In sum, the result of the petitioner's proceedings can be unjust even if the errors of the petitioner's attorney cannot be shown by a preponderance of the evidence to have determined the outcome.Id. at 694.

By contrast this exculpatory witness is the type of evidence that could have changed the outcome of the proceedings. There was no iden-tification evidence or forensic evidence and there were no fingerprints in Coles BMW or the stolen Plymouth Voyager van.(Tr.166-170) Further-more, the petitioner did not wear dreadlocks, braids, or cornrolls and none of the bank employees stated the robbers hair looked strange or fake and no wig or anything of the sort was found.(Tr.42-47,62,341)

The petitioner's attorney conduct undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.Id.at 686. The petitioner presented strong evidence that he was not in Fairfax, Virginia when the bank was robbed.(Tr.256-259,263-264,268-273,275-277 and 282-284)

To be clearly understood and examined in focus the contentions of the petitioner must be considered in full context of the facts. The petitioner's attorney never requested the cell sight master list. This was imperative because the petitioner's longitude and latitude coordinates were completely different than Coles.(See BAWA Maps) The cell tower evidence shows petitioner traveling in a complete different vehicle and in a completely different location than Cole the entire

morning which proves Cole never picked him up and they were never together that evening of the robbery.

This evidence exonerates petitioner and it cannot be disputed. Banks cell tower analysis are material facts that show Cole called the petitioner's cell phone at 10:31a.m. and 10:32a.m. which proves he was not in Coles BMW. It in addition clearly impeaches the government's entire case against petitioner.(Tr.207-213) also (See call detail records)

**Even still the petitioner was completely blindsided and railroaded by his attorney's "last hour" agreement with the government to dismiss this exculpatory witness(Grimes) seconds before petitioner's trial begun. The government relied on its star witness Luai's testimony and from this witness they inferred the petitioner was the individual in the passenger seat of Coles BMW.(Tr.90-103)**

This witness never identified the petitioner as being in this vehicle.(Tr.90-103) Moreover, Santander Consumer U.S.A., Inc. faxed the documents confirming the Black Dodge Journey Jeep was picked up on June 20,2011 days before the bank robbery. "Even if the petitioner's attorney could not subpoena an employee from the Santander Consumer U.S.A., Inc. in time for the petitioner's trial. **These documents alone could have been used to impeach the government case because petitioner's attorney was an officer of the Court.**

There was no reasonable explanation to alert the government of this exculpatory evidence. In sum, Grimes had valuable information that could have strenghtened the petitioner's defense. The impact of this witness testimony could have been tremendous to petitioner and raised a reasonable doubt with the jury. **More importantly had the jury heard testimony from Grimes who witnessed the exact same incident as**

Luai, its likely the Petitioner would have been acquitted of the charges. Grimes stated he saw a Dodge Durango Truck, not a BMW. This testimony clearly contradicts Luai's testimony. (Tr.90-103).

Ms. Peterson testified that she saw the Petitioner at 12:00 p.m. (Noonish) on June 27, 2011 driving a black Lexus. (Tr.270-271) And Baker testified that he took his lunch break at 12:30 p.m. and that he met the Petitioner at his house on June 27, 2011. Mr. Baker testified that the Petitioner was driving a black Lexus. (Tr.275-276) Mr. Troy Groom testified that Petitioner brought a resume to the store on June 27, 2011. Mr. Groom testified that he does not accept resumes after 1:00 p.m. (Tr.263-265).

These witnesses testimony was not impeached and it colloberates Grimes statements. Banks cell sight analysis was extraordinary evidence that clearly showed the government's entire case was fabricated.

This evidence proved the Petitioner was driving a different vehicle and in the opposite direction than Cole and of course was not in Coles vehicle. (tr.207-213). When this evidence is examined in its totality the Petitioner suffered significant prejudice by his attorney not calling this exculpatory witness, Mr. Grimes to testify.

The Petitioner's attorney failed to even interview Grimes. Agent Banks analysis    determine that a cell phone normally connects to the tower in its network with the strongest signal. (Tr.220-223) This is usually the tower nearest to the cell phone. The Petitioner's cell phone never connected that morning with Coles cell phone in Maryland, S.E., D.C or New York Ave., N.W. on June 27, 2011 which proves the Petitioner was not in Coles BMW that evening. (Tr.207-213) and GPS Tower Maps). The petitioner seeks a reversal of this unjust conviction.

J)    FAILURE TO OBJECT TO THE GOVERNMENT'S THEORY THAT
      THE PETITIONER WAS A PRINCIPAL IN THE BANK ROBBERY
      ON JUNE 27, 2011...

In the opening statements the government alleged that it would introduce evidence during the trial that Petitioner wore a wig.(Tr.11)

> Gov't atty Giles: Defendant Jones also wore dreaded hair to try to or dreaded, like dreds, a wig to disguise his identity.

In response, the Petitioner's attorney stated in his opening that the government would not produce such evidence. (Tr.24)

> Atty. Aquino:  I noticed a moment ago the government lawyer indicated something about a wig. No evidence of that. You're not going to hear anybody come in and testify that there was a wig found or a wig used because nobody knows. Ms. Giles wasn't there. I wasn't there. None of you were there. There's no evidence to support that.

The government produced no evidence of a wig during trial, did not attempt to offer such evidence and adduced no testimony suggesting a wig was worn. (Tr.340)

No currency was found linking back to Petitioner to suggest a permissible inference to be drawn. **United States v. Wilson,** 135 F.3d 291,297-302 (4th cir.1998). In **Wilson,** the Fourth Circuit concluded a prosecutor may argue that the evidence gives rise to an inference but the suggested inference must be reasonably drawn from the facts in evidence. The bank employees described the robber as having dreads, 6'2" in height, in his late twenties(20) or early thirties(30) in age, construction jeans, cap, cotton gloves, sunglasses, backpack and a painters mask around his neck. (Tr.42,46-47,62,90-103) None of these items were found linking back to the Petitioner. And no one identified the Petitioner as a robber.

There was no forensic evidence, DNA, identification evidence, no fingerprints, no confession and no co-defendant testimony. In addition

there was no evidence of Petitioner in the bank, Coles BMW or the stolen Plymouth Voyager. (Tr.166-170) The government claims the Petitioner entered the bank without a mask (Tr.348-349).Yet they called Lacey as a government witness who knew the Petitioner very well. They never once asked Lacey to identify the Petitioner from the still photos. (Tr.177-178).

> **Gov't Atty Parker:  Wigs, dread wigs. We submit to you that there are, that the hair style was a wig under that hat. (Tr.317).**

The Petitioner's attorney responded by stating: the only evidence that you have before you on that issue is that a person had dred locks. (Tr.341.

The government attorney again stated to the jury that the Petitioner wore a wig during the robbery. (Tr.348-349).

> **Gov't Atty Giles:  Now lets talk about the dreads. When Corey Jones enters that bank he's the first person in. He doesn't have a mask on at that time so he has to do something to disguise his appearance. You don't check your common sence at the door ladies and gentlemen. You know they sell wigs. We're not implying that he had dreads at that time. Of course he didn't. He was trying to disguise his appearance.**

## A)    Deficient Performance:

Petitioner's attorney should have objected to the government's behavior because the inference to be drawn were not facts in evidence that the Petitioner was a principle in this bank robbery. This was plain error and the Petitioner was denied a fair trial. Under the plain error standard, a Petitioner must show 1) that an error occurred, 2) that the error was plain, and 3) that it affected this substantial rights. **United States v. Olano,** 507 U.S. 725(1993) Even if the Petitioner meets these requirements, the Court will exercise its discretion in correcting the error. Only when a failure to do so would result in a miscarriage of justice, such as when the Petitioner is

"actually innocent" or the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. (internal quotation marks and alteration omitted).

The only evidence in the record is that one of the robbers wore dreadlocks. There was no facts in evidence directly or through inference which would support the government's reference to a wig allegedly worn or purchased by the petitioner.

The government falsely and unfairly insisted to the jury that the petitioner wore a wig during the robbery. (Tr.11,317,348-349) No testimony was offered during trial that the petitioner purchased a wig. No wig was found and none of the government witnesses testified that they thought the robbers hair looked strange or fake. (Tr.42,46, 62,90-103) Petitioner was forty-two(42) years old and did not wear dreadlocks or cornrolled hair. (Tr.251,256,263,269, and 341) Given this evidence and the petitioner's attorney's failure to object to a fact not in evidence. The government's reliance on untenable inferences was impermissible and it prejudiced the petitioner. "Permissible inferences must be within the range of reasonable probability."

Petitioner contends it is the duty of this Honorable Court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture. **Ford Motor Co. v. McDavid,**259 F.2d 261,266(4th Cir.1958) While all inferences must be made in favor of the prosecution **"leaps of logic should not be."** It is critical to remember this Honorable Court is not to grant tHe government "all possible inferences from the facts, only those that are reasonable and logically explained". **Evans-Smith v. Taylor,**19 F.3d 899,908(4th Cir.),cert.denied,513 U.S.919,130 L.Ed 2d 211,115 S.Ct.298 (1994).

Any assumption that the petitioner wore a wig was an impermissible inference made by the jury. **United States v. Bonner,** 648 F.3d 209 (4th cir.2011) The petitioner was "actually innocent" according to the government expert in historical cell sight analysis. Agent Banks investigation exonerated the petitioner.

And in addition impeached and contradicted the government's entire case against the petitioner.(Tr.207-212) This exculpatory evidence reflects the petitioner was never in Cole's BMW the morning or evening of the robbery. Furthermore, the petitioner was never in the radius of the cell tower projection coverage of the stolen van theft on First and N Street N.W. (Tr.209) The petitioner's cell phone was bouncing off of cell towers on New York Ave. N.W. and H. St. in the complete opposite direction of Cole and the stolen van. (Tr.209) also (Call detail records for 202-528-5140, Corey Jones and BAWA-Maps).

There was activity on both cell phones(Tr.207-212,224). This evidence also proves it was impossible for Cole to drive to petitioner's residence the morning of June 27, 2011 in Maryland. The petitioner was traveling in a different vehicle the entire day in a completely different direction than Cole. Thus, it was highly incredible for petitioner to rob a bank with Cole in his BMW. (Tr.16,207-212,240).

Furthermore, the target area latitude and longitude coordinates of the petitioner were completely different than Cole's which proves the petitioner was never in Coles BMW and not with him on June 27, 2011(See attached BAWA-Maps) Petitioner's attorney was deficient and his performance fell below an objective standard of reasonableness. **Strickland v. Washington,** 466 U.S. 687 (1984).

**B) Prejudice:**

Petitioner was not identified in any respect by facial feature, height, or any other feature other than being African-American male. **The Petitioner presented a strong alibi defense that was not impeached.** (Tr.256,259,263,264,272,273,275,277 and 283,284) And the Petitioner presented evidence that corroberates the cell tower evidence that he was not in Virginia when the bank was robbed. (Tr.207-213)

The judgment made by the jury was substantially swayed by the improper comments made by the government that the Petitioner wore a wig and was a principle in this bank robbery. (Tr.11,317,348-49) These improper inferences induced the jury to trust the government's judgment rather than its own view of the evidence.

These remarks were improper and the government's conduct prejudicially affected the Petitioner's substantial rights so as to deprive him of a fair trial. **United States v. Wilson,** 135 F.3d 291,297-301 (4th cir.1998); also **Berger v. United States,** 295 U.S. 78,79 (1935).

The government expert in historical cell sight analysis testimony proved the Petitioner was not with Cole on June 27, 2011 based upon the cell tower locations. **"This fact cannot be defeated."** The Petitioner was not the individual seen in Coles vehicle. (Tr.90-103) Therefore, but for the Petitioner's attorney's failure to object to the government's improper comments, the outcome of the proceedings would have been different because banks cell tower evidence proved the Petitioner was "actually innocent". (Tr.207-213)

In sum, Petitioner's attorney partially addressed the government comments regarding the wig issue. The Petitioner's attorney's inaction and failure to object was prejudicial. And the failure to correct this error would result in a miscarriage of justice. The Petitioner seeks

a new trial or in the alternative an evidentiary hearing is warranted.

**K)  PETITIONER'S ATTORNEY WAS INEFFECTIVE FOR HIS FAILURE
TO OBJECT TO THE DISTRICT COURT NOT GIVING A REQUESTED
ALIBI INSTRUCTION OF THE PETITIONER'S THEORY OF DEFENSE..**

"As a general proposition a petitioner is entitled to an instruct-
ion as to any recognized defense for which there exists evidence
sufficient for a reasonable jury to find in his favor." **Mathews v.
United States,**485 U.S.58,63(1988); **Powell,** 680 F.3d at 356; **United States
v. Hicks,**748 F.2d 854,857(4th Cir.1994).

If this requirement is met, a district court commits reversible
error when it fails to provide an instruction requested by petitioner
only if the instruction 1)was correct; 2)was not substantially covered
by the Court's charge to the jury; and 3)dealt with some point in the
trial so important that failure to give the requested instruction
seriously impaired the petitioner's ability to conduct his defense.
**United States v. Lewis,**53 F.3d 29,32(4thCir.1995) The district court
committed reversible error in failing to properly instruct the jury.

Petitioner's alibi was his exclusive defense.(Tr.256-257,263-264,
266-267,268-270,275-277, and 282-283) And these alibi's were not
impeached. The petitioner's co-defendant Cole also presented an alibi
defense.(Tr.244,288-289) Thus, both of these defendant's put on an
alibi defense and they were joined at the hip and binded by the req-
uested alibi instructions.

At the conclusion of the government's case Cole's attorney
Mr.Jonathon Simms requested that an alibi instruction be read.to the
jury based on the evidence.(Tr.312-313) Petitioner requested to his
attorney to propose this same alibi instruction. Petitioner's attorney
advised him that if this Honorable Court agreed with the request to
give these instructions it also applied to the petitioner because both

defendant's put on an alibi defense to the jury.

> Mr.Simms:  Your Honor, also I believe that based upon the evidence submitted by defense that an alibi instruction is necessary.

> The Court: What particular instruction would you want of alibi?

> Mr.Simms:  Your Honor, I believe there may be one in O'Malley.

> The Court: Well,you'll have to find something if you want. It seems to me that's a matter of argument I mean, that's nothing more than weighing the credibility of witnesses and --

> Mr.Simms:  Your Honor, it's in O'Malley's, Section 1907. I can pass it up to the Court. Its alibi explained.

> The Court: All right. Did you get the number of that? All right. We'll take a look at it.

> The Court: I don't know what I can tell them about alibi. You're going to believe one side or you're going to believe the other.

> Mr.Simms:  That's understood, Your Honor. I just want to make sure the instructions covered the evidence that was submitted. The government did the same thing.

> After recess at transcript 315.

> The Court: All right. What about this alibi instruction?

> Mr.Simms:  Your Honor, its my understanding there's no objection to it.

> The Court: All right, I'll give it then. I assume that's correct. There isn't any objections?

> Ms.Giles:  No, Your Honor.

This Honorable Court then read the requested general jury instructions to the jury. However, the Court never distinguished to the jury properly under O'Malley 1907 the word alibi in the instructions. Thus it was necessary for the Court to tell the jury to consider the evidence in its totality including the alibi evidence in the jury instructions, in deciding the petitioner's guilt.(Tr.370-371) also see (O'Malley 1907 Alibi Jury Instructions)

It is well settled that, under proper circumstances the jury must

be given an alibi instruction when the defense so request. And the reasoning behind this rule is not difficult to appreciate. The petitioner states, jurors are by definition untrained in the specifics of the law and accordingly must be instructed as to the legal standards properly they are bound to apply.

When an alibi defense has been presented there exists the danger that the failure to prove that defense will be taken by the jury as a sign of the petitioner's guilt.

Even when the jury has been instructed as to the government's burden there remains the danger that the effect of the alibi defense will be misunderstood. Only a specific instruction that is properly read to the jury can insure that this problem will not occur. **United States v. Burse,**531 F.2d 1151-1153(2d Cir.1976) The Court agreed to give to the jury the O'Malley 1907 alibi instructions.(Tr.312-313) But inadvertantly nothing in the jury instructions **specified alibi** to the jury. This Honorable Court invaded the jury's fact-finding function by not specifying the word, alibi in agreed upon instructions. (Tr.370-371) and see (O'Malley 1907 Alibi Instruction).

**A)    Deficient Performance:**

Mr.Simms:  Judge, there was one additional instruction, the last one discussed, alibi instruction.

The Court: I gave them that.

Mr.Simms: I apologize. I'm sorry.

The Court: Hope the jury heard it but I gave it.

Mr.Simms: Thanks, that's fine

The Court: Thank you. You all may retire.

(The jury exits at 3:15 p.m.)(Tr.375-376)

The Court concluded: All right. Other than what we've already dealt with is there any objections to the instructions I gave or the manner in which I gave them?

Ms.Giles:      No, Your Honor
Mr.Aquino:     No, Sir
Mr. Simms:     No.
The Court:     All right we'll stand in recess until
the jury returns.(Tr.376).

The Petitioner immediately requested to his attorney to object to
the Court's jury instructions because nothing in the instructions
specified **"Alibi"**. The Petitioner's attorney told him he did not
want to anger the judge and that he believed the Court had read them
to the jury and that he heard the specified instruction. But in fact
nothing in the Instructions mentioned the word alibi or Petitioner's
alibi evidence. The error complained of was not harmless and the
Petitioner's attorney's failure to object to the Court's instructions
was plain error.

As such, this argument is governed by Rule 52(b) of the Federal
Rules of Criminal Procedure. And the plain error review is determined
by the four part test of **U.S. V. Olano,** 507 U.S. 725,732-36 (1993) as
articulated in **Johnson v. U.S.,** 520 U.S. 461,466-67 (1997). Moreover,
the Petitioner submits that this error was plain, affected substantial
rights and the fairness of the trial. Attorney failed to raise this
issue in the Petitioner's appeal as well.

The Petitioner's attorney also failed to subpeona the cell sight
master list from Sprint. The cell sight master list was extremely
important because it showed every single tower used by the Petitioner
and Cole the morning and evening of June 27,2011. (See cell sight
master list example attached).

Petitioner's attorney's role as a decision maker was deficient
and not reasonably effective assistance of counsel. **Strickland,** at
687-88,91. The Petitioner's attorney should have objected to the
instructions given by the Court, and should have requested this
specified, O'Malley 1907 alibi instruction since the Court initially

agreed to read them verbatim.(Tr.312-315,354-375)

This error was plain and petitioner's attorney's failure to do so was not "reasonable professional judgment" because this instruction could have raised a reasonable doubt with the jury.

**B)    Prejudice:**

If the trial judge evaluates or screens the evidence supporting a proposed defense,(**Hicks**,748 F.2d 858) and upon such evaluation declines to charge on that defense the Court dilutes the petitioner's jury trial by removing the issue from the jury's consideration. In the case at hand, this Honorable court removed certain distinguishing langauge from the requested alibi instructions under O'Malley 1907.(Tr.370-371) and (O'Malley Alibi Jury Instruction).

In effect, the trial judge directed a verdict on that issue against the petitioner. This was impermissible. **United States v. Strauss,** 995 F.2d 1236,1243; **Booze,** 451 F.2d 723; also **Barraso,** 267 F.2d 908-911.

Evidence was presented and introduced that petitioner was not present at the time when or at the place where the petitioner alleged to have committed the offense charged in the indictment.(Tr.256-257 263-264,266-267,268-270,275-277 and 282-283) Moreover, Banks cell sight analysis conclusively proves the petitioner is "actually innocent." Cole called the petitioner's cell phone at 10:31a.m. which proves the petitioner was not in Coles BMW.(See call detail records) The petitioner was driving a black lexus the morning of the crime in a different direction. (Tr.207-219).

The petitioner's target area latitude and longitude coordinates were completely opposite of coles which proves the petitioner never

in Coles BMW or with him, tne morning or evening of June 27,2011.
(See Attached Maps with locational coordinates)

Petitioner has the same rights as the government and that is to
make sure the instructions covered the evidence that was submitted to
the jury. **United States v. Bryser,**954 F.2d 79,87(2d Cir.), cert.denied,
112 S.Ct.2939(1992) The government did not make any objections to the
requested alibi instructions.(Tr.315) And this Court aqreed to give
them however inadvertently failed to specify verbatim the requested
O'Malley 1907 alibi instructions to the jury.(Tr.370-371)

These requested alibi instructions were not properly read, so as
acquaint the jury with the law that the government's burden of proof
covers the defense of **alibi** as well as all other phases of the case.
Certainly this error committed by the Court is reversible error and
not harmless. This Honorable Court's error implicated the petitioner's
rights under the Sixth Amendment.

Typical jury instructions on the presumption of innocence and
burden of proof are insufficient. Especially in cases involving the
necessary presence of the accused at a particularly time and place when
the accused produces testimony that he was elsewhere at the time. Id.
**Ragghianti,**560 F.2d 1379, quoting **United States v. Marcus); United States
v. Zuniga,**6 F.3d 569,570(9th Cir.1993); **United States v. Mason,**902 F.2d
1434,1438(9th Cir.1990) also **United States v. Megna,**450 F.2d 511(5th
Cir.1971).

The Petitioner seeks a new trial or in the alternative, an
evidentiary hearing is warranted.

**ISSUE TWO: ACTUAL INNOCENCE**

**L)  PETITIONER WAS ACTUALLY INNOCENT OF THE CHARGED
OFFENSE AND THE PETITIONER'S TRIAL AND APPEAL
ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF
COUNSEL...**

Petitioner was convicted in a jury trial before this Honorable
Court on April 25,2012. The jury returned its verdict of guilty of
conspiracy and robbery charges,18 U.S.C.§371, and 18 U.S.C.§2 and 2113
(A) and (D) respectively. The petitioner was acquitted of the firearm
charge, 924(c)(1)(A).

**A)  ACTUAL INNOCENCE CLAIM**

The petitioner humbly moves this Honorable Court to vacate the
further enforcement of his now unconstitutional judgment. In order
to collaterally attack a **conviction** or **sentence** based upon errors that
could have been but were not pursued on direct appeal. The petitioner
must show **cause** and **actual prejudice** resulting from the errors of
which he complains or he must demonstrate that a miscarriage of justice
would result from the refusal of the Court to entertain the collateral
attack. **United States v. Mikalajunas,**186 F.3d 490,492-93(4th Cir.1999)
(The existence of cause for a procedural default must turn on some-
thing external to the defense such as the novelty of the claim or a
denial of effective assistance of counsel.) Id. at 493. A showing of
cause and actual prejudice may be excused if the petitioner can show
actual innocence of the crime. **Sawyer v. Whitley,**505 U.S.333,339,112
S.Ct.2514,120 L.Ed 2d 269(1992). Typically to establish factual innocence
a petitioner must demonstrate actual factual innocence of the offense
of conviction, that petitioner did not commit the crime of which he
was convicted. **United States v. Mikalajunas,**186 F.3d at 494.

**B) THE EVIDENCE IN THE TRIAL RECORD IS INCONCLUSIVE AND SHOWS THE PETITIONER IS "ACTUALLY INNOCENT"**

This Honorable Court is familiar with the old legal terminology:

**"When the facts are against you, hammer the law, When the law is against you, hammer the facts, When both are against you, hammer the table and yell like hell."**

In re **Fisher**,131 B.R.137-138(E.D.M.O.1990) The facts and law herein cannot be ignored in this habeas petition. And the material facts in the record are in complete accord, by a preponderance of the evidence that the petitioner is "**actually innocent**". At the petitioner's trial the government through its presentation of evidence presented testi- mony from Banks who was an expert in historical cell sight analysis. (**Tr.205**)

Through Banks investigation and cell sight analysis, Cole called petitioner's cell phone at exactly 10:31 a.m. on June 27,2011.(See Attached call detail records for 202-200-2869, Government Exhibit 28B) Cole was sighted northeast of Suitland Parkway near Stanton Rd., S.E. at 10:31a.m.(See attached Map Government Exhibit28C) Cole first and last cell was 546-40043 in S.E.

At this exact time Banks determined at 10:31 a.m. that petitioner was using cell towers off of 295 in S.E.,D.C. south of Anacostia Park. (**Tr.207-208**) The petitioner's target area was latitude 38,86946 and longitude 76,98508.(See Attached Map/BAW A-2 of Petitioner)(**Anacostia Freeway**) Banks testified a minute later that Cole's cell phone uses a tower off of South Capital and N Street,S.E. at 10:32a.m..(Tr.211-212) Cole's target area was latitude 38,87694 and longitude 77,00389 and his first and last cell was on N Street,S.E.(See Attached Map Locational Coordinates For Cole, and Government Exhibit 28C)

This evidence and analysis confirms the petitioner was not in Coles

BMW that morning and that he was driving in a different vehicle because Cole was calling him at 10:31 a.m.(See Attached call detail records for 202-200-2869, Government Exhibit 28B) Moreover, the petitioner's latitude and longitude coordinates were different from Coles according to these facts. Giles statEd Cole picked petitioner up in Maryland at his residence that morning and drove to First and N st., N.W. at 10:30 a.m. to steal a vehicle.(Tr.16,240,321

U.S.attorney Giles then contends the petitioner was dropped off by Cole and they were soon driving in separate vehicles, the petitioner the stolen plymouth voyager van and Cole is driving his BMW. (Tr.240) It is unquestionably clear from the cell tower evidence and the street locations that petitioner was not with Cole and not in his BMW on June 27,2011. The petitioner is on "Anacostia Freeway" 295 and Coles is on South Capital and N Street S.E..(See attached Maps)

Petitioner lived in Maryland with his girlfriend.(Tr.257) Both cellular phones had activity.(Tr.207-211,224,350) Yet there were no cell sights of the petitioner's cellular phone pinging with Cole's phone that morning in Maryland at the same hour and minute.(Tr.207-213)

This particularly insidious form of fabrication which belies a mischaracterization of the evidence is a lapse of systemic magnitude in the government actions. Speculation, suspicion and impermissible inferences alone cannot legitimize a conviction that lacks proof beyond a reasonable doubt. **Ford Motor Co. v. McDavid**,259 F.2d 261,266(4th Cir. 1958).

The government cannot explain why Cole is calling the petitioner at exactly 10:31 a.m. that morning if the petitioner was already in Coles BMW and Cole picked him up on June 27,2011. The cell tower

projection coverage showed the petitioner **never** passed in the radius of the stolen van theft on First and N street, N.W., that morning. In fact, the government witness Kennedy testified he noticed his Plymouth Voyager Van was stolen at 1:00 p.m. on June 27, 2011. (Tr.81-84) Banks analysis showed the petitioner's cell phone passed through N.W. never passing any where near the stolen van theft. (Tr.209)

The petitioner was seven(7) miles away from where the van was stolen and the street where the van was stolen does not get service, and the cell towers in D.C. are not that far apart. Agent Banks testified that since they're not that far apart there going to rack and stack and you're going to get right to the area of where that phone is located. (Tr.209,219,223)

The only sort of idiosyncrasy this Court can gather from this test-imony is that the petitioner was not in Coles BMW that morning. Since there was no service where the van was stolen the petitioner's call would have dropped. Banks analysis showed the petitioner's call **never dropped**. So it was impossible for petitioner to steal a van while on the phone driving and his phone was bouncing off of cell towers in a different direction than Coles. Banks testified if the petitioner's phone was idle or still and not moving his cellular phone would've picked up the strongest cell tower signal. (Tr.222-223)

At exactly 10:37 a.m. the petitioner's cell phone was sighted on New York Avenue, N.W., (Tr.209) The petitioner's target area was latitude 38,89919 and longitude 77,01756. (See Attached Map/BAWA-2 of petitioner) At the same hour Cole cell phone was using cell towers off of South Capital and M street, S.E. at 10:36a.m. And Cole's target area was latitude 38,87556 and longitude 77,00889. (See Map Coordinates for Cole)

This is highly significant because the locational coordinates along

with the date and time is the radius or relative precise estimate of where the petitioner was located on the morning of June 27,2011. It is plain to see the petitioner is in N.W. and Cole is in S.E.

This analysis conducted by Banks is "IronClad" evidence that the petitioner is **actually innocent.**

Giles improperly inferred to the jury that the petitioner  cell phone was turned off(Tr.240) But Banks specifically testified the petitioner's cell phone **was not turned off**.(Tr.224) Banks stated between the hours of 11:00 a.m. and 2:47p.m. there was **"no activity"** on the petitioner's cell phone meaning there was **"no incoming calls nor outgoing calls"** but the petitioner's cell phone was not turned off.(Tr.224)

Petitioner's cell phone records were included into the exhibits and evidence by the petitioner's attorney at the close of Banks testimony. These records show the following days and hours of **similar gaps of non-incoming calls and outgoing calls** on the petitioner's cell phone:

**1)    June 24,2011, there was no activity on the petitioner's cellular phone from 4:34p.m. until 6:24p.m. There were no incoming calls attempted or outgoing calls made for one(1) hour and fifty(50) minutes.**

**2)    June 26,2011, there was no activity on the petitioner's cellular phone from 9:43a.m. until 11:21a.m.. There were no incoming calls received or outgoing calls made for one(1) hour and thirty-eight(38) minutes.**

**3)    June 26,2011, again at exactly 8:52p.m. there was no activity on the petitioner's cellular phone until June 27,2011 at 7:45 a.m.. There were no incoming calls attempted or made for eleven(11) hours and seven(7) minutes.**

**4)    Again on June 27,2011, there was no activity on the petitioner's cellular phone from 8:48a.m. until 9:55a.m. There was no incoming calls attempted or received. There was no activity for one(1) hour and seven(7) minutes.**

**5)    Later that afternoon, on June 27,2011, there was no activity on the petitioner's cellular phone from 11:01a.m. until 2:47 p.m. There was no incoming calls attempted and**

there was no outgoing calls made. The petitioner's cellular had no activity for three(3) hours and forty-six minutes.

6)    June 28,2011, there was no activity on the petitioner's cellular phone from 3:44 p.m. until 4:45 p.m.. There was no incoming calls attempted and there was no outgoing calls made. The petitioner's cellular phone had no activity for one(1) hours and one(1) minute.

7)    June 28,2011 there was no activity on the petitioner's cellular phone from 5:37 p.m. until the next day on June 29,2011 at 9:19 a.m.. There was no activity for sixteen(16) hours and forty-nine(49) minutes.

8)    June 29,2011, there was no activity on the petitioner's cellular phone from 9:24 a.m. until 10:49 a.m.. There was no incoming calls attempted and there was no outgoing calls attempted and there was no outgoing calls made. There was no activity on the petitioner's cellular phone for one(1) hour and twenty-five(25) minutes.

9)    June 29,2011, there was no activity on the petitioner's cellular phone from 11:09 a.m. until 3:30 p.m.. There was no incoming calls attempted and there was no outgoing calls made. There was no activity on the petitioner's cellular phone for four(4) hours and twenty-one(21) minutes.

The petitioner's cellular phone activity is a consistent pattern of none incoming calls nor outgoing calls for certain hours.(See attached phone records)(Tr.224-225)

Furthermore, the following messages were extracted from Cole's cellular phone transcript:

Jones to Cole(5-28-11,Incoming), I'm at grandmas...No bars on my phone since earlier. U want to ride for a minute? (Page 215, Text 3066)

Jones To Cole(5-31-11, Incoming), Man I'm just getting in the house...I was stuck over there with no charger or juice on my phone from Saturday until this morning. Ima call u?(Page 197, Text 2788)

Jones to Cole(6-3-11, Incoming), Look thunder-cat I no ur cussing me out. My phone been cut off since yesterday. I jus got it on a few hours ago.(Page 181, Text 2555)

Given Banks determination that the petitioner's cellular phone was not turned off her analysis is accurate and irrefutable because the petitioner's movements were pin-pointed.(Tr.207-213,224) Also,

the receipt from CarSource clearly illustrates the petitioner was utilizing **two(2) cell phones** on June 27,2011. The receipt listed the petitioner's secondary cell phone number.(760-217-8972)(See attached receipt)

Banks analysis is the ultimate defining evidence. **Thus, these facts prove it was impossible for the petitioner to be the individual with dreadlocks or cornroll hair seen in Coles BMW one(1) hour before the robbery.**(Tr.90-103) The petitioner presented evidence that he never wore dreadlocks or cornroll hair.(Tr.251,256,263,269 and 341)

Under these circumstances the petitioner's conviction and sentence are constitutionally illegal because the petitioner was denied a fair trial and due process. The law does not support nor permit such a conviction or sentence where the evidence clearly demonstrates the petitioner is **actually and factually innocent of the offense of conviction. United States v. Mikalajunas,**186 F.3d 494; **Herrera v. Collins,** 506 U.S.390,400,113 S.Ct.853(1993).

## C) New Reliable Evidence:

For the petitioner to establish the requisite **"fundamental mis-carriage of justice",** as an alternative showing **cause** and **prejudice** the petitioner must clearly demonstrate "actual innocence." See **Schlup v. Delo,**513 U.S.298,324,115 S.Ct.851,130 L.Ed 2d 808(1995); also see **Houck v. Stickman,**625 F.3d 88,93(3d Cir.2010). Giles stated after Cole robbed the BBT bank he rushed straight tO his alibi at Fort Stanton apartments in S.E.,D.C..(Tr.244,349-350)

There was only one(1) vehicle involved after the robbery and that was Coles BMW.(Tr.240) According to Giles the petitioner was in Coles BMW and that after leaving Fort Stanton Apartments Cole dropped the petitioner off at CarSource in Capital Heights Maryland at 2:47p.m.

(Tr.211,350) There was no cell sights of the Petitioner at Fort
Stanton Apartments in S.E., D.C. at 2:37 p.m. with Cole (Tr.240,350)
And moreover, there was no cell sights of Cole in Capital Heights,
Maryland at 2:47 p.m. with the Petitioner. There was activity on both
cell phones. (Tr.211,224,240,350) The Petitioner hired P.I. McMillan
and Detective Tucker to investigate the travel time distance from the
BBT bank in Fairfax, Virginia to Fort Stanton Apartments in Washington,
D.C. to CarSource in Capital Heights, Maryland from Route 1 and Route
66. (See attached P.I. McMillan and Detective Tucker's Report).

P.I. McMillan concluded the trip would take 1 hour and 9 minutes
to complete traveling the exact route the Petitioner is allege to have
entered Virginia with Cole. (Tr.209) Cole was sighted on 395 at 2:27
p.m. after the robbery. (See attached P.I. McMillan Report and Map
Locations). In contrast, Cole was sighted at 2:37 p.m. at Fort Stanton
Apartments in S.E., D.C. and the Petitioner was sighted at CarSource
at 2:47 p.m. in Maryland. This trip cannot be done in ten(10) minutes
according to this investigation. This trip took Detective Tucker 26
minutes to complete. The Petitioner's attorney refused and failed to
investigate or check MapQuest. And according to MapQuest, this trip
would take approximately **one(1) hour and Thirty(30) minutes** to complete
traveling the exact route according to the historical cell sights. (Tr.
209) Furthermore, this trip takes **twenty-two(22) minutes** according to
MapQuest to travel from Fort Stanton Apartments in S.E., D.C. to Car
Source in Capital Heights, Maryland. (See MapQuest Attachments).

The Petitioner has demonstrated that failure to consider these
claims will result in a fundamental miscarriage of justice. **Coleman,**
501 U.S. at 750. Moreover, the Petitioner has shown the **new reliable
evidence** would make it more likely than not that "no reasonable juror

would find the petitioner guilty beyond a reasonable doubt."

The **Schlup** mandate thus ensures that this gateway actual innocence assertion is "truly extraordinary", and this appropriate application thus provides a meaningful avenue by which to avoid a manifest injustice. This standard is satisfied because the petitioner has presented **"new reliable evidence"** of his innocence such as exculpatory scientific evidence, trustworthy eyewitness accounts and critical physical evidence not presented at trial. See **Schlup,**513 U.S. at 324, also **Wolfe v. Johnson,**565 F.3d 140(4th Cir.2009).

This exculpatory evidence the petitioner has presented is consistent with P.I. McMillan's investigation. These facts constitutes "new reliable evidence" of innocence. And Banks expert historical cell sight analysis buttress this claim that petitioner was never in Coles BMW on June 27,2011.(Tr.207-213).

The circumstances of the distance, time and location of the petitioner along with the place of the crime should have been investigated by the petitioner's attorney. This crime was not consistent with guilt in view of these material facts.

**D) TRUSTWORTHY EYEWITNESS ACCOUNTS AND EXCULPATORY AFFIDAVITS FROM MR. BRANDON SELMON AND MR.MICHAEL BROWN**

The petitioner put on a strong alibi defense that was not impeached and several witnesses testified the petitioner was driving a black lexus on June 27,2011.(Tr.256-259,263-264,272-273,275-277 and 283-284) At the petitioner's trial the owner of CarSource Makins testified that the black lexus the petitioner was driving was being worked on at his business.

During petitioner's trial Makins authenticated a receipt showing the petitioner's name on it. **It is impossible for the petitioner to**

**drive two(2) vehicles, the stolen Plymouth Voyager and the Black Lexus.**

In sum, the mechanic who worked on the black lexus the petitioner was driving on June 27,2011 was located five(5) months after the petitioner was found guilty. This employee of CarSource named Selman has provided an affidavit that specifically places the petitioner at CarSource at exactly 2:00p.m. on June 27,2011.(See attached affidavit)

Selman's affidavit is consistent with the testimony of the owner of CarSource, Makins. This unbias witness affidavit is reliable and proves the petitioner is innocent. Moreover, another exculpatory witness by the name of Brown was located three(3) months after the petitioner's trial. Brown signed a sworn affidavit through the petit-ioner's attorney, and Mr. Brown specifically stated in the affidavit that he had met the petitioner at 1:30p.m. at CarSource in Capital Heights, Maryland.(See attached affidavit)

Mr. Brown and Mr. Selman are reliable and their affidavits are credible. The petitioner was sighted at CarSource at 2:47p.m.(Tr.211) The petitioner has presented truly persuasive evidence. The Court must make a probabilistic determination about what reasonable properly instructed jurors would do. Id. The Courts function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. Id. **House v. Bell,**547 U.S.518,537-38,39(2006)(citing **Schlup,**513 U.S. at 330 and 327.

This threshold implied is not insurmountable and no juror would reasonably have found the petitioner guilty beyond a reasonable doubt based on this **"new reliable evidence." Schlup,**513 U.S. at 327. The petitioner has shown his **actual innocence** of the crime of bank robbery

and the petitioner can be excused from any procedural default herein.
**Murray v. Carrier,**477 U.S.478,485,106 S.Ct.2639,91 L.Ed 2d 397(1986);
**Sawyer v. Whitley,**505 U.S.333,339,112 S.Ct.2514,120 L.Ed 2d 269. In
**Sawyer,** the Supreme Court held the petitioner on the merits is clearly
entitled to relief, where the habeas petitioner presents a colorable
claim that he is actually innocent of the crime and sentence.

The petitioner has met his burden by clear and convincing evidence
and the miscarriage of justice exception to the procedural default
applies. see **Washington,**996 F.2d at 1450("Error rises to the level of
miscarriage of justice not because it is conspicuous but because of
the nature of the seriousness of its effect."); also **United States v.
Mikalajunas,**186 F.3d at 494. The petitioner's attorney failed to gather
evidence that would have supported his defense. And in this regard, the
petitioner's Sixth Amendment Constitutional rights were violated. This
**"new reliable evidence"** undermines the outcome of the proceedings and
it also proves the petitioner did not commit the crime charged and
alleged in the indictment.

**E) THE PETITIONER'S TRIAL AND APPEAL ATTORNEY MR. AQUINO
WAS INEFFECTIVE DURING CRITICAL STAGES OF THE
PETITIONER'S PROCEEDINGS**

The uncertain dimensions of the petitioner's attorney's
"inadvertence" or "ignorance" is relevant and can be characterized as
ineffective assistance of counsel because of his misjudgment and over
sight of these material facts herein. The petitioner's attorney was
inherently deficient and unreasonable under prevailing professional
norms. **Strickland v. Washington,**466 U.S.668,688-92,80 L.Ed 2d 674,104
S.Ct.2052(1984).

The petitioner's attorney stated, the government's evidence was
that the petitioner rode with Cole in the BMW after the robbery.

(Tr.343) Yet petitioner's attorney failed to investigate Banks(morning) cell sights evidence.(Tr.207-212) Banks analysis and investigation is a "dead bang winner." A dead bang winner is an issue that leaps out which is so obvious from the trial testimony and record that it would have resulted in an acquittal had it been introduced during the petitioner's trial or at the very least a reversal on his appeal. **United States v. Cook,**45 F.3d 388(10th Cir.1995); also **Matire v. Wainwright,**811 F.2d 1430,1438(11thCir.1987)

The latitude and longitude location target area for the petitioner the morning of June 27,2011 proves the petitioner was not in Coles vehicles and not with him that evening. The petitioner's attorney refused to raise this issue or any of these claims in the petitioner's trial or appeal. Furthermore, the petitioner's attorney neglected to investigate the travel distance or check MapQuest for the anticipated arrival time.

In contrast, the petitioner's attorney also refused to interview or question any of these employees at CarSource concerning the petitioner's presence at this location at 2:00p.m.. The Petitioner's attorney chose to only interview the owner of CarSource Mr.Makins.

In sum, Banks cell tower evidence corroborates P.I.McMillan's and MapQuest travel distance calculations as well as Selman and Brown's exculpatory affidavits.

This Honorable Court was ready to grant the petitioner a Rule 29 Judgement of Acquittal Motion based on the absence of evidence against the Petitioner.(Tr.239) But this motion was denied because tHe petitioner's attorney failed to impeach the government's case with these exculpatory facts which exonerate him.

These errors were so serious that his attorney was not functioning as the attorney guaranteed by the Sixth Amendment and the Petitioner **"was denied his Sixth Amendment and Fourteenth Amendment rights"**, not only because he is allegedly innocent but also because the **"new reliable evidence"** shows that the government's case was completely false. The Petitioner's attorney's actions hindered the Petitioner's ability to gain an acquittal and that viewing this deficient performance and unprofessional conduct in the context of the whole record the Petitioner's attorney's representation was ineffective. There exists a reasonable probability that but for this conduct and prejudice the result of the proceedings would have been different.

These facts cannot be disputed and they are probative of innocence to be sure, but they also implicate sufficiently the Petitioner's right to due process. The Petitioner argues that the maintenance of a conviction based upon false evidence or exaggerated testimony violates due process.

Indeed, **"this conviction was obtained through the use of false and fabricated evidence and it must fall under the Fourteenth Amendment."** The question of the Petitioner's attorney's motivation, ignorance and oversight is one of fact for this Honorable Court to resolve upon taking further evidence. In this regard the Petitioner ask this Honorable Court to adopt his: **E) FAILURE TO OBJECT AND IMPEACH THE IMPROPERLY INTERPRETED TEXT MESSAGES WITH AGENT JENNIFER BANKS HISTORICAL CELL SIGHT ANALYSIS, THE UNKNOWN MALE MESSAGES, AND THE PETITIONER'S REPLIES TO THEM...**argument to justify the conclusion that his attorney's errors substantially infected his trial and that he was prejudiced as a result.

For the above reasons the Petitioner contends it would be a fundamental miscarriage of justice if this honorable Court failed to entertain this claim because the Petitioner is "actually innocent of the crime of conviction." Wherefore, the Petitioner seeks a dismissal of the charges...or in the alternative, an evidentiary hearing is necessary to establish the convincing standard and place the burden of truth upon the government. The Petitioner asserts the "ends of justice" will be served by such inquiry. **Kuhlman v. Wilson,** 477 U.S. 436, 91 L.Ed.2d 364, 106 S.Ct. 2616, also see **Teleguz v. Pearson,** 689 F.3d 322 )4th cir.2012).

> **M)  FAILURE TO OBJECT TO THE CONSPIRACY AND THE GOVERNMENT THEORY THAT WILLIAM COLE PICKED THE PETITIONER UP THE MORNING OF JUNE 27, 2011, WHEN AGENT JENNIFER BANKS HISTORICAL CELL SIGHT ANALYSIS EXONERATED THE PETITIONER...**

The Petitioner avers the evidentiary record in this Honorable Court is a **"shadowy one."** And the government's evidence to prove a conspiracy concerning the motives and intentions of the Petitioner was inevitably murky and undoubtedly contradicting. As indicated earlier in this petition the government's entire case rest on the improperly interpreted false "cherry picked" text messages that had absolutely nothing to do with robbing the BBT Bank in Fairfax Virginia. (See pages 30,31,32,33,34 & 35 of this petition) These messages, which led to nothing in the end are essential to the government's theory and case.

The government intentionally mis-states and improperly interprets William Cole's (Cole) text messages to the Petitioner. And there was no smoking gun in these conversations or in any results from them that point to the requisite criminal agreement. This case is a "drift

of the elastic" and its similar to **U.S. v. Bell,** 954 F.2d 232
(4th cir.1992) and **U.S. v. Guinta,** 925 F.2d 758,764 (4th cir.1991)
in which evidence of participation in a conspiracy was too
speculative to support the conspiracy conviction.

The Petitioner's attorney Jerome Aquino failed too object to the
conspiracy and the government theory that Cole picked the Petitioner
up the morning of June 27, 2011. This error was fatal because the
government asserts the Petitioner was the individual with dredlocks,
seen in Coles BMW one hour before the bank robbery. (Tr.90-103)This
was plain error, and under the plain error standard the Petitioner
must show (1) that an error occurred; (2) that the error was plain
and  (3) that it affected the Petitioner's substantial rights. **U.S.
v. Olano,** 507 U.S. 725,732, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993)
Even if the Petitioner meets these requirements, the Court will
exercise its discretion in correcting the error. Only when a failure
to do so would result in a miscarriage of justice, such as when the
Petitioner is actually innocent or the error seriously affects the
fairness, integrity or public reputation of judicial proceedings. Id.

This procedurally barred claim is not insurmountable and the
Petitioner can hurdle it by showing his attorney was ineffective at
a critical juncture of the Petitioner's trial and appeal, by not
raising this claim. These actions and errors impeded the Petitioner
from receiving a fair trial and it also prevented the Petitioner
from receiving justice from the Appeals Court. The Petitioner's
attorney chose to only raise (3) claims in his appeal brief. And
yet the Petitioner has raised (13) thirteen solid claims in this
petition. By which this  claim  herein was for-fitted. Petitioner's

appeal was denied and affirmed on May 17, 2013 by the 4th Circuit. (See Opinion Decision) The Appeals Court conceded with the District Court May 25, 2012 denial of attorney request to file motion for discovery regarding the jury selection procedures used in the Eastern District of Virginia. This motion was untimely filed according to the Appeals Court because it was filed (2) weeks after Petitioner's trial. The U.S. District Court called it a "fishing expedition". And the Appeals court stated a failure to file the motion before trial amounts to waiver of the fair cross-section claim. The petitioner's attorney did not move for discovery with respect to the jury selection process until 13 days after the verdict. (See Appeal Opinion Decision)

And on November 4, 2013 the Supreme court denied the Petitioner's Certiorari. The errors of trial and appeal attorney was serious Constitutional demensions and worked to the Petitioner's disadvantage because the Petitioner's (1) solid claim was untimely filed conceded by all (3) Courts. Therefore the Petitioner's only shot at relief was wasted, sacrificed and forfitted to no avail by the attorney's "unreasonable professional judgment."

The Petitioner's attorney's role as a decision maker was deficient and not reasonably effective assistance of counsel. At the heart of effective representation is the independant duty to prepare and investigate. **Strickland v. Washington,** U.S. ,687-88 and 91. **Goodwin v. Balkcom,** 684 F.2d 794,805 (11th cir.1982) Therefore permissible trial strategy can never include the failure to conduct a substantial investigation into Petitioner's trial and appeal.

Attorney's actions were deficient and greatly prejudiced his trial and appeal because the Petitioner was actually innocent of this crime.

U.S. **V. Bousley,** U.S., 623-24. The petitioner's attorney's failure
to object was not a harmless error because Agent Banks cell sight
analysis, the unknown male messages and the Petitioner's replies to
them completely exonerated the Petitioner. (See Tr. 207-213, BAWA -
2 GPS Tower Maps, and pages 30,31,32,34, and 35 of this petition).

Agent Banks testified at 10:31 am that the petitioner was on 295
(Anacostia Freeway) in S.E. D.C. (Tr.207-208) Banks testified a minute
later that Coles cell phone uses a tower off of South Capital and N
Street, S.E. between 10:31 am and 10:32 am. (Tr.212) These facts
proves the government's theory was fabricated and contradicts the
entire trial record. The jury was poisoned and misled by the improper
inference that Cole drove to the Petitioner's residence the morning
of June 27, 2011 based on text messages. The exaggerated assertions
infected the Petitioner's trial. The government contends Cole dropped
Petitioner off in Coles BMW to a stolen getaway Van in the area of
First and N Street, N.W. at 10:30 am. (Tr.16,240,321) U.S. Attorney
Giles then states, "they are soon driving in separate vehicles, Cole
his BMW and Petitioner was in the stolen Plymouth Voyager Van".
(Tr.240) Attorney's failure to object greatly undermined the outcome
of the proceedings and prejudice resulted from the Attorney's actions.

Banks analysis showed the Petitioner never used not one cell tower
as Cole in Maryland or S.E. D.C. according to the evidence in the
record. (Tr.207-212) But importantly, Cole called the Petitioner's
cell phone at 10:31 am the morning of June 27, 2011. And the Petitioner
returned Coles call at 10:33 am. (See call detail records for 202-
528-5140 and 202-200-2869) The records obtained pursuant to Detective
John Vickery Court Orders specify the cell tower and sector the cell

phone connected to at the beginning and end of each call. Additionally the cellular service providers release list of their cell towers to law enforcement including "the location of their cell towers, with GPS coordinates for each tower, and the specifications for each of the sectors of the tower."

The Petitioner's GPS tower latitude and longitude cell tower coordinates were completely different than Coles. The government can not explain why Cole is calling the Petitioner if he was already in Coles BMW that morning. These facts prove the Petitioner was driving in a different vehicle (Lexus) and was not in Coles BMW that morning. (See attached Car Source receipt and Tr. 256-259-263-264-272-273-275 -277 and 283 & 284) And by contrast its impossible for the Petitioner to drive (2) vehicles at the same time, the stolen Van and the Lexus. The petitioner finds the government chimerical approach unavailing and the entire case full of fabrication. At 10:37 am the Petitioner was on New York Avenue and H St. N.W. (Tr.209) And Banks testified Cole was on South Capital and M St., S.E. at 10:36 am and that he ended this call on Rhode Island Avenue, N.W. at 10:44 am (Tr. 212 and GPS Tower BAWA - 2 Maps)

The Petitioner was on a different street than Cole and this analysis prove the Petitioner was driving the Lexus, before and after the Van was stolen. The petitioner's cell phone was bouncing off of cell towers while driving in the opposite direction of Cole. (See GPS Tower BAWA - 2 Maps and Tr.207-219) Thus, the evidence in this trial Court record  shows someone else other than the Petitioner was in Coles BMW that morning and evening. This error and fact "leaps out in the record." And these facts regarding the cell sights indicate the Petitioner's attorney inadequately investigated and prepared this

case. And attorney Aquino failed to raise "any of these inconsistancies" during the Petitioner's trial or appeal.

This error was caterstrophic and its obvious the Petitioner's attorney did not investigate Banks analysis, otherwise had he done so he would've objected to this non-existant material fact. This error committed by the attorney clearly "undermines confidence in the out come" under the **Strickland** test. And the Petitioner's attorneys investigation and performance was deficient and this error was not harmless and can hardly be considered a tactical decision or sound trial strategy. **Kimmelman v. Morrision,** 477 U.S. 365,385 (1986); **Coe v. Beli,** 161 F.3d 320 (6th cir.1998); **Strickland** at U.S. 693. The failure to object was of grave consequence to the Petitioner in so many respects. These inconsistancies could've been used to support the Petitioner's alibi testimony during trial as well as the Petitioner's appeal. The government case rests on the "cherry picked" text messages that were taken from different conversations and improperly interpreted. (See Tr.321 and pages 30,31,32,33,34 and 35 of the petition)

And Agent Banks analysis completely impeaches these messages and contradicts the government's false interpretation of them. (Tr.205-224) This claim is colorable and the Petitioner is "actually innocent" of this crime and sentence. **Murray v. Carrier,** 477 U.S. 478,485(1986); **Sawyer v. Whitley,** 505 U.S. 333,339. Cole called the Petitioner's cell phone at 10:26 am so it was wholly impossible the Petitioner was in Coles BMW that morning. (See June 27, 2011 call records)

It's unequivocally apparent the government's assertions of them was false because Agent Banks analysis completely exonerates the Petitioner from being in Coles BMW the morning of June 27, 2011.

(Tr.207-213) Further, it is extremely important to read these text messages in combination or sequence with the other messages on Coles phone instead of cherry picking them from different conversations. A fair reading of them, as it relates to the Petitioner and an unknown male and the Petitioner's replies to them discusses  Cole cashing and selling money orders. There is absolutely no evidence or a suggestion to infer to rob a bank. (See pages 30,31,32,33,34, and 35 of this petition)

In sum, the government implicitly wants this Court to seize two or three "cherry picked" text messages to imply a conspiracy and then turn a blind eye to reading then in sequence to understand the topic of conversation. The jury verdict is against the weight of the evidence in the trial record. Cole was selling and cashing money orders for approximately (1) one month leading up to the June 27, 2011 Bank Robbery. (See pages 30,31,32,33,34 and 35 of this petition) And the Petitioner's attorney refused and failed to object and impeach these messages with Banks cell sight analysis, the unknown male messages and the Petitioner's replies to them showing there was no conspiracy. (See Tr.207-224, GPS Tower BAWA - 2 Maps and extracted messages from Coles cell phone on pages 30,31,32,33,34 and 35 of this petition).

The government implies a crime because the Petitioner attempted to have Cole pick him up the morning of June 27, 2011. Banks analysis showed this never transpired. (Tr.207-213) Had the Petitioner been with Cole in his BMW the Petitioner's cell phone would have pinged with Coles cell phone in Maryland since the government's assertion was that Cole drove to the Petitioner's residence that morning. There was evidence in the trial record that Petitioner had (2) cell phones on June 27, 2011. (See cell number listed on Car Source receipt) So many inferences should be presumed from this fact.

In **Bell**, the Court stated mere association with persons involved in illegal activity is not sufficient to establish an agreement to commit an unlawful act. **U.S. V. Bell,** 954 F.2d 232,236 (4th cir.1992); also **U.S. V. Dunn,** 564 F.2d 348,357 (9th cir.1977). There was no agreement nor a meeting of the minds to rob the BBT bank in Fairfax, Virginia based on these facts. Here, theres direct evidence the jury had difficulty determining the Petitioner's guilt as to the conspiracy and charges based upon their note to the Court. (See Tr.380-382) The Petitioner was eventually found guilty and this was a compromissing verdict.

Further, there was no identification evidence nor forensic evidence of the Petitioner. (Tr.166-170) And the Petitioner did not fit the descriptions given by the employees of the bank. (Tr.42-47-62 and 341) Moreover, the Petitioner's investigator, Rossyln McMillan recently spoke to the Petitioner's probation Officer Carrie Lacey. (Lacey) confirmed through her files that the Petitioner's job search listings (Fairfax Water Company) for June 27, 2011 was accurate. (Notorized Affidavit Exhibit-F) The Petitioner's attorney refused to interview or locate (Lacey) to confirm this fact. Its highly unlikely the Petitioner would rob the BBT bank on June 27, 2011, when he told his Probation Officer he was seeking employment with Fairfax Water, which is next to the bank. (Tr.266-267) Further, the Petitioner was not in Virginia when the bank was robbed. (Tr.256-259-263-264-268-273-275-277 and 282-284).

In sum, this case is completely identical to **U.S. V.Gandolfo,** 577 F.2d 955 (5th cir.1978), where the 5th Circuit held that the evidence was insufficent to uphold the conviction of one co-defendant (Ritter).

Ultimately, the 5th Circuit concluded that, viewing the case in its most favorable light, no witness or combination of witnesses either places Ritter in the bank or otherwise establishes his guilt of the robbery for which he was convicted. The Court found that, "although his conduct and association with Gandolfo is highly suspect vis - a - vis the bank robbery, the links are too tenuous and the gaps are too large to conclude that a reasonable mind could find Ritter guilty beyond a reasonable doubt."

## CONCLUSION

Therefore the government's proof in this case is nothing more than an unsubstantiated assertion. And this weak circumstantial evidence of association does not fit the elements of a conspiracy. The inference drawn was not reasonable. And there was no clear evidence that the Petitioner agreed to participate in a bank robbery. This falls short of the clear undeniable proof of an agreement or knowledge required by the law. This is why the government desperately in the most sinister way intentionally mis-interpreted these hand chosen "cherry picked" text messages, (See pages 30,31,32,33,34 and 35 of this petition).

There is no evidence from which a jury could reasonably find beyond a reasonable doubt that the Petitioner robbed the BBT bank with Cole. And but for the Petitioner's attorneys ineffectiveness and errors in not objecting or impeaching these text messages or the government's theory with these facts, the outcome of the proceedings would've been different because the Petitioner is actually innocent. And a failure to grant this claim would be a miscarriage of

of justice. **U.S. V. Mikalajuanas,** 186 F.3d 490,493 (4th Cir.1999).
**WHEREFORE,** the Petitioner has satisfied both cause and prejudice
portion of this procedurally barred claim. The Petitioner prays
this Honorable Court grant him immediate   release or either a
new trial, or in the interest of justice, an evidentiary hearing is
warranted.

Dated: 10-29-14

Respectfully Submitted,

Corey Thomas Jones
#17789-083
FCI - Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

# CERTIFICATE OF SERVICE

I, Corey Thomas Jones, do hereby certify that I have served the party interested in the above captioned petition true and correct by pre-paid 1st class U.S. postage on the date affixed and as they are addressed below:


**ADDRESSEE:**

Patricia Giles
2100 Jamieson Avenue
Justin Williams Building
U.S. Attorney Office
Alexandria, Virginia 22314


I Corey Thomas Jones do hereby declare under the penalty of perjury, sworn to as true and correct, pursuant to 28 U.S.C. § 1746.

Executed on ⟍⟍ - ⟍⟍ · ⟍⟍

/s/ _Corey Thomas Jones_
Corey Thomas Jones
FCI - Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525