IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| COREY THOMAS JONES, | ) | |
| | ) | Criminal No. 1:11cr530 |
| Petitioner, | ) | |
| | ) | Civil Action No. 1:14cv1493 |
| v. | ) | |
| | ) | The Honorable Claude M. Hilton |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## GOVERNMENT'S OPPOSITION TO PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The United States of America hereby opposes Jones' Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Jones asserts two grounds for relief: (1) ineffective assistance of counsel for alleged failures in his investigation and alleged errors committed at trial; and (2) actual innocence. Jones' Petition lacks any merit and should be denied for two reasons. One, even if the Court were to accept Jones' allegations with respect to counsel's performance, Jones does not, and cannot, make the requisite showing of deficient performance or prejudice under *Strickland*. Two, Jones has failed to produce new reliable evidence to make the threshold showing that he is actually innocent.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 9, 2012, a federal grand jury returned a superseding indictment charging Corey Thomas Jones and William Louis Cole, Jr. with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d);

1

and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Cole was also charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

On April 18, 2012, Jones filed a motion to strike the jury panel for his upcoming trial on the ground that there were no African-Americans on the panel. DE # 101. After hearing argument on the motion the morning of trial, the Court denied Jones' motion. DE #107; JA 162-66. Voir dire was then conducted and a petit jury was empaneled. JA 19, 166. On April 23, 2012, the trial commenced and the evidence was as follows:

On June 27, 2011, at approximately 2:00 p.m., defendants Corey Jones and William Cole robbed the BB&T Bank located at 8416 Arlington Boulevard in Fairfax, Virginia. There were six people, all employees, at the bank during the robbery. Jones entered the bank first, approached the teller counter, and stated that he wanted to make a withdrawal. Moments later, Cole entered armed with a black handgun. Both Cole and Jones wore white dust masks and sunglasses, which concealed much of their faces. Cole pointed the gun at the employees in the bank lobby and ordered them to kneel on the ground. At this moment, Jones jumped the teller counter, pushed a teller out of the way, and grabbed the money from the drawers and then the drive-through teller's window. Cole and Jones took approximately $9,864.00.

The bank's surveillance camera captured two robbers and the robbery. In addition to the dust mask, the robber who jumped the teller counter was wearing jeans, a gray sweatshirt, sunglasses, and a baseball hat, and appeared to have dreadlocks hanging from beneath his hat. The surveillance video also showed that this robber was wearing white gloves and was a medium to dark-complected African-American male. The other robber, who carried the gun, was dressed in jeans, a burgundy sweatshirt with hood, light gray tennis shoes, sunglasses, a baseball cap,

black gloves, and a dust mask that covered his mouth.  This robber had a stocky build and was a lighter-complected male.

After Jones and Cole fled, a bank employee ran to the door, wrote down the license plate number of the van they entered, and then called the police to provide the information.  Police broadcasted a lookout for the getaway car, which was a Plymouth Voyager van bearing District of Columbia license plate number XRP-3970.

Within ten minutes of the robbery, the police located the Plymouth Voyager in a residential neighborhood close to the bank.  The van's ignition key had been punched and the engine was still running.  Earlier that same day, the Plymouth Voyager had been reported as stolen from the vicinity of 1st Street, NW and N Street in Washington, D.C.

As the police conducted their investigation, Allan Luai, a citizen who worked in an office building across the street from the bank, approached one of the police officers.  The parking lot of Luai's office building faced the BB&T Bank.   When Luai returned from lunch around 1:00 p.m., he saw a BMW with two African-American males who were watching the bank as they sat inside the car.  Luai thought the situation was strange because the BMW was parked in the sun on a hot day as the two men watched the bank and there were other parking spaces available in a shaded area nearby.  Luai began taking office supplies up to his office and noticed that the male in the passenger seat appeared to have braided hair.  Luai went upstairs and then returned to his car to get more supplies.  The BMW was still there.  When he went back to his office, Luai wrote down the description of the car and the license plate number because he sensed something was not right.  Luai had seen a blue BMW 740IL bearing Maryland license plate 5AE9468.  When he learned that the bank had been robbed, Luai provided the police with a description of the BMW and what he had seen.

Fairfax County Police officers ran the license plate number of the BMW. The BMW was registered in the name of Cole's sister, but the vehicle was owned and operated by Cole. After receiving this information, law enforcement set up surveillance at two known addresses associated with Cole and the BMW.

Cole was apprehended later that day while driving the blue BMW. A police sergeant observed white latex gloves in the open center console area of the car. These gloves appeared to resemble the gloves worn by one of the robbers in the surveillance images. Additionally, Cole matched the physical description of the robber in the bank brandishing the gun. He is a light-complected African-American male, 5'10" in height, and approximately 212 pounds. Cole was taken into custody. Prior to being transported, police officers recovered $802 dollars in cash from Cole's pants pocket.

During the search of Cole's BMW, police recovered a white pair of latex gloves from the center console beneath the radio, a black pair of gloves from the trunk, and two cellular telephones from the front seat area. One of the cell phones was a Sprint HTC phone that had been purchased for Cole by a female friend, LaShawn Schmidt. Incidentally, after his arrest, Cole provided Jones' phone number to Schmidt, and asked her to contact Jones for him. Although Schmidt did not know Jones, on June 28—the day after the robbery—she called Jones fifteen times in order to contact him on Cole's behalf.

Subsequently, the police conducted a forensic examination of Cole's cellular telephone and extracted text messages between Cole's cellular telephone and Jones's cellular telephone. On June 26th, the day before the bank robbery, they exchanged the following messages:

Jones:        "Wats [sic] that robbery site?" JA 549 (Text 52).

Cole:        "U have to go under commercial armed robberies in whatever county u looking for." JA 549 (Text 51).

4

Then, on the morning of the robbery, they exchanged the following messages:

> Jones: "I'm up . . . putting my shit on waiting for shorty to leave" JA 549 (Text 39).
>
> Jones: "U coming to get me or u want me to hav shorty drop me off sum where" JA 549 (Text 37).
>
> Cole: "Don't matter" JA 548 (Text 36).
>
> Jones: "Shes gone com get me" JA 548 (Text 35, 34).

In addition, an expert in historical cellsite analysis examined both Cole's and Jones's cellular telephones to determine the location of their phones at the time certain calls were placed. Although both live in Maryland, at approximately 10:30 a.m. on the day of the bank robbery, both Jones' and Cole's cellular telephones were located in close proximity to 1st and N Street, Northwest in Washington, D.C., which is where the getaway car was stolen. Then, from 10:36 a.m. to 2:27 p.m., there was no more activity on Cole's cellular telephone for several hours.

On June 23—four days before the bank robbery—between 2:01 and 3:01 p.m., Cole's cellular phone was located on Arlington Boulevard near the BB&T Bank. Earlier that same day, Cole sent a text message to Jones:

> Cole: ". . . I got a 'lil situation for about 5 stacks in about an hr if u want in on it. its real light work with no uniforms involved." JA 585 (Text 568).
>
> Jones: ". . . Sweet. . . " JA 585 (Text 567).

There were no uniformed security guards at the BB&T Bank on Arlington Boulevard.

Jones was located in February 2012, six months after the robbery. Jones matched the physical appearance of the robber who jumped the counter as reflected in the surveillance video. Jones is a medium to dark-complected African-American male and 5'10." Jones did not have dreadlocks.

At trial, both Cole and Jones offered several defense witnesses. Jones called four witnesses to testify that they had seen him driving around in a black Lexus belonging to his girlfriend, Cristi Purnell, on June 27th. JA 411, 429, 437. In particular, two of those witnesses, Crystal Peterson and her brother, testified that Jones picked them up that morning in the Lexus. Purnell also testified that Jones had her Lexus that day. Jones also called his cousin, Thomas Baker, who testified that he met Jones on June 27, 2011 at approximately 12:30 p.m. to discuss their grandmother's bankruptcy.[1] Jones also called Tony Grooms, the manager of a CVS to testify that Jones had dropped off a resume on the day of the robbery, and a custodian of records at Fairfax Water to testify that Jones had submitted a resume for a job there. The Fairfax Water was located in close proximity to the bank.

Jones also called Lynwood Makins, the owner of Car Source LLC, to authenticate a receipt. The receipt was dated June 27, 2011, and indicated that Jones had brought in a Lexus for installation of an alarm and window tinting. The Lexus belonged to Jones's girlfriend. The receipt did not reflect a time. Makins, however, testified that the car would have to have been at the shop by 3:00 p.m. on June 27th in order for the work to be completed. Car Source LLC is located on Central Avenue in Capitol Heights, Maryland. The historical cellsite analysis placed Jones' cellular phone in the vicinity of Central Avenue after 2:47 p.m.

Cole called Charles Ashford, the owner of Complete New Auto Service, as a witness. Ashford testified that Cole appeared at his shop on June 27, 2011, to pick up a gray convertible

---

[1] Baker was impeached by his prior statement to police. When questioned, Baker told the police that he recalled being with Jones that day because Jones had called him at work so that Baker could meet Jones at Baker's house because Jones was having his car (a Dodge) towed from that location. JA 437-440. The linkage between Jones and the Dodge was significant because a citizen, Frank Grimes, had also reported seeing two African-American males, with one wearing a painter's mask, in a Dodge SUV near the bank shortly before the robbery. *See* Exhibit K to Jones Memo. (redacted police report). Prior to trial, the government provided defense counsel with records showing that Jones had been stopped in a Dodge. Aquino Affidavit at p. 6.

BMW that belonged to Denise Epps at 1:44 p.m. When previously interviewed by police, Ashford stated that it was Denise Epps who had picked up the car. In addition, Cole called an employee of Fort Stanton apartments, which are located in southeast Washington, D.C. This employee authenticated a visitation card that Cole submitted to Fort Stanton apartments. Cole dated the card "6-27-11," the date of the robbery, and wrote that the time was 2:10 p.m. However, historical cellsite analysis of Cole's telephone indicates that his cellphone was in the vicinity of Fort Stanton apartments at 2:37 p.m.

On April 25, 2012, the jury found Jones guilty of conspiracy and armed bank robbery. They acquitted Jones of using and carrying a firearm during and in relation to a crime of violence. Cole was found guilty on all four counts.

On May 8, 2012, Jones filed a motion for discovery into the jury selection practice of the United States District Court for the Eastern District of Virginia for purposes of determining whether there is a systematic under-representation of African-Americans on jury panels in the District Court. After hearing on May 25, 2012, the Court denied the motion.

On July 6, 2012-a week before sentencing, Jones filed a motion for new trial upon newly discovered evidence. (DE #125). The "newly discovered evidence" was an additional alibi witness, Michael Brown. *Id.* The Court denied the motion for new trial.

On July 13, 2012, the Court sentenced Jones to a term of 60 months on Count 1 and 200 months on Count 2, to run concurrently. Jones filed his notice of appeal on July 19, 2012. On appeal, Jones raised numerous grounds including a constitutional violation related to jury selection, insufficiency of the evidence, and inappropriate closing argument. On July, 18, 2013, the Fourth Circuit affirmed Jones' conviction.

On November 4, 2014, Jones filed his Petition and a Memorandum. The Memorandum

exceeded the Court's 30-page limit pursuant to Local Rule 7(F)(3). On November 20, 2014,

upon the government's motion, the Court struck Jones' Memorandum and gave him leave to file

a brief in compliance within the page limitation. On December 15, 2014, Jones filed this

Memorandum in compliance. On January 21, 2015, the Court entered an order directing counsel,

Mr. Jerry Aquino to submit an affidavit addressing Jones' ineffective assistance allegations.

## ARGUMENT

I.    **Jones Fails to Prove Deficient Performance or Prejudice with Respect to His Attorney.**

A.    **Standard of Review**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984). Claims of ineffective assistance of counsel

are evaluated by the rigorous two-pronged test established by the Supreme Court in *Strickland*.

The first prong, known as the "performance prong," addresses a counsel's professional

competence. To meet this standard, a defendant must demonstrate that, in light of all the

circumstances as they appeared at the time of the conduct, "counsel's representation fell below

an objective standard of reasonableness," i.e., "prevailing professional norms." *Id.* at 687-88;

*see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). There is a strong

presumption that counsel's conduct was within the wide range of reasonable professional

assistance. 466 U.S. at 689-90; *United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004).

The second prong of the *Strickland* test is the "prejudice prong." *Fields*, 956 F.2d at

1297. To satisfy this prong, "[t]he defendant must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." 466 U.S. at 694. "In making this determination, a court hearing an ineffectiveness

claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. If a

defendant fails to make the required showing of either prong of the test, the Court need not

consider the other prong.  *Id.* at 700.

In his Memorandum, Jones alleges twelve areas of deficiency with respect to his

counsel's performance: six alleged failures with respect to counsel's investigation and six alleged

deficiencies with respect to counsel's trial performance.  Jones Memo. at pp. 1-27.  Jones'

claims lack any merit and are merely a blatant attempt to misrepresent and relitigate the same

evidence and outcome at trial under the guise of an ineffective assistance of counsel claim.

Jones fails to identify any deficiency in counsel's performance or any resulting prejudice.  Thus,

his Petition should be denied.

**B.    Jones Does Not Establish Deficient Performance or Resulting Prejudice with Respect to Counsel's Investigation.**

Jones claims his counsel's investigation was ineffective because counsel allegedly failed

to:  (A) investigate the travel time between BB&T Bank, Fort Stanton apartments, and Car

Source; (B) locate and investigate all of Car Source's employees and mechanics that worked on

June 27, 2011; (C) locate Jones' friend and alibi witness, Michael Brown; (D) locate Kirk Dean

and Victor Terrell, who were supposedly Cole's alibi witnesses; (E) investigate and subpoena all

video surveillance from traffic lights on 1st and N Street, N.W. and Arlington Blvd.; and (F)

investigate and subpoena all video surveillance from Fairfax Water and Gold's Gym.  Jones is

wrong.

**1.    Counsel conducted a thorough and diligent investigation.**

An attorney has a duty to "conduct appropriate investigations, both factual and legal, to

determine if matters of defense can be developed. . . ."  *Coles v. Peyton*, 389 F.2d 224, 226 (4th

Cir.), *cert. denied*, 393 U.S. 849 (1968).  "The reasonableness of an attorney's investigation is

evaluated by examining the totality of the circumstances, applying 'a heavy measure of deference to counsel's judgments.'" *United States v. Linwood Ruffin,* Criminal No. 99-24-A (E.D.Va. March 19, 2003)(*citing Bunch v. Thompson,* 949 F.2d 1354, 1363-64 (4th Cir. 1991); s*ee also Huffington v. Nuth*, 140 F.3d 572, 581 (4th Cir. 1998) ("In making the reasonableness determination, 'we must appreciate the practical limitations and tactical decisions that trial counsel faced . . . . Particularly when evaluating decisions not to investigate further, we must regard counsel's choices with an eye for "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'").

In this case, counsel conducted an extensive investigation. Counsel, who himself has been admitted to practice before this Court for over 30 years, hired an investigator, John McAvoy, to work on Jones' case. Aquino Affidavit at pp. 1-2, *Attachment A*. Investigator McAvoy is a highly experienced investigator who has worked on many cases in this district. Id. *at* 2. In order to prepare for trial, counsel met with Jones frequently and also had his investigator locate and meet with several potential witnesses. *Id.* at p. 1, 2-3, 5.

Counsel's investigation was based on the information provided by Jones. Initially, Jones lied to his counsel about giving his phone to a third party, claiming this was the reason his phone was near the BB&T Bank on the morning of the robbery. *Id.* at 4, 7. Both counsel and Mr. McAvoy pursued this information only for Jones to reverse course and admit that Jones was in possession of his own phone. *Id.* at 4. Jones' action wasted approximately two weeks of time during the investigation of the case. *Id.*

Despite this, counsel and his investigator made several attempts to identify witnesses to account for Jones' whereabouts on the day of the robbery. For instance, Investigator McAvoy went to Car Source several times to interview employees who worked there with the hope of

finding one who would remember Mr. Jones.  *Id.* at 2-3.   Investigator McAvoy also went to

Fairfax Water Company and interviewed several of those employees.   *Id.* at 5.  Counsel located

and called seven defense witnesses at trial in an attempt to establish Jones' whereabouts on the

day of the robbery.

During the investigation, counsel's investigator also located and interviewed another

potential witness, Frank Grimes, who was not called at trial.  *Id.* at 6.   This was a far more

difficult feat because counsel did not even have Mr. Grimes' name; counsel only had a redacted

police report which referred to a potential witness which had observed a Dodge SUV parked near

the bank with two men inside, one of whom was wearing a dusk mask.  *See* Exhibit K to Jones

Memo.  Counsel filed a motion with the Court to compel the government to disclose Mr. Grimes'

name and contact information, arguing that it was exculpatory.   DE # 72.   The Court denied the

motion.  DE # 83.  Despite this, counsel's investigator located Mr. Grimes and met with him two

or three times.  Aquino Affidavit at p. 6.  Ultimately, counsel determined that Mr. Grimes was

not exculpatory.  *Id.*   However, counsel's and his investigator's efforts are clear evidence of a

thorough and diligent investigation.

Jones' allegations that counsel's investigation was in adequate are meritless and will be

addressed in turn:

> **(A)      Alleged failure to investigate the travel time between BB&T**
> **Bank, Fort Stanton apartments, and Car Source**

Jones claims that his counsel was ineffective in failing to investigate the travel

time between BB&T Bank, Fort Stanton apartments, and Car Source should be

summarily rejected.  Jones Memo. at pp. 1-2.  Jones claims that his counsel erred in

having his investigator investigate the wrong route.  Jones Memo. at p. 3.  Jones then

offers his "evidence":  Map Quest printouts and other investigators' findings regarding

the travel time of two bogus routes invented by Jones. Jones' entire argument is premised on two falsehoods: (1) that the government claimed that Jones and Cole travelled together from the BB&T Bank in Virginia to Fort Stanton apartments in Washington, D.C., and then to Car Source in Maryland; and (2) that Jones and Cole departed Virginia travelling via Route 1 or Route 66. *Id.* at pp. 2-3. Neither is accurate.

In fact, the government never stated that Jones and Cole left Virginia together after the robbery. To the contrary, the government argued that <u>Cole</u> went to Fort Stanton apartments and <u>Jones</u> went to Car Source – in an effort to establish their false alibis. Two, the government never suggested the specific route either man took to flee the area. JA 475-87 (government's closing); Aquino Affidavit at p. 2. Moreover, at trial and even now, Jones contends that he was not with Cole after the robbery. Aquino Affidavit at p. 2. Given these facts, it would make no sense for counsel to investigate the bogus routes now offered by Jones. Instead, counsel investigated the travel time from the BB&T Bank in Virginia to Car Source in Maryland travelling across the Woodrow Wilson Bridge. Jones Memo. at p. 3. Counsel's investigation was completely reasonable given that the BB&T was closer to Interstate 495. *See* JA687 (map of area surrounding BB&T Bank). Jones has offered no reason to combat the strong presumption that counsel's conduct was completely reasonable.

Jones also cannot prove prejudice. Even if counsel had investigated the two bogus travel routes now suggested, Jones cannot establish that there is a reasonable probability that the result of the trial would be different. There was no evidence that Jones and Cole were together after the robbery or that these were the routes travelled. Moreover, it is doubtful that the jury would credit testimony suggesting that Jones would

travel out of his way to interstate Route 1 or Route 66 instead of taking the most direct route –Interstate 495—to flee.

Jones' allegations regarding counsel's failure to investigate the travel time are merely an attempt to misrepresent and re-argue the same evidence presented at trial. This is evident from even a cursory read of Jones' Memorandum. Ultimately, Jones wants the Court to reconsider the same evidence which was already before the jury, and which was affirmed by the Fourth Circuit to be sufficient to sustain his conviction. Thus, Jones' claims should be dismissed.

**(B)**     **Alleged failure to locate and investigate all of Car Source's employees and mechanics that worked on June 27, 2011**

**(C)**     **Alleged failure to locate Jones' friend and alibi witness, Michael Brown**

Jones claims his counsel was ineffective by failing to locate two additional alibi witnesses. First, Jones claims that counsel failed to locate Brandon Selman, the mechanic who allegedly worked on Jones' car at Car Source and allegedly recalled meeting Jones on only this occasion and having an altercation with him. Jones Memo. at pp. 5-6; *see also* Selman Affidavit, Exhibit A to Jones Memo. Second, Jones claims that counsel failed to locate Michael Brown, a friend of Jones, who claims that he saw and spoke with Jones at Car Source at 1:30 p.m. on the day of the robbery. Jones Memo. at pp. 7-8; Brown Affidavit at ¶ 6, Exhibit B to Jones Memo. Again, Jones fails to meet either prong of *Strickland*.

Counsel's account differs greatly from Jones' self-serving allegations. Jones alleges that counsel refused to send his investigator to interview any Car Source employees and, as a result, none were questioned. Jones Memo. at p. 5. However,

counsel affirms that his investigator made several trips to Car Source to interview employees with the hope of finding one that would remember Jones. Aquino Affidavit at p. 2. Counsel also states that Jones never told counsel about having an altercation with anyone at Car Source. *Id.* at 3. Jones claims that the mechanic was located five months after trial, and that the mechanic left messages for counsel. Jones Memo. at p. 6. Counsel states that Jones did not advise counsel of this and that counsel was never contacted by Selman. Aquino Affidavit at 3. It is worth noting that Selman's affidavit is dated July 25, 2013 –over two years after the robbery and Car Source work- and it does not indicate that Selman made any attempt whatsoever to contact counsel or when Selman was actually "discovered." *See* Selman Affidavit.

Jones also alleges that he told counsel about seeing his friend Michael Brown at Car Source prior to trial but that counsel refused to find him because "all evidence was final." Jones Memo. at p. 7. Again, counsel affirms that Jones never told counsel about Jones seeing and speaking to Jones' friend at Car Source. Aquino Affidavit at p. 3. In fact, counsel confirms that it was Jones' girlfriend, Cristi Purnell that first told counsel about Brown. *Id.* This was done *several* months after the trial. *Id.* When this occurred, counsel asked Ms. Purnell why she or Jones did not tell counsel about Brown sooner. *Id.* at 3-4. To which, she responded that they did not think counsel would be able to find him. After being notified, counsel did speak with Brown and obtained an affidavit from Brown which counsel filed with the Court. *Id.* at p. 4. Counsel used Brown's affidavit as the basis to file a motion for new trial based on newly discovered evidence. (DE #125).

Counsel's account is far more credible.  It is doubtful that counsel would refuse to have his investigator interview employees or visit Car Source given the extent of counsel's investigation and the case he presented at trial.   It is also doubtful that counsel would refuse to look for Mr. Brown prior to trial but then file a motion for new trial based on *new* evidence – the discovery of Mr. Brown.   Moreover, counsel demonstrated the extent that he would go to investigate this case.   Not only did counsel and his investigator find and present a number of defense witnesses at trial, counsel found a potential witness, Frank Grimes, with nothing more to go on than a redacted police report.  This is not the work of an attorney (or an investigator) that cuts corners.  This being said, the Court need not make the credibility determination of whose account to accept because even if the Court were to accept Jones' allegations as true, they do not amount to deficient performance.

In his affidavit, mechanic Brandon Selman states that his last day working at Car Source was June 27, 2011.  Thus, Selman would not have been present when counsel's investigator showed up to interview the employees at Car Source some six to eight months later.[2]  Second, Michael Brown is Jones' friend.  Yet, Jones concedes that he did not identify Brown until later.  Jones Memo. at p. 7 (stating "Petitioner had a moment of memory lapse" and "Petitioner found it clear of what actually transpired on the morning of June 27, 2011 and of his whereabouts").  If Jones sits on information, he cannot argue counsel's deficiency in failing to make use of it.   Accordingly, it was entirely reasonable for counsel to rely on the witnesses he presented to establish Jones was at Car Source.

---

[2] It is unclear how Brandon Selman was supposedly located as Jones never indicates in his Memorandum.   Jones' investigator, Rosslyn McMillan, attaches a memorandum itemizing the work she performed for Jones.   She does not include finding Selman.   She only states that she met with Selman and he signed the affidavit.   She also states that *she* later had Selman's affidavit notarized.   *See* Exhibit X to Jones Memo., Investigative Memorandum at ¶ 8.

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004) ("the strategic decision of Roane's lawyer on the extent of his investigation into the alibi defense 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'").

Moreover, Jones still cannot demonstrate prejudice. In order to do so, Jones must establish that there is a reasonable probability that, but for his counsel's alleged failure to locate and call these additional witnesses, he would have been acquitted. *Foster v. Ward,* 182 F.3d 1177, 1184-85 (10th Cir. 1999) (concluding that defense counsel's omission of alibi evidence did not undermine confidence in the guilty verdict where it corroborated other evidence already before the jury). In analyzing this, the Court must consider the totality of the evidence before the jury in the case. *Id.* at 1185.

In this case, Jones presented five witnesses to establish that he was driving his girlfriend's Lexus and took it to Car Source on the day of the robbery. Even the historical cellsite placed him there. Jones himself concedes that this amounted to a "strong alibi defense that was not impeached." Jones Memo at p. 3. There is nothing to suggest that testimony from Selman or Brown would have added more to the defense that was presented. *See* Foster, 182 F.3d at 1185 (concluding that defense counsel's omission of alibi evidence did not undermine confidence in the guilty verdict where it corroborated other evidence already before the jury). In fact, Jones states that Selman "corroberates [sic] the otherwise unimpeachable testimony of [the other] witnesses." Jones Memo. at pp. 6-7. Moreover, Selman's affidavit is dated over two years after the incident and yet states that he recalls seeing Jones, a person that Selman had never met before, at Car Source at exactly 2:00 p.m. on the day that Jones was having tint installed on a black

Lexus. Jones' reliance on Brown is equally problematic. Brown is Jones' friend, not an impartial witness, claiming to recall—over eight months after the incident--seeing Jones at Car Source at exactly 1:30 p.m. on June 27, 2011.

Neither Selman nor Brown undermine the confidence in the verdict. The totality of the evidence before the jury is still overwhelming given the incriminating text message between Cole and Jones, both men matching the description of the robbers, Cole's car being spotted across the street from the bank, the historical cellsite analysis that placed both men's phones near the bank at various times and near where the getaway car was stolen, and the fact that Cole had his paramour attempt to call Jones immediately after his arrest. Moreover, as stated, the historical cellsite analysis puts Jones' phone at Car Source at 2:47—after the robbery. Thus, Jones cannot prove that there is a reasonable probability that, but for the omission of Brown and Selman, he would have been acquitted. Thus, Jones' request for habeas relief on this claim should be denied.

> **(D)** **Alleged failure to locate Kirk Dean and Victor Terrell, who were supposedly Cole's alibi witnesses**
>
> **(E)** **Alleged failure to investigate and subpoena video surveillance from traffic lights**
>
> **(F)** **Alleged failed to investigate and subpoena all video surveillance from Fairfax Water and Gold's Gym**

Jones also claims that counsel's investigation fell below professional norms because: (1) he failed to locate Kirk Dean and Victor Terrell, Cole's so-called witnesses who were with Cole on the morning of the robbery; (2) he failed to subpoena surveillance from the traffic lights on 1st and N Street in Washington, D.C. and Arlington Boulevard near the BB&T; and (3) he failed to subpoena video surveillance from Fairfax Water and Gold's Gym. Jones Memo. at pp. 8, 10-12.

Jones claims that he told his attorney to do these things.  Even if true, these allegations could not establish either prong of *Strickland*.

First, counsel's account of conversations with Jones differs greatly from Jones' account. Counsel denies that Jones ever told him of Victor Terrell or asked him to obtain footage from Fairfax Water Company.  Aquino Affidavit at pp. 4-5.  Jones told counsel that Kurt Dean died in September 2011 – prior to Jones even being arrested.  *Id.* at 4.  Jones also never told counsel that he was at Gold's Gym on the day of the robbery.  *Id.* at 5.  Instead, Jones told his attorney that he had in fact seen Cole at a park in southeast D.C. on the morning of the robbery.  *Id.* at pp. 1-2. Jones also wasted two weeks of time by lying to his attorney about giving his phone to a third party on the day of the robbery only to reverse course and then claim that he had his phone that morning. *Id.* at 4.

Second, even if the Court were to accept Jones' allegations as true, his complaint still does not demonstrate deficient performance or prejudice.  For all the reasons discussed, counsel's investigation was extensive in this case.   Jones' counsel is not required to find Cole's alibi witnesses as it would not disprove Jones' involvement in the robbery.  *See Nuth*, 140 F.3d at 580 (stating that failure to investigate everyone whose name happens to be mentioned by defendant does not suggest ineffective assistance).  Moreover, there is no proof that Fairfax Water Company or Gold's Gym have video surveillance, and even if they did, whether they would have footage from the day of the robbery.  *Streater v. Director, Virginia Dept. of Corrections*, 2013 WL 4478035 *3 (E.D.Va. August 16, 2013) (finding that petitioner failed to prove prejudice resulting from counsel's failure to subpoena videotape where petitioner failed to prove video existed or that it would have provided him with an alibi).  For these reasons, Jones is not entitled to relief on this claim.

### 2.    Counsel's trial decisions reflected reasonable strategies.

Jones claims that counsel was ineffective by committing several errors at trial.  These claims are equally meritless and should be rejected.

A defendant must overcome the " 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 790  (2011) (internal quotation marks and citation omitted).

### (G)    Alleged failure to object or impeach the text messages introduced at trial with historical cellsite analysis

Jones argues that his counsel was ineffective in failing to object to and impeach the "cherry picked" text messages presented by the government.  Jones Memo. at p. 12.  In particular, Jones claimed his counsel failed to impeach the text messages highlighted by the government with others messages between Cole and an unknown male.  *Id.* at 17.  Jones also claims that his counsel failed to impeach the text messages with historical cellsite evidence which "exonerates" him.  *Id.* at 25.  He is wrong.

Despite Jones' claims to contrary, counsel could not have impeached nor objected to the government's use of the text messages.  All—even the ones Jones now highlights--were properly admitted and before the jury.   The only way the text messages could have been explained was if Jones (or Cole) testified and provided the context or given an explanation; Jones did not want to testify.  Aquino Affidavit at p. 5.  Moreover, as stated previously, the cellsite analysis did not exonerate Jones; it was some of the strongest evidence against him.  It placed him near the bank on the day of the robbery, near where the getaway car was stolen, and proved that he was at his

"alibi" after the robbery. Moreover, the text messages and cellsite analysis corroborated and explained one another. For instance, as argued a trial, the text messages in the morning of the robbery, had Jones telling Cole to come get, and then the cellsite analysis placed both of the phones in the area where the getaway car was stolen. In any event, Jones cannot show that counsel was defective.

**(H)**     **Alleged failure to object to prejudicial testimony
and failure to get a curative instruction**

Jones claims his counsel was ineffective by not objecting to testimony from his probation officer and failing to ask for a curative instruction regarding Detective John Vickery's testimony that he verified the defendant in a law enforcement database. Jones Memo. at p. 18. In particular, Jones claims that his attorney should have objected to the testimony of his probation officer, Carrie Lacy, because the government only called her to establish his bad character. *Id.* Jones is wrong. Ms. Lacy did confirm Jones' telephone number but, more importantly, she established his Maryland residence – despite the fact that his phone was located in Virginia near the BB&T Bank and in Washington, D.C. near where the getaway car was stolen. Ms. Lacy never testified that she was Jones' probation officer. JA 336-38; Aquino Affidavit at p. 6. Given this and the fact that her testimony was relevant, counsel had no basis to object to her testimony.

As to not asking for a curative instruction regarding Detective Vickery's testimony that he found Jones' name in a law enforcement database, counsel objected to the testimony and the Court sustained the objection. Counsel did not ask for a curative instruction as it could focus the jury's attention on the issue. Aquino Affidavit at p. 6. The decision to ask, or not to ask, for a curative instruction is one of strategy and entitled to the strong presumption that counsel's conduct was reasonable. *Doane v. Johnson*, 2011 WL 1659312 *8 (E.D.Va. April 29, 2011) (stating that counsel's decision to not request a curative instruction because it might highlight the

evidence further was a tactical decision)(*citing Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir.1989)).  Again, Jones fails to satisfy *Strickland*.

### (I)     Alleged failure to call Frank Grimes as an exculpatory witness

Jones argues that counsel was ineffective in failing to call Frank Grimes as an exculpatory witness.  Again, Jones fails to establish either prong of *Strickland*.

"[T]he decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the court] must afford ... enormous deference." *Terry*, 366 F.3d at 317 (finding that counsel's decision to not call witnesses was not constitutionally deficient).  Moreover, the court assesses the reasonableness of counsel's explanation for not calling a witness in light of "the circumstances of counsel's challenged conduct, and ... from counsel's perspective at the time." *Id.*

In this case, Jones argues that Frank Grimes was an exculpatory witness because Mr. Grimes had told police that he had seen two men in a Dodge SUV on the day of the robbery. However, prior to trial, the government provided the defense with a photograph of Jones driving a Doge SUV.  Given this evidence, counsel assessed that Grimes' testimony might actually diminish Jones' defense.  Aquino Affidavit at p. 6.   As such, Mr. Aquino entered an agreement with the government to release Grimes from his subpoena, and advised Mr. Jones of this fact prior to releasing Grimes.  *Id.*   Counsel's decision was one of strategy.

Moreover, Jones cannot show prejudice.  Even if counsel had call Grimes, the government impeached Jones' cousin, Thomas Baker, with his prior statement to law enforcement that Jones had actually parked his Dodge outside of Jones' house on June 27, 2011.

JA 438-39.  Thus, the Dodge would have still been linked to Jones just as counsel anticipated.

Accordingly, Jones' claim must fail.

**(J)     Alleged failure to object to government's theory that
Petitioner was a principle in the bank robbery**

Jones alleges that his counsel failed to object to the government's theory that he wore a

wig and was a principle in the bank robbery.  Jones Memo. at pp. 22-23.  This allegation is

belied by the record.  First of all, counsel contested his client's involvement in the robbery

throughout the trial.  Aquino Affidavit at pp. 6-7.  Given the fact that the jury acquitted Jones of

the most serious count--which would have required a consecutive term of a mandatory minimum

of 25 years --proves the extent of his counsel's effectiveness.  Moreover, the same points that

Jones raises in his Petitioner – lack of forensic evidence, no evidence of a wig, the fact the

defendant's probation officer was not asked to identify him in the surveillance photos—are all

points that his counsel raised at trial.  Jones Memo. at pp. 22-23; JA 179-187, 498-506 (defense

counsel's opening and closing).   Again, this is just another attempt to re-argue the same

evidence presented at trial.

**(K)     Alleged failure to object to the District Court not giving
a requested alibi instruction**

The defendant also argues that counsel's failure to object to the Court not giving a

requested alibi instruction was ineffective.  Jones presents this issue as if it was a mistake on

counsel's behalf.  Jones Memo. at p. 24 ("Petitioner's attorney told [Jones] that he did not want

to anger the judge and that he believed the Court had read them to the jury.").  To the contrary,

counsel's actions were intentional and tactical.  First, counsel did not ask for an alibi instruction

in the proposed instructions he filed with the Court.  Aquino Affidavit at p. 7; DE # 93 (Jones'

Jury Instruction).  Even at trial, counsel did not use the word alibi although he argued the same

facts. *See* Aquino Affidavit at p. 7; JA 179-187, 498-506. Counsel surmised that "alibi" could have a negative connotation with members of the jury and the instructions given by the Court stated the law and placed the burden on the government to prove its case. Such a decision does not amount to deficient performance; the decision to not request an alibi instruction is one of trial strategy. *Smith v. Bowersox*, 2010 WL 4272826 *8-9 (E.D.Mo. October 25, 2010) (finding that failure to request jury instruction was not defective performance where alibi defense was before the jury via the witnesses and closing).

Moreover, Jones cannot show that he was prejudiced by counsel's decision. Counsel called seven defense witnesses; thus, the same information was presented to the jury.

### (L) Alleged failure to object to the conspiracy and the government theory that Cole picked up Petitioner that morning

Jones claims that his counsel failed to object to the government theory that Cole picked up Jones on the morning of the robbery. Jones Memo. at p. 24. Jones then imagines "inconsistencies" between the cell site evidence and the government theory of the case, and then claims counsel was ineffective by failing to argue these "inconsistences." Jones Memo. at pp. 25-26. Again, Jones misrepresents the evidence at trial. However, a habeas petition does not serve as a means to re-litigate or reargue the same evidence offered at trial. Moreover, counsel did challenge the existence of the conspiracy, and repeatedly challenged all of the government's evidence. JA 179-187, 498-506. Obviously, the jury agreed with some of counsel's points because they acquitted Jones of the most serious count. Accordingly, Jones cannot prove deficient performance or prejudice.

**3. Counsel was not ineffective by not filing the motion for discovery of the jury selection procedures prior to trial and the defendant has not shown prejudice**.

Jones also claims that counsel was ineffective in not filing his motion for discovery of the jury selection procedures pre-trial. Jones Memo. at p. 25. Pre-trial counsel filed a motion to strike the jury panel which was denied by the Court. DE# 101; DE # 107. Then, post-trial counsel filed his motion for discovery into the jury selection procedures, which was also denied. DE # 113, DE #118. The Court's denial was challenged on appeal, and the Fourth Circuit ruled that the failure to file the motion pretrial constituted a waiver. *United States v. Jones*, 533 Fed.Appx. 291 (4th Cir. 2013). For this reason, Jones argues his counsel was ineffective. He is wrong.

Jones only makes conclusory allegations with respect to this claim. He does not even attempt to, and could not even if he tried, prove that he is entitled to discovery or relief in his favor, or that the outcome of his trial would have been any different had counsel made his motion for discovery pre-trial. *United States v. Cardenas-Borbon* , 2014 WL 820262 *6-7 (M.D. Pa. March 3, 2014) (rejecting defendant's ineffective assistance of counsel claim based on failure to make a fair cross section claim where the defendant did not establish that he was entitled to discovery, relief, or that outcome of trial would be different). This Court considered the merits of the discovery motion and denied it. In announcing its ruling, the Fourth Circuit also noted that "defendants [Jones and Cole] have not articulated any reason to support their assertion that African-Americans are being systematically excluded during the jury selection process." 533 Fed.Appx. at 300. Given that Jones cannot show prejudice, this Court need not even consider the first prong of *Strickland*. Thus, Jones is not entitled to habeas relief on this claim.

**II.      Jones has Failed to Make the Required Showing of Actual Innocence.**

Jones claims that he is entitled to habeas relief because the evidence has proven that he is actually innocent. He is wrong.

It is not clear whether Jones is asserting actual innocence as a freestanding claim, or in the context of the procedural default analysis.[3]  *See* Jones Memo. at pp. 27-29.  In *Herrera  v. Collins*, the Supreme Court noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation. . . ."  506 U.S. 390, 400 (1993).  In interpreting *Herrara*, courts have disagreed on whether or not a petitioner may raise actual innocence as a freestanding claim, and even the Fourth Circuit has issued conflicting decisions on the issue.  *See Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999)(refusing to grant habeas relief on petitioner's assertion of actual innocence due to newly discovered evidence on the ground that freestanding claims are not cognizable); *but see Teleguz v. Pearson*, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (stating in dicta that "[a] petitioner may also raise a freestanding innocence claim in a federal habeas petition"); *see also Hazel v. United States,* 303 F. Supp.2d 753, 760-61 (E.D. Va. 2004) (analyzing various courts' handling of issue).  For the reasons that follow, the Court need not resolve the issue.

Even the courts that recognize the freestanding claim have said that the threshold for demonstrating it is extraordinarily high.  *House v. Bell*, 547 U.S. 518, 555 (2006) ("threshold for any hypothetical freestanding innocence claim [is] 'extraordinarily high'"); *Hazel*, 303 F. Supp.2d at 760.  To prevail, a petitioner asserting a freestanding claim of actual innocence must

---

[3] A petitioner procedurally defaults any claim that he failed to raise at trial or on direct appeal and is prevented from bringing that claim in a motion under § 2255 absent a showing of cause and actual prejudice, or a fundamental miscarriage of justice, such as actual innocence.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

demonstrate that "no rational trier of fact could [find] guilt beyond a reasonable doubt had it been given the newly discovered evidence." *Hazel*, 303 F. Supp.2d at 760.

A petitioner alleging "actual innocence" in the context of procedural default must meet "a less-stringent—though nevertheless rigorous--" standard than a petitioner who seeks relief on the basis of innocence alone. *Wolfe v. Johnson*, 565 F.3d 140, 164 (4th Cir. 2009). The petitioner must meet the standard articulated in *Schulp v. Delo,* 513 U.S. 298, 324 (1995), which is that it is *more likely than not* that no reasonable juror would have convicted him in the light of the new evidence." *Id.* (emphasis added). Because this threshold is less stringent, a petitioner that cannot make the threshold showing of actual innocence as part of procedural default analysis cannot make the more stringent threshold showing of actual innocence as a freestanding claim.

In the context of procedural default, a defendant "must show actual innocence by clear and convincing evidence." *United States v. Mikalajunas*, 186 F.3d 490, 493 (1999). Even then, courts have cautioned that "[c]laims of actual innocence are rarely successful," *Schlup*, 513 U.S. at 324, and "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir.1998). A petitioner must present new evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. The new evidence must be "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

In this case, Jones cannot even satisfy the *Schlup* standard; thus, he could never satisfy the standard of a freestanding actual innocence claim—whether or not the Fourth Circuit recognizes it. Jones simply fails to produce the new, reliable evidence that is required. Most of Jones' argument regarding actual innocence is not new evidence at all. *Faison v. Hinkle*, 2011

WL 3321347 *9 (E.D.Va. June 08, 2011) (stating that "the arguments Faison has presented as evidence of his actual innocence were all presented at trial and, thus, are not new evidence"). Instead, Jones attacks the evidence adduced at trial. For instance, even the caption of Jones' actual innocence subsection reads "the evidence in the trial record is inconclusive." Jones Memo. at p. 27. Then, Jones proceeds to discuss and re-argue the historical cell site analysis and text messages offered at trial. Jones Memo. at pp. 27-28.

Even the "new" evidence on which he relies is insufficient. Jones' "newly" discovered evidence consists of (1) Map Quest printouts and investigators' information on irrelevant travel routes invented by Jones; (2) Brandon Selman, the mechanic who allegedly worked on Jones' car at Car Source and allegedly recalled meeting Jones on only this occasion at exactly 2:00 p.m. and having an altercation with him; and (3) Jones' friend, Michael Brown, who eight months after the incident allegedly recalled speaking with Jones at Car Source at 1:30 p.m. on the day of the robbery. This evidence is simply insufficient to make the threshold.

First of all, the Map Quest printouts fall far short of the type of reliable evidence required under *Schulp*. Second, Selman and Brown, although newly presented witnesses, are only part of the same alibi evidence that was presented at trial and already rejected by the jury—namely that Jones was at Car Source. The only new information either offers is a specific time. Even with this testimony, a reasonable jury could have been persuaded that Jones committed the robbery. This time-related evidence is not dispositive as a jury could believe that Selman and Brown were mistaken about the time or a jury could place greater weight on the historical cellsite analysis that placed Jones' phone at Car Source at 2:47 p.m. *See Dandridge v. Lockhart*, 36 F.3d 773, 775 (8th Cir. 1994) (finding that petitioner alleging that employer's testimony and work records established alibi failed to satisfy "actual innocence" where jury could have believed that

employer's time sheets were inaccurate, that defendant had left work early, or could have placed greater weight on other evidence).

The jury could also place greater weight on the unrefuted evidence at trial, including, but not limited to: (1) the incriminating text message between Cole and Jones; (2) both men matching the description of the robbers, (3) Cole's car being spotted across the street from the bank, (4) the historical cellsite analysis that placed both men's phones near the bank at various times and near where the getaway car was stolen, and (5) the fifteen phone calls Cole's paramour made to Jones immediately after Cole's arrest. *Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010) (finding that alibi evidence was not sufficient when weighed against evidence of guilt to meet high threshold of actual innocence claim). Accordingly, Jones has not demonstrated that it is more likely than not that no reasonable juror would have convicted him in light of the "new evidence," and Jones' petition should be denied.

III.     **Jones is Not Entitled to an Evidentiary Hearing.**

"In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). For the reasons discussed above, the evidence that Jones offers, even if believed, fails to establish that any of his claims are meritorious. Thus, Cole is not entitled to an evidentiary hearing.

## CONCLUSION

For these reasons, the Government respectfully submits that the Court should deny Jones'

Petition.[4]

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Patricia T. Giles
Rebeca H. Bellows
Assistant United States Attorneys

---

[4] Pursuant to Rule 7(K) of the Local Rules of Practice of the United States District Court for the Eastern District of Virginia, you are hereby notified that:

(1)     You are entitled to file a response to Government's Response to Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255;

(2)     The Court could dismiss part of your petition on the basis of the government's opposition if you do not file a response; and

(3)     You must identify all facts stated by the United States with which you disagree and must set forth your version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury).

CERTIFICATE OF SERVICE

I certify that on this 18th day of February, 2015, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jerry Aquino, Esq.
Counsel for Defendant

I hereby certify that a copy of the foregoing was sent by first class mail to the persons listed below, this 18th day of February, 2015.

Corey Thomas Jones
Reg. # 17789-083
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

_____/s/_____
Patricia T. Giles, Esq.
Virginia Bar No.: 43257
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3982
Email Address: Patricia.Giles@usdoj.gov