IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| COREY THOMAS JONES, | ) | |
| | ) | |
| Petitioner, | ) | Criminal No. 1:11-cr-530 |
| v. | ) | Civil No. 1:14-cv-1493 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Corey Thomas Jones, ("Petitioner's") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

On April 25, 2012, a jury found Petitioner guilty of the following counts: (1) Conspiracy to Commit Armed Bank Robbery in violation of 18 U.S.C. § 371; and (2) Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d).[1] After he was sentenced to a total of 260 months imprisonment,[2] his conviction was affirmed by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on July 18, 2013.

Petitioner's motion states two grounds for relief: (1) ineffective assistance of counsel for alleged failures in his

---

1 Petitioner was initially charged with using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), but was found not guilty at trial.
2 Petitioner was sentenced to 60 months imprisonment on Count 1, and 200 months imprisonment on Count 2, to run concurrently.

investigation and alleged errors at trial; and (2) actual innocence.

Under 28 U.S.C. § 2255, a petitioner may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255; see also Hill v. United States, 368 U.S. 424, 426-27 (1962). The petitioner bears the burden of proving grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

"The proper standard for judging attorney performance is that of reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984). Claims of ineffective assistance are evaluated using a two-part test: first, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness; second, a petitioner must show that "the deficient performance prejudiced the defense." Id. at 687-88. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

Objective reasonableness is "simply reasonableness under prevailing professional norms" regarding the representation. Id. at 688. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 689-90; see, e.g., United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997). Review of counsel's performance must be comprehensive and not narrowly limited to counsel's failings in determining whether the presumption of adequate assistance has been overcome, Strickland, 466 U.S. at 691, and courts should be reluctant to second guess the tactics of trial lawyers. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1997).

To satisfy the second prong of the Strickland test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669. A defendant must affirmatively prove prejudice that is "so serious as to deprive the defendant of a fair trial." Id. at 687. Because "[t]he defendant bears the burden of proving Strickland prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." Fields v. Attorney Gen. of

Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Strickland, 466 U.S. at 697)).

Petitioner specifies twelve areas of ineffective assistance of counsel; six relating to the counsel's investigation, and six relating to Counsel's trial performance.

Petitioner claims counsel failed to: 1) investigate the travel time between BB&T Bank, Fort Stanton apartments, and Car Source; 2) locate and investigate all of Car Source's employees and mechanics that worked on June 27, 2011; 3) locate Petitioner's friend and alibi witness Michael Brown; 4) locate Kirk Dean and Victor Terrell, who were supposedly co-defendant Cole's alibi witnesses; 5) investigate and subpoena all video surveillance from traffic lights on 1st and N Street, N.W. and Arlington Blvd.; and 6) investigate and subpoena all video surveillance from Fairfax Water and Gold's Gym.

Jones claims that his counsel instructed his investigator to investigate the wrong routes of travel following the bank robbery. Petitioner offers as evidence Mapquest printouts of two alternative routes never before mentioned to counsel. These two routes are premised on two false allegations: 1) that the government claimed that Jones and Cole travelled together from BB&T Bank in Virginia to Fort Stanton apartments in Washington D.C., and then to Car Source in Maryland; and 2) that Jones and Cole departed Virginia via Route 1 or Route 66.

4

The government argued at trial that Cole went to Fort Stanton apartments and Jones went to Car Source in an attempt to establish their false alibis – it was never suggested that the two co-defendants travelled together after the robbery. Further, the government never specified which route either defendant took to flee from the robbery. Counsel investigated the travel time from the BB&T Bank in Virginia to Car Source in Maryland travelling across the Woodrow Wilson Bridge – the most logical route given its vicinity to Interstate 495. There was no evidence at trial that the defendants' used alternative routes and Jones has not shown with any reasonable probability that the outcome of trial would be different if counsel had investigated the new routes. Thus, Jones offers no compelling reason that counsel's conduct was unreasonable.

Next, Jones claims his counsel failed to locate two alibi witnesses: 1) Brandon Selman, a Car Source mechanic that allegedly recalled meeting Jones at exactly 2:00 p.m. on the day of the robbery; and 2) Michael Brown, a friend of Jones who allegedly saw and spoke with Jones at 1:30 p.m. at Car Source on the day of the robbery. Jones claims that his counsel never sent his investigator to Car Source to confirm his alibi. On the contrary, counsel affirms his investigator made several trips to Car Source with hopes of finding someone that would remember Jones. Selman states his last day at Car Source was June 27,

5

2011, the day of the robbery, thus he would not have been present when counsel's investigator showed up to interview Car Source employees months later. Jones further claims that Selman was located five months after trial, and made numerous attempts to contact counsel. Counsel affirms that he was never contacted by Selman, nor did he know of his existence until months after trial.

Jones makes the same claim regarding Brown – that he told counsel of his existence prior to trial. Counsel denies this allegation, and in fact confirms he learned of Brown several months after trial from Cristi Purnell, Jones' girlfriend. Upon learning of Brown's existence, counsel obtained an affidavit and filed a motion for a new trial based on newly discovered evidence, which was subsequently denied. It is highly unlikely that counsel would have known of Brown and refused to look for him prior to trial, yet file a motion for a new trial after learning of his existence.

Even if the Court accepted Jones' claims as true, Jones still fails to demonstrate prejudice. Jones presented five witnesses at trial to establish that he was driving his girlfriend's Lexus and took it to Car Source on the day of the robbery. There is nothing to suggest that testimony from Selman or Brown would have added more to the defense that was presented. In fact, Jones concedes that Selman's testimony would

6

have corroborated the unimpeached testimony of other witnesses. Heavy deference must be given to counsel's judgments on the extent of his investigation into the alibi defense. See United States v. Roane, 378 F.3d 382, 409 (4th Cir. 2004). There is no reasonable probability that, but for the omission of Selman and Brown's testimony, Jones would have been acquitted.

Jones claims that counsel's investigation amounted to ineffective assistance because he failed to locate Kirk Dean and Victor Terrell, Cole's alleged alibi witnesses; failed to obtain surveillance from the traffic lights on 1st and N Street in Washington D.C., and Arlington Boulevard near BB&T; and failed to obtain video surveillance from Fairfax Water and Gold's Gym.

Counsel affirms that Jones never told him of Terrell, never asked him to obtain footage from Fairfax Water, never mentioned that he was at Gold's Gym on the day of the robbery, and told him that Dean died in September 2011, prior to Jones' arrest. Counsel is not required to find a co-defendant's alibi witnesses because it would not disprove Jones' involvement in the robbery. See Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998) (stating that failure to investigate everyone whose name happens to be mentioned by defendant does not suggest ineffective assistance). Moreover, there is no proof that Fairfax Water or Gold's Gym have video surveillance, and even if they did, whether they would have footage from the day of the robbery.

7

Streater v. Director, Virginia Dept. of Corrections, 2013 WL 4478035 *3 (E.D. Va. August 16, 2013) (finding that petitioner failed to prove prejudice resulting from counsel's failure to subpoena videotape where petitioner failed to prove video existed or that it would have provided him with an alibi).

The Court finds that counsel's conduct during his investigation does not amount to ineffective assistance of counsel.

Petitioner claims counsel also failed to: 1) object or impeach the text messages introduced at trial with historical cellsite analysis; 2) to object to prejudicial testimony and failure to get a curative instruction; 3) to call Frank Grimes as an exculpatory witness; 4) to object to government's theory that Petitioner was a principle in the bank robbery; 5) to object to the District Court not giving a requested alibi instruction; and 6) to object to the conspiracy and the government theory that Cole picked up Petitioner the morning of the crime.

In particular, Jones claims his counsel failed to impeach text messages highlighted by the government with other messages between Cole and an unknown male. The text messages were properly admitted before the jury, and the only way the text messages could have been impeached were if Jones (or Cole) testified and provided context or an explanation. Jones chose

not to testify as was his right. Jones further claims the cellsite analysis exonerated him. This is simply untrue as it was some of the strongest evidence against him. It placed him near the bank on the day of the robbery, near where the getaway car was stolen, and proved he was at his alleged alibi after the robbery.

Petitioner claims his counsel failed to object to testimony from his probation officer, Carrie Lacy, because the supposed purpose of her testimony was to establish bad character. This argument bears no weight as Ms. Lacy testified to matters relating to Jones' phone number and Maryland residence. Her testimony was relevant because it was helpful to the jury in explaining that Jones' was not at home in Maryland when his phone was pinged near the bank that was robbed in Virginia, and near where the getaway car was stolen in Washington, D.C. Objection to her testimony would not have been proper.

Petitioner claims that his counsel erred by not asking for a curative instruction regarding Detective John Vickery's testimony that he found Jones' name in a law enforcement database. At trial, counsel objected to the testimony and the Court sustained the objection. The decision to not request, or request a curative instruction is one of strategy and entitled to a strong presumption that counsel's conduct was reasonable. Doane v. Johnson, 2011 WL 1659312 *8 (E.D. Va. April 29, 2011)

9

(stating that counsel's decision to not ask for a curative instruction because it might highlight the evidence further was a tactical decision)(citing Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989). Thus, Jones' fails to satisfy Strickland.

Jones alleges that the failure to call Frank Grimes as an exculpatory witness satisfies Strickland. The Court disagrees. "[T]he decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the court] must afford . . . enormous deference." United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004) (finding that counsel's decision not to call witnessed was not constitutionally deficient).

Jones claims Mr. Grimes told police that he witnessed two men in a Dodge SUV on the day of the robbery. Prior to trial, the government provided defense counsel of a photograph of Jones driving a Dodge SUV. Upon receiving this evidence, counsel determined that Grimes' testimony might actually hinder Jones' defense. Counsel informed Jones of his decision prior to releasing Grimes from his subpoena. Counsel's decision was strategic and reasonable. Further, Jones cannot show prejudice because the Dodge SUV would still have been linked to him via the testimony of his cousin, Thomas Baker, who made a prior

statement to law enforcement that Jones parked his Dodge outside Jones' house on the day of the robbery.

Jones claims his counsel failed to object to the government's theory that he wore a wig and was a principle in the bank robbery. Jones seeks relief on the grounds that there was a lack of forensic evidence, no evidence of a wig, and that his probation officer was not asked to identify him in the surveillance photos. These arguments were all made at trial and will not be re-litigated here. In fact, counsel's effectiveness is evident by Jones being acquitted of the most serious count of using and carrying a firearm during and in relation to a crime of violence.

Petitioner claims that his counsel failed by not objecting to the Court not giving a requested alibi instruction. Jones' counsel intentionally did not request an alibi instruction in the proposed instructions he filed with the Court. Moreover, counsel did not even use the word "alibi" during trial as a tactical decision for fear that it would conjure a negative connotation. The instructions properly placed the burden on the government to prove its case and did not prejudice Jones.

Petitioner claims that his counsel failed by not objecting to the government's theory that Cole picked up Jones on the morning of the robbery. Jones cites some inconsistencies between the cellsite evidence and other evidence presented at trial

during the government's case in chief. The fact that Jones was acquitted of the most serious charge clearly demonstrates that Jones' counsel was effective in raising any inconsistencies in the government's case. It is not the purpose of a habeas petition to re-litigate the issues and the Court will not do so here. Jones simply does not satisfy <u>Strickland</u>.

The Court finds that counsel's conduct during trial does not amount to ineffective assistance of counsel.

Separately, Jones argues his counsel was ineffective for failing to file his motion for discovery of the jury selection procedures pre-trial. Pre-trial, counsel filed a motion to strike the jury panel, which was denied by the Court. Post-trial, counsel filed a motion for discovery into the jury selection procedures, which was also denied. The Court's ruling was challenged on appeal to the Fourth Circuit, which held that the failure to file the motion pretrial constituted a waiver. <u>United States v. Jones</u>, 533 Fed.Appx. 291 (4th Cir. 2013). Jones argues that this ruling shows his counsel was ineffective. This Court disagrees.

The Fourth Circuit noted that "defendants [Jones and Cole] have not articulated any reason to support their assertion that African-Americans are being systemically excluded during the jury selection process." <u>Id</u> at 300. Thus, Jones is not entitled

to relief on this claim because he cannot show prejudice, and this Court need not address the first prong of Strickland.

Claims of actual innocence can be asserted as a freestanding claim, or in the context of the procedural default analysis.3 See Herrera v. Collins 506 U.S. 390, 400 (1993) ("[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation…" In interpreting Herrera, the Fourth Circuit has split on the issue of whether a freestanding claim can stand alone or must accompany an independent constitutional violation. See Royal v. Taylor, 188 F.3d 239, 243 (4th Cir. 199) (refusing to grant habeas relief on petitioner's assertion of actual innocence on the ground that freestanding claims are not cognizable); but see Teleguz v. Pearson, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (stating in dicta that "[a] petitioner may also raise a freestanding innocence claim in a federal habeas petition").

Notwithstanding the split in the Fourth Circuit, the threshold for meeting an actual innocence assertion as a freestanding claim is "extraordinarily high." House v. Bell, 547 U.S. 518, 554 (2006). The petitioner must show that "no rational trier of fact could [find] guilt beyond a reasonable doubt had

---

3 A petitioner procedurally defaults any claim that he failed to raise at trial or on direct appeal and is prevented from bringing that claim in a motion under § 2255 absent a showing of cause and actual prejudice, or a fundamental miscarriage of justice, such as actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998).

it been given access to the newly discovered evidence." Hazel v. United States, 303 F. Supp.2d 753, 760-61 (E.D. Va. 2004).

To prevail on an actual innocence claim on the grounds of procedural default, a petitioner must meet "a less-stringent—though nevertheless rigorous—" standard. Wolfe v. Johnson 565 F.3d 140, 164 (4th Cir. 2009). A petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Shulp v. Delo 513 U.S. 298, 327 (1995). The new evidence must be "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324.

Much of Jones' actual innocence argument is an attempt to re-litigate issues presented at trial relating to the cellsite analysis and the text messages. These arguments do not constitute new evidence. Faison v. Hinkle, 2011 WL 3321347 *9 (E.D. Va. June 08, 2011)(stating that "the arguments Faison has presented as evidence of his actual innocence were all presented at trial, and thus, are not new evidence").

The new evidence Jones presents consists of 1) Map Quest printouts of irrelevant travel routes; 2) Brandon Selman, the Car Source mechanic who allegedly recalled meeting Jones on the day of the robbery at exactly 2:00 p.m.; and 3) Michael Brown,

Jones' friend, who allegedly recalled speaking with Jones at Car Source at 1:30 p.m. on the day of the robbery.

Map Quest printouts fall short of the type of reliable evidence required under <u>Shulp</u>. Moreover, Although Selman and Brown are new witnesses, they are part of the same alibi evidence that was presented at trial and already rejected by the jury – that Jones was at Car Source at the time of the robbery. Even given the new information of the specific time, a reasonable jury could believe that both witnesses could be mistaken or could have placed greater weight to the historical cellsite analysis that put Jones' phone at Car Source at 2:47 p.m.

The jury could have also given greater weight to the other evidence presented at trial – for example the 1) incriminating text messages between Cole and Jones; 2) both men matching the description of the robbers; 3) Cole's car being spotted across the street from the bank; 4) the historical cellsite analysis that placed both men's phones near the bank at various times and near where the getaway car was stolen; and 5) the fifteen phone calls Cole's friend made to Jones following Cole's arrest.

Jones fails to demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. As Jones does not satisfy the less stringent <u>Shulp</u> standard, it follows that he cannot satisfy the stricter

Herrera standard of a freestanding innocence claim, and is thus not entitled to habeas relief.

Further, Jones is not entitled to an evidentiary hearing. An evidentiary hearing is necessary when it is unclear "from the pleadings and the files and records that the prisoner is entitled to no relief…" Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). "In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) overruled on other grounds by Gray v. Netherland 518 U.S. 152, 165-66 (1996). For the reasons discussed above, this Court finds Petitioner's claims are without merit entitle him to neither § 2255 relief or an evidentiary hearing.

In sum, Petitioner received effective assistance of counsel during the investigation stages and at trial, and there is no merit to his actual innocence claim. Therefore his motion should be denied.

An appropriate order shall issue.

*Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 2, 2015

16